| | |
|---|---|
| Your Name: | Wameedh Al Azzawi / General Manager of Al Farez- Wamed Co. |
| Address: | 888 Williams St. / Tracy -CA 95376 |
| Phone Number: | 510-437-0708 |
| Fax Number: | |
| E-mail Address: | wamed_Jameel@yahoo.com |
| Pro Se Plaintiff | |

# FILED

JAN 15 2016

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
                    DEPUTY CLERK

## United States District Court

### District of California

| | |
|---|---|
| Wameedh Al Azzawi | Case Number: **2** 16 - CV - 0 0 9 3 KJM CKD |
| General Manager of Al Farez-Wamed Co. | |
| Plaintiff(s), | **COMPLAINT** |
| vs. | |
| International Centre for Dispute Resolution | **DEMAND FOR JURY TRIAL** |
| Organization ( ICDR) | Yes ☒  No ☐ |
| Kellogg Brown and Roots Services Inc. | |
| Defendant(s). | |

1. **Parties in this Complaint**

   a. **Plaintiff(s).** *Write your name, address, and phone number. If there are other plaintiffs, use more pages to include their names, addresses, and phone numbers.*

Name:   Wameedh Al Azzawi

Address:   888 Williams Street

          Tracy / CA 95376

Phone number:   510- 437-0708

COMPLAINT
PAGE ___ OF ___ [JDC TEMPLATE]

1        b.  **Defendant(s).**  *Write the full name and address of every defendant.  If the defendant is*

2    *a corporation, write the state where it is incorporated and the state where it has its main place of*

3    *business.  Use more pages if you need to.*

4    **Defendant 1:**

5    Name:_____International Centre for Dispute Resolution Organization  ( ICDR)_____

6    Address:___120 Broadway , 21 st  Floor_____

7    _____New York , NY  10271_____

8    **Defendant 2:**

9    Name:_____Kellogg Brown & Roots Services Inc._____

10   Address:____601 Jefferson St_____

11   _____Houston , TX  77002_____

12   **Defendant 3:**

13   Name:_____

14   Address:_____

15   _____

16   **Defendant 4:**

17   Name:_____

18   Address:_____

19   _____

20       2.  **Jurisdiction**

21       *Usually, only two types of cases can be filed in federal court: cases involving "federal*

22   *questions" and cases involving "diversity of citizenship."  Check at least one box.*

23       My case belongs in federal court under <u>federal question jurisdiction</u> because it is

24   about federal law(s) or right(s).

25   *Which law(s) or right(s) are involved?* _____

26   _____

27   ☒      My case belongs in federal court under <u>diversity jurisdiction</u> because none of the plaintiffs

28   live in the same state as any of the defendants <u>AND</u> the amount of damages is more than $75,000.

COMPLAINT

PAGE ___ OF ___ [JDC TEMPLATE]

5. Statement of facts and Claims.

**The Defendant did not comply with the following ICDR rules:**

1. <u>**Article 3 of ICDR rule ( amended and effective June/01/2009 )**</u>
2. <u>**Article 9 of ICDR rule ( amended and effective at June /01/2014)**</u>
3. <u>**Article 6 of ICDR rule ( amended and effective June /01/2009)**</u>
4. <u>**Article 1 of ICDR rule   ( amended and effective June/01/2009)**</u>

a) The Plaintiff  Wameedh Al Azzawi , the General Manager of Al Farez -Wamed Co. initiate a claim against the Defendant  ( Kellogg Brown & Roots Services Inc) with the Defendant ( International Centre for Dispute Resolution ) ICDR  under case No.50 1160 00698-12 on **Sep /25/2012**

b) The Defendant ( ICDR)  Supervisor Mr. Michael Namias send a letter dated at  Sep/28/ 2012 to the Defendant and to Plaintiff stated : ((pursuant to Section R-4(c)  Respondent to file an answering statement with Claimant and the ICDR within ( 14) days from the date of this letter , by on or before **October 12, 2012 ,** and the Defendant stated too, if Respondent wishes to file **a counterclaim ,** Please file same with ICDR , along with supporting documents and appropriate **filing fee** , and send a copy directly to Claimant by said date)). **( Exhibit A)**

c) The Defendant ICDR send a letter dated at **Oct/08/2012** to both parties  stated the following: ((I confirm receipt of Mr.Azzawi email below and the attached document . Respondent may file and Answering Statement and/or Counterclaim by **Nov/5/2012.** If an Answer is not filed by the said deadline, Claims will be deemed as generally **denied** by Respondent)). **( Exhibit B)**

d) The Defendant (KBR) filed his statement of defense and **Counterclaims** dated at **Nov/05/2012**  in reference to KBR allegation  of Statute of limitation by law of Texas in change order 13.( **The Defendant did not comply with ICDR rule Article 1**) **( Exhibit C)**

e) The Defendant ( ICDR)send an email dated at **Nov/13/2012** stated the following : I also note that the ICDR has not received any filing fee associated with the Counterclaims at

this time . Therfore , **the ICDR does not consider any Counterclaims completely filed at this point. ( Exhibit D )**

f) The Defendant ( KBR) submit their **first amendment Counterclaim** dated at **Feb/07/2013. ( Exhibit E)**

g) On **July/22/2013** , The Defendant ICDR appointed the third arbitrator Mr. Markham Ball. ( The Defendant did not comply with the  appointment of arbitrators schedule ( ICDR rule Article 6  Amended and Effective June 1, 2009) .

h) The Third Arbitrator ( Chairman)Mr. Markham Ball send email dated at **Feb/23/2014** to plaintiff stated the following : (( I have been appointed by ICDR as a sole arbitrator in the **case of Vega Co. v. Kellogg, Brown & Root Services, Inc., ICDR Case No. 50 132 T 00432 13.** on **Nov/18/2013**)) . **( Exhibit F)**

i) On **Sep /09/2013** , The Arbitrators ordered  Procedural Number 2  in reference to KBR allegation of  statute of limitation by Law of Texas in Change order 13 , and KBR contends it should apply in this Arbitration . The Arbitrators ordered to bifurcate the case based on KBR false Counterclaim on the call conference **( Exhibit G)**

j) The Arbitrators gave interim award of Statute of limitation dated at **May/09/2014.** **( Exhibit H)**

k) On **July /07/2014** , The Arbitrators order procedural No.7  which stated the following under item 2 . (( On or before **July 21** respondent shall identify, by an email to the other party and to the  tribunal, each of the **Counterclaims** it wishes to have considered at the hearing of the case and to be resolved by the tribunal's final award, briefly stating the alleged factual basis for each counterclaim and the amount of each counterclaim)). **( Exhibit I)**

l) On **July/ 21/2014** , The Defendant KBR submit its **Second amendment Counterclaim** pursuant to procedural No.7. **( Exhibit J)**

m) On **Jan /16/2015** , The Defendant KBR submit its **Third amendment Counterclaim** as they contend its pursuant to **Article 4** of the international Arbitration rules ( amended and effective June 1 /2009) ,The Defendant KBR should refer to  the amended and effective **ICDR rules at June 1/20014  in article 9**) which stated the following :(( The tribunal

may permit an amendment or supplement subject to an award of costs and/or the payment of **filing fees** as determined by the Administrator )). ( **Exhibit K)**

and the plaintiff oppose it and the Arbitrators accept it.

n) Procedural order No. 7 stated the dead line for filing witness list will be no later than **Sep/30/2014. ( Exhibit I)**

o) The Defendant KBR requests from Arbitrators to extend the time for submitting the witness list to testify for their **third amendment Counterclaim** and the Arbitrators accept to extend the time to submit the KBR witnesses list till **Dec15/2014** pursuant to procedural order No.9. ( **Exhibit L)**

p) The Defendant KBR witnesses testified in the final hearings in supporting KBR false counterclaim in the Final hearing dated at Aug /04/2015

q) The Arbitrators order Procedural No 14 dated at Aug/13/2015 for a post hearing brief of the Defendant KBR counterclaim ( **Exhibit M)**

r) The Arbitrators in their partial final award dated at Nov/ 25/2015 stated the following : (( KBR contract with the government was a cost reimbursement contract , when Respondent incurred costs that had not previously been billed , its practice was to invoice the government. The invoices for these costs , if properly substantiated , were paid by the government )). ( **Exhibit N)**

5. **Article 7-2 of ICDR rule (amended and effective June /1/2009)**

a) The Defendant did not comply with **ICDR rule Article 7-2** in their ex-parties communication with their appointed Arbitrator Mr. Ruben and the ICDR , when both selected a court reporter in the hearing in phase one ( bifurcating the case with statute of limitation by Texas law) .( **Exhibit P)**

b) Ex-parties evidence between Defendant and third arbitrators Mr. Ball clearly noticed by appointing the Third arbitrator by the ICDR in another case with the Defendant KBR while the Plaintiff case in Arbitration still in proceeding .( **Exhibit F).**

6. **Article 7-1 of ICDR rule ( amended and effective June1/2009)**

The Defendant ICDR did not comply with ICDR Article 7-1 ( **Exhibit O**)

7. **Article  21 item 3 , 6, 7, 8 , 9 of ICDR rule ( amended and effective June /1/2014)**

a) The Defendant did not  comply with **ICDR article 21 Exchange of information under item 3 , 6 , 7 , 8 , 9**  ( United States District Court /District of California  **case No. 2:15 – CV-1468-GEB-AC-PS  / Document 1. ( Exhibit  R  )**

8. **Article 30 -1 of ICDR rule ( amended and effective June/1/2014 )**

a) The Arbitrator did not comply with the **ICDR rule Article 30 .1** , stated (( the final award shall be made **no later than 30 days** from the date of the closing of the hearing.))  the final hearing ended on the Aug/06/2015 while the partial final award dated at Nov/25/2005 .

9. **Article 31-2 of ICDR rule ( amended and effective June /1/2014)**

The Arbitrators did not comply with  **ICDR rule article 31 under item 2** stated (( In arbitrations involving the application of contracts, **the tribunal shall decide in accordance with the terms of the contract** and shall take into account usages of the trade applicable to the contract)). And as the following :

a) The Arbitrators referred in their partial award to a clause ( **5.0.7**) under Subcontract Special Conditions –Overseas **Rev.003 ( 12/12/05)** in **Change order No. 11**
The Defendant did not attach the Subcontract Special Conditions **Rev.003( 12/12/05)** in the final hearing documents dated at **Nov/12/2014** ( KBR-FH-000326 till KBR –FH-000363 ) ( **Exhibit F1**)  pursuant to Tribunal procedural No.9. The Defendant Submitted to Tribunal in a deceptive action  as a supplementary document (KBR-FH-002669 till KBR-FH-002680) **(Exhibit G1)**dated  at  **July/21/2015** and alleged it was omitted and the Arbitrators accept it.
The Claimant objects and requested form tribunal to order the Defendant to submit the original documents of change order 11 ,10 ,13 ( **Exhibit D1** )and the tribunal takes no action to order the defendant to submit these documents which will prove to Tribunal that these documents never being attached these Change orders in the effective date signed bilateral .

b) The Claimant submitted a strong evidence to Tribunal in the final hearing ( **Exhibit D1)**as a rebuttal documents which prove that Subcontract Special Conditions **Rev.003 ( 12/12/05)** is a deceptive action by Defendant and the Tribunal take no action ( there are no any **punch** in the documents submitted of Subcontract Special conditions Rev.003 ( 12/12/05) by the Defendant to Tribunal dated at July /21/2015 in relative to the original documents submitted  by Respondent to Tribunal in the final hearing dated at Nov/12/2014. ( KBR-FH-000326 till KBR-FH-000333) which prove the Subcontract Special Conditions never attached in the original Change order signed with KBR bilateral. And KBR attached it in a deceptive action. Not only that even Subcontract General Condition  attached in change order 11 ( KBR-FH-000334 till KBR –FH-000363 is a deceptive action as the punch of these document not identical with the original copy of change order 11 ( KBR-FH-000326 till KBR-FH-000333)  , The Claimant requested from Tribunal to order KBR to submit the original copy but they did not . ( **Exhibit D1)** And the Claimant submitted that evidence as a rebuttal documents to Tribunal in the final hearing ,and they did not take any action.

c) Under 15.0 Order of preference of Subcontract Special Conditions –Overseas  ( in Claimant final hearing document- page 80)( **Exhibit Q)** stated :
15.1 In case of conflicts between various subcontract documents , the following  order of precedence shall be used to settle said conflicts:
      Change order(s) ( latest one issued **)**

    The Last Change order in reference to subcontracts conditions terms is change  order 13 ( KBR-FH-000380-till KBR-FH-000422) .( **Exhibit C1)** while the Tribunal refereed in their partial final award to KBR False attachments of change order 11 ( **Exhibit N).**

d) The Arbitrators did not comply with   ICDR rule article 31 under item 2  . The Arbitrators denied in their partial award **Claim No.20** and **Claim No.26**  while the defendant accept it and add it to the total amount which KBR owed to Claimant ( **Exhibit J1)( page 140 item 26) and on ( Exhibit J1)(page 139-item 20)** .

e) The Arbitrators denied the balance $ 96,752.21 of the subcontract which KBR confirm it and stated in their analysis on their Proforma Invoice, KBR  stated the following :
(( Amount owed to Sub after addition of claims value is $ 96,752.21 )) page 141 ( **Exhibit J1)**

f) The Arbitrators did not comply with  ICDR rule article 31 under item 2 . In change order 14 .The money owed by KBRSI to the Claimant in referring to Change orders 14 ( retention money) ( page 666) ( **Exhibit U)**

g) Arbitrators did not comply with  the ICDR rule Article 31 - 2 in their award for all the  45 items of  claims  in referring to 15.0 order of Precedence  under 15.1 ( In Claimant hearing document – (page 80) ( **Exhibit Q**)
The Tribunal applied Subcontract Special Conditions 003 ( 12/12/05) in their award ,while they should referred  to subcontract Special  Condition –Overseas Rev.002( 4/8/03) signed bilateral at March/22/05.

h) Arbitrators did not comply with ICDR rule Article 31 - 2 in their award in their deciding to the terms of contract  , under Subcontract Special conditions –Overseas  item 15.0 ( page 80 )( **Exhibit Q**)
   15.1 In case of conflicts between various Subcontract documents , the following order
      Of precedence shall be used to settle said conflicts:
      Change order(s)( latest one issued)
      Subcontract Terms

      Subcontract Special Conditions

      Special Subcontract requirement
      Subcontract General conditions
      Specifications
      Drawings

  None of these being followed by the Arbitrators , the only one they followed is the Subcontract Special condition –Overseas in Change order 11 .

i) The Arbitrator did not consider any of the Claimant  strong evidence submitted in which the government affirmed acceptance of all Al Farez works to this subcontract and made a payment to KBR ( page 341 ) ( **Exhibit S**)

j) The Arbitrator did not take any action in reference to the Claimant strong evidence submitted to Arbitrators dated at March/25/2015 which prove KBR forged the government invoices submitted to Arbitration  ( **Exhibit  T).**

k) The Arbitrator did not take any action toward the Claimant strong evidence submitted which prove KBR defrauded both the government and the Claimant . (invoice No.3  page -539and page 540) ( **Exhibit V),** Change order 3 ( **Exhibit W),** Change order 5( **Exhibit X)**

l)  The Arbitrator take no action to the Claimant requests for postponement all the
    Arbitration proceeding till the United States Court Eastern district of California take a
    decision in the Claimant case 2:15-cv-01468-GEB-AC and case : 2:15-cv-01138- GEB-
    CKD **(Exhibit H1),** in reference to KBR forged the government( DFAS) invoices
    submitted and defrauded both the government and the Claimant and over invoice the
    government. and in regard to KBRSI submitted a false documents ( change order No .10 )
    and a false counter claim in this Arbitration and for their conceptive action in Change
    Order no.11 and change Order 13.

m)  The Arbitrators did not take any action towards  KBR false counter Claim , as affirmed
    by Arbitrators in their Partial award.( page 546 till page 553 ) **( Exhibit N)**
     The ICDR denied KBR Counterclaim , and the Arbitrators proceeding with the KBR
    Counterclaim of bifurcating with **Texas statute of limitation** in **change order 13** and
    KBR **third amendment  Counterclaim  ( Exhibit D )( Exhibit B)**

n)  The Arbitrators take no action toward KBR deceptive and cheating  action in Change
    order no 11 and Change order No. 13.and the false document in change order 10 .( Case
    2:15-cv-01468-GEB-AC / Doc. No. 22  filed Dec 04/2015  )

o)  The Arbitrators did not comply with ICDR rule 31-2 in reference to Claimant final
    hearing documents ( Page 178-179) **( Exhibit L1)**in which KBR confirm its
    responsibility of the delays and offered to reimburse the Claimant for 3 month delay.

p)  The Tribunal did not comply with ICDR rule 31-2  in  reference to KBR breach the
    Change orders in reference to KBR responsibility for the delay in the period of
    performance .( Change order 14 ,Change order 3 , Change order 5 , Change order 11,
    change order 13 ,Change order 12 ,Change order 7 ,Stop work order delay )

6- Demand for Relief

I.  The Court should vacate the arbitration case No. No.50 1160 00698-12 , based  on
the plaintiff briefing  under  5. Statement of facts and Claims and based on the
following :

- Arbitrator **Mr. Welby** have conducted a check for conflicts and have
**nothing to disclose**   ( Exhibit O)
Arbitrator  John P.Madden  whom appointed by Both Arbitrators Mr.
Welby and Mr.Rubin as a third arbitrator , conducted a check for conflicts
and have **made disclosures on an attached sheet** and stated in his
disclosure the following :

(( Over the years , I have served as a Neutral Mediator in approximately
three matters  wherein **one of the parties was represented by Mr.Welby
and/or an associate from his firm**)).
The Plaintiff appointed Mr.Welby based upon nothing in his disclosure
referred to  him or his firm represented KBR for any case before.

- The Third Arbitrator ( Chairman)Mr. Markham Ball send email dated at
**Feb/23/2014** to plaintiff stated the following : (( I have been appointed by
ICDR as a **sole arbitrator in the case of Vega Co. v. Kellogg, Brown &
Root Services, Inc., ICDR Case No. 50 132 T 00432 13.** on
**Nov/18/2013**)) . **( Exhibit F)** . the Arbitrators Mr. Ball made his second
disclosure after around 3 month from his appointed by ICDR for the  other
case of Arbitration with KBR . The ICDR did not comply with ICDR rules
in appointing the Third arbitrator for another KBR case while the plaintiff
arbitration still in proceeding , nor the Arbitrator Mr. Ball inform the
plaintiff  at the proper time .

- Ex-Partie between the ICDR and the Arbitrator Mr. Rubin and KBR in
selecting the court reporter in phase one.( Exhibit O)

II.  The Defendant should reimburse the Plaintiff with all the fee paid by plaintiff to
ICDR and Arbitrators and all the other expenditures for three years.

III. The Defendant should bear all the damage in the plaintiff case with Arbitration case No. 50 1160 00698-12   by not complying with the ICDR rules in which the plaintiff and the Defendant agree to apply it and govern the Arbitration

IV. The Defendant caused a delay three years for not comply with the ICDR rules.

V. The Defendant caused a burden fee paid by Plaintiff in this Arbitration by not comply with ICDR rules (   Defendant Counterclaim not filed and denied by ICDR)

VI. The plaintiff should be reimburse for all the damage caused by Defendant  in time and expenditures and fee for this Arbitration , All Al Farez-wamed Co. works being affected and suspended  for this arbitration due to delay in Arbitration caused by the Defendant ,and for the errors of Arbitrators  .

VII. The estimated cost for the damage is  $ 3,000,000.00 .


7. Demand for Jury trial

Plaintiff demands a Jury trial for all issues .




Respectfully Submitted




Date: _Jan/15/2016_          Sign name: _____


Print name: _Wameedh al azzawi_
_General Manager_
_of_
_Al Farez-wamed .Co._

# Exhibit A



**International Centre
for Dispute Resolution**

Thomas Ventrone
Vice President

September 28, 2012

1633 Broadway, 10th Floor, New York, NY 10019
telephone: 212-484-4181 facsimile: 212-246-7274
internet: http://www.adr.org/ICDR

**BY ELECTRONIC MAIL**

Wameedh al Azzawi
Al Farez-Wamed Co.
888 Willames Street
Tracy, CA 95376

**BY ELECTRONIC MAIL AND FEDERAL EXPRESS**

David Brenner
Harold Davis
KBR
4100 Clinton Drive
Houston, TX 77002

Re: 50 110 T 00698 12
    Al Farez-Wamed Co.
    vs.
    KBR

Dear Parties:

The International Centre for Dispute Resolution ("ICDR"), a division of the American Arbitration Association ("AAA"), acknowledges receipt on September 25, 2012 of a Demand for Arbitration dated September 24, 2012 for a dispute arising out of a contract between the above-captioned parties. We assume that Respondent has been duly served.

Please be advised that the above-captioned parties are receiving this communication in accordance with the representative information provided to us by Claimant. If you are receiving this communication and do not represent any of the parties in this matter, please contact the ICDR immediately.

Your case will receive full administrative coverage by a case manager and a supervisor. Your case has been assigned to **Neda Shahghasemi, Esq., International Case Manager.** Ms. Shahghasemi will be your primary contact at the ICDR, and can be reached by phone at **212-484-3262**, fax at **212-246-7274**, or e-mail at **ShahghasemiN@adr.org.** Please direct all future communications to her attention with a copy to the other party.

Please note that an Administrative Conference Call has been scheduled for **Thursday, October 4, 2012 at 3:00 p.m. EDT (12:00 p.m. PDT, 2:00 p.m. CDT).** The parties are requested to dial in to this call at the following toll-free number: **1-888-537-7715, participant passcode 51194506#.** Should you have to dial in from outside of the US, please contact the ICDR. If the parties are unable to participate on the scheduled date of the call, we kindly request that the parties mutually agree on an alternate date and advise the ICDR so that the call may be rescheduled accordingly.



This matter is currently being administered under the AAA Construction Industry Arbitration Rules as amended and in effect October 1, 2009 (Fee Schedule Amended and Effective June 1, 2010) and as supplemented by the International Commercial Arbitration Supplementary Procedures amended and in effect April 1, 1999, unless any party advises the ICDR otherwise in writing. Please find a copy of these Rules and Procedures on our website at www.icdr.org.

We note that the claim amount exceeds $1,000,000.00. Unless the parties agree otherwise in writing, the Procedures for Large, Complex Construction Disputes will be applied to this matter as described in Sections L-1 through L-6 of these Procedures, in addition to any other portion of the AAA Construction Industry Arbitration Rules that is not in conflict with these Procedures.

Pursuant to Section R-4(c), Respondent may file an answering statement with Claimant and the ICDR within fourteen (14) days from the date of this letter, by on or before **October 12, 2012**. If Respondent wishes to file a counterclaim, please file same with the ICDR, along with supporting documents and the appropriate filing fee, and send a copy directly to Claimant by said date.

We have also enclosed a Checklist for Conflicts form. Please list all the witnesses you expect to present, as well as any persons or entities with an interest in these proceedings. This checklist will assist the arbitrators to disclose any and all potential conflicts. The checklist is confidential and should only be sent to the ICDR. The checklist is due within fourteen (14) days from the date of this letter, by on or before **October 12, 2012**.

Finally, we have enclosed our Arbitration Information Sheet, which will serve to provide you with some basic information about the ICDR's arbitration process and set forth some initial dates by which certain steps should be completed by the parties. The ICDR will continue to provide you with information regarding the various stages of the process as the case proceeds. We also encourage you to contact the ICDR at any time for further procedural information or to discuss how we can best serve your needs in resolving your dispute.

We look forward to work with you and to provide you with assistance during the arbitral process.

Sincerely,

*Michael Namias*

**Michael Namias**
**ICDR Supervisor**
212-484-4170
NamiasM@adr.org

Encl.

- Checklist for Conflicts
- Arbitration Information Sheet



**International Centre
for Dispute Resolution**





# CHECKLIST FOR CONFLICTS

In the Matter of the Arbitration between:

Re: 50 110 T 00698 12
   Al Farez-Wamed Co.
   vs.
   KBR

**INTERNATIONAL CASE MANAGER:** Neda Shahghasemi, Esq.

DATE: September 28, 2012

To avoid the possibility of a last-minute disclosure and/or disqualification of the arbitrators pursuant to the Rules, we must advise the arbitrators of the full and complete names of all persons, firms, companies or other entities involved in this matter. Please list below the full names of all interested parties in this case, including, but not limited to, witnesses, consultants, and attorneys. In order to avoid conflicts of interest, parties are requested to also list subsidiaries and other related entities. This form will only be used as a checklist for conflicts, not a preliminary or final witness list. Please note that the ICDR will not divulge this information to the opposing party and the parties are not required to exchange this list. This form will, however, be submitted to the arbitrators, together with the filing papers. You should be aware that arbitrators will need to divulge any relevant information in order to make appropriate and necessary disclosures in accordance with the applicable arbitration rules.

For your convenience, this form may be completed online through AAA's WebFile.

FULL NAME                          AFFILIATION                          ADDRESS



**International Centre
for Dispute Resolution**

# Arbitration Information Sheet

This document provides information about your upcoming arbitration and the expectations concerning each party's conduct throughout the process. Please save this information sheet for reference.

## Administrative Conference Call

The ICDR may conduct an Administrative Conference Call with the parties to discuss issues that will assist the ICDR in administering the case as efficiently as possible. This is also an opportunity for the parties to discuss ways to conduct the arbitration to meet their specific needs. Please be prepared to discuss the following:

- The means of communication between the ICDR and the parties;
- The possibility of submitting the dispute to mediation;
- The number of arbitrators and/or party-appointed arbitrator provisions;
- The method of appointment of arbitrator(s);
- The qualifications and area of expertise of the arbitrator(s);
- The handling of extension requests; and/or
- The possibility of utilizing a documents-only process.

## Exchange of Correspondence and Documents

The parties shall copy each other and the ICDR on all correspondence during the course of the arbitration. Three items are exempt from this rule: (1) the Checklist for Conflicts, (2) any financial documents (e.g., invoices), and (3) the parties' arbitrator ranking lists (if applicable). Beyond the aforementioned items, there shall be no ex-parte communications with the ICDR.

## Communications with Arbitrator(s)

It is paramount that the parties do not engage in any ex-parte communications with the arbitrator(s). To minimize the potential of such communications, all exchanges of appropriate written documents shall occur initially through the ICDR. Once appointed, the arbitrator(s) shall determine whether a limited direct exchange of communications between the parties, the ICDR, and the arbitrator(s) is acceptable. Otherwise, all correspondence shall be submitted to your case manager for transmittal to the arbitrator, copying the other party.

## Timeliness of Filings

Please pay particular attention to response dates included on any ICDR correspondence. The ICDR may not consider untimely filings or responses. Should a party need an extension to any deadline, it should contact the other party first and attempt to reach an agreement. Should the parties disagree prior to the appointment of the arbitrator(s), the ICDR may grant a reasonable extension after reviewing the parties' comments for or against the requested extension.

## Locale of the Arbitration

The parties may agree to a locale for the arbitration.  This agreement can be made in the parties' agreement or contract, or when the arbitration is submitted to the ICDR.  Any dispute as to the locale will be determined by the ICDR in accordance with the Rules governing the arbitration.

## Refund Schedule

The ICDR's Standard Fee Schedule has a refund schedule in the administrative fee section of the Rules. After 60 days of the ICDR's receipt of the Notice of Arbitration or once an arbitrator has been appointed the filing fees are non-refundable.  The ICDR will only refund filing fees as outlined in the Rules and does not refund arbitrator fees incurred when parties settle their dispute or withdraw their claims.  Case service fees are fully refundable if the parties provide at least 24 hours notice of cancellation prior to the hearing. Note: this refund schedule does not apply to the Pilot Flexible Fee Schedule.

## AAA WebFile

We invite the parties to visit our website to learn more about how to file and manage your cases online. As part of our administrative service, AAA's WebFile allows parties to perform a variety of case related activities, including:

- Filing additional claims;
- Completing the Checklist for Conflicts form;
- Viewing invoices and submitting payment;
- Sharing and managing documents;
- Striking and ranking listed neutrals; and/or
- Reviewing case status or hearing dates and times.

AAA WebFile provides the flexibility for the parties to work online at any time.  Cases originally filed in the traditional offline manner can also be viewed and managed online.  If the case does not appear upon login, you may request access to the case through AAA WebFile on our website at www.icdr.org.  The ICDR will review and process the request for access within 24 hours.

# Exhibit B

----- Forwarded Message -----
**From:** Neda Shahghasemi <ShahghasemiN@adr.org>
**To:** wamed jameel <wamed_jameel@yahoo.com>; "David.Brenner2@kbr.com"
<David.Brenner2@kbr.com>; "wrussell@sdablaw.com" <wrussell@sdablaw.com>;
"pbrenner@sdablaw.com" <pbrenner@sdablaw.com>
**Sent:** Monday, October 8, 2012 2:05 PM
**Subject:** RE: Al Farez-Wamed Co. v. KBR - ICDR Case No. 50 110 T 00698 12

----- Forwarded Message -----

Dear Parties:

I confirm receipt of Mr. Azzawi's email below and the attached document. Respondent may file
an Answering Statement and/or Counterclaim by **November 5, 2012**. If an Answer is not filed
by the said deadline, Claims will be deemed as generally denied by Respondent. Any further
discussion regarding sufficiency of the description of claims asserted shall be reserved for the
arbitrator, once appointed.

I also confirm receipt of Mr. Azzawi's email dated October 4, 2012, attached. Respondent's
comments in response are invited to be submitted by **Wednesday, October 10, 2012**.

As indicated in my October 4, 2012 email, Mr. Azzawi shall raise any objections to the
application of the International Dispute Resolution Procedures as opposed to the Construction
Arbitration Rules by **October 19, 2012**.

Thank you,

**Neda Shahghasemi, Esq.**
**International Case Manager**
International Centre for Dispute Resolution®
A Division of the American Arbitration Association
1633 Broadway, 10th Floor
New York, NY 10019
Tel: +1 212.484.3262
Fax: +1 212.246.7274
Web: www.icdr.org

The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the
recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf
of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all
copies of the transmittal.
Thank you.

# Exhibit C

INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION
Arbitration No. 50-110-T-00698 12

In the Matter of

AL FAREZ-WAMED CO.

Claimant,

VS.

KELLOGG BROWN & ROOT SERVICES, INC.,

Respondent.

---

## RESPONDENT'S STATEMENT OF DEFENSE & COUNTERCLAIMS

---

SCHIRRMEISTER DIAZ-ARRASTIA BREM LLP
Pennzoil Place - North Tower
700 Milam Street, 10th Floor
Houston, Texas 77002
Telephone: (713) 221-2500
Facsimile: (713) 228-3510

*Attorneys for Respondent*
*Kellogg Brown & Root Services, Inc.*

5 November 2012

00148191.DOCX; 4

Pursuant to the ICDR Arbitration Rules, Respondent Kellogg Brown & Root Services, Inc. ("KBR" or "Respondent") respectfully files its Statement of Defense and Counterclaims as set out below.  Pursuant to ICDR Arts. 3.4, 4, 16, and 17, Respondent reserves its right to set out the facts and contentions of law supporting its defenses in further detail in its subsequent memorial as later directed by the Tribunal.

## I.      ALL CLAIMS ADVANCED BY CLAIMANT ARE BARRED BY APPLICABLE TEXAS STATUTE OF LIMITATIONS

1.      On December 14, 2001, the U.S. Department of the Army awarded KBR Contract Number DAAA09-02-D-0007 ("LOGCAP III") to provide logistical support for U.S. Military operations in Kuwait and Iraq primarily during Operation Iraqi Freedom.  On 22 March 2005 KBR and Al Farez-Warned ("Warned" or "Claimant") executed subcontract 02H8-US-SJ00163 ("the Subcontract") for the construction of a 24,000 square foot maintenance facility in support of LOGCAP III.

2.      The Subcontract provides that Texas law applies to any disputes under the contract.

3.      Work under the Subcontract was complete by 31 March 2007.  On 8 April 2007, KBR became aware that Warned was complaining to the Army's Administrative Contracting Officer that KBR owed it money for additional work not included in the Scope of Work ("SOW") for the Subcontract.  On 29 July 2007 KBR received 31 claims from Warned under the Subcontract.

4.      Thereafter, KBR began its review of the claims and was in communication with Claimant regarding its claims evaluation process.  On May 2, 2008, KBR issued a formal response.  Therein, KBR provided Claimant with a detailed analysis and response to each claim.  KBR denied 29 of Warned's 31 claims because it determined each claim was either included within the SOW or because the work comprising Warned's claim was outside the parties' agreement and not directed by KBR.  With respect to the two remaining claims, KBR agreed that they were

valid but notified Wamed that KBR would not pay Wamed any money for the two claims. KBR explained that, although KBR had determined that those two claims were valid, the amount KBR owed Wamed on the two valid claims was less than the amount of the existing backcharges Wamed owed KBR for work included in the SOW that Claimant did not perform, and which KBR self-performed. Although Wamed had been unequivocally notified of KBR's denial of the claims on 2 May 2008, KBR reiterated its position on 22 May 2008.

5.      Claimant filed its initial Demand for Arbitration on 24 September 2012.

6.      Under Texas's four-year statute of limitations, Claimant had until 2 May 2012 to bring a claim for breach of contract or an action on a debt. *See* Tex. Civ. Prac. & Rem.Code Ann. § 16.051; 16.004. Accordingly, Claimant's arbitration is barred by the Texas four-year statute of limitations.

## II.      RESPONDENT'S DENIAL OF CLAIMS ADVANCED BY CLAIMANT

7.      Subject to the foregoing objections and pursuant to Article 3 of the ICDR Arbitration Rules, KBR denies all of the claims advanced by Wamed in its Statement of Claim.

8.      In the Amended Demand for Arbitration, Claimant alleges that KBR owes it $2,777,800.00 "[d]ue to unprofessional scope of work and drawings submitted by KBR and due to KBR engineering request to change all the drawings and due to KBR always breach the contract and change orders and due to no role and monitoring the contract by the contracting officer as it's a cost plus army contract [sic]." Wamed Demand for Arbitration, at 1.

9.      KBR denies this claim. KBR has fully paid Wamed for its performance under the contract and does not owe Wamed for any work that was not part of the parties' agreement. Further, KBR denies that it orally directed Wamed to perform work outside of the contractual agreement of the parties.

10.      Further, Wamed breached the terms of the subcontract by failing to perform work required in the SOW.  KBR does not owe Wamed payment for work it did not perform and work KBR was forced to self-perform in order to complete the maintenance facility project.

11.      Pursuant to ICDR Arts. 3.4, 4, 16, and 17, Respondent reserves its right to set out the facts and contentions of law supporting its defenses in further detail as later directed by the Tribunal.

### III.      RESPONDENT'S BRIEF STATEMENT DESCRIBING ITS COUNTERCLAIMS

12.      Subject to the Tribunal's ruling on the statute of limitations issue, which bars this arbitration, and pursuant to ICDR Article 3.2, KBR briefly sets out its counterclaims as follows.

13.      As referenced above, KBR has suffered various forms of damage and associated expense proximately caused by Wamed's failure to perform its duties pursuant to the terms of the Subcontract.  KBR asserts its right to all relief afforded to KBR.

14.      Subject to the Tribunal's ruling on KBR's statute of limitations objection and pursuant to ICDR Arts. 4, 16 and 17, Respondent reserves its right to set out the facts, contentions of law, and the relief claimed in its counterclaims in further detail as later directed by the Tribunal and pursuant to the ICDR Rules.

### IV.      RESPONDENT'S DESIGNATION OF ARBITRATOR

15.      Pursuant to the terms of the agreement to arbitrate, the ICDR rules, and the correspondence from the ICDR dated 23 October 2012, Respondent makes the below designation as its party-appointed arbitrator:

> Peter J. Comodeca
> Calfee, Halter & Griswold LLP
> The Calfee Building
> 1405 East Sixth Street
> Cleveland, Ohio 44114-1607
> 216.622.8830
> pcomodeca@calfee.com

## V.    ADMINISTRATIVE INFORMATION

16.    Copies of this Response are being served simultaneously on all other parties to the arbitration by email and courier as follows:

> Wameedh al Azzawi
> General Manager, Al Farez-Wamed Co.
> 888 Williams St.
> Tracy, CA 95376

Respectfully Submitted,

SCHIRRMEISTER DIAZ-ARRASTIA BREM LLP

*[signature]*

Margaret T. Brenner
William W. Russell
Pennzoil Place - North Tower
700 Milam Street, 10th Floor
Houston, Texas 77002
Telephone: (713) 221-2500
Facsimile: (713) 228-3510
    pbrenner@sdablaw.com
    wrussell@sdablaw.com

***Attorneys for Respondent***
***Kellogg Brown & Root Services, Inc.***

4

# Exhibit D



**I C D R**   International Centre
for Dispute Resolution

Thomas Ventrone
Vice President

1633 Broadway, 10th Floor, New York, NY 10019
telephone: 212-484-4181 facsimile: 212-246-7274
internet: http://www.adr.org/ICDR

November 13, 2012

**Via E-Mail Only**

Wameedh al Azzawi
Al Farez-Wamed Co.
888 Willames Street
Tracy, CA  95376

David Brenner
KBR
4100 Clinton Drive
Houston, TX  77002

William W. Russell
Peggy Brenner
Schirrmeister Diaz-Arrastia Brem LLP
700 Milam
10th Floor
Houston, TX  77002

Re: 50 110 T 00698 12
    Al Farez-Wamed Co.
    vs
    Kellogg Brown and Root LLC

Dear Parties:

I confirm receipt of Respondent's Statement of Defense and Counterclaims on November 5, 2012.  I understand that a copy was sent to Claimant. I note that the Counterclaims are subject to the Panel's decision on the statute of limitations defense. I also note that the ICDR has not received any filing fee associated with the Counterclaims at this time. Therefore, the ICDR does not consider any Counterclaims completely filed at this point.

I also confirm receipt of both sides' arbitrator selection. I have contacted the arbitrators and will report back as soon as I received their documents.

Please feel free to contact the undersigned should you have any questions.

Sincerely,

Neda Shahghasemi                    Michael Namias
International Case Manager           ICDR Supervisor
212 484 3262                         212 484 4170
ShahghasemiN@adr.org                 NamiasM@adr.org



# Exhibit E

INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION
Arbitration No. 50-110-T-00698 12

In the Matter of

AL FAREZ-WAMED CO.

Claimant,

VS.

KELLOGG BROWN & ROOT SERVICES, INC.,

Respondent.

---

**RESPONDENT'S FIRST AMENDED
STATEMENT OF DEFENSE& COUNTERCLAIMS**

---

SCHIRRMEISTER DIAZ-ARRASTIA BREM LLP
Pennzoil Place - North Tower
700 Milam Street, 10th Floor
Houston, Texas 77002
Telephone: (713) 221-2500
Facsimile: (713) 228-3510

*Attorneys for Respondent
Kellogg Brown & Root Services, Inc.*

February 7, 2013

Pursuant to the ICDR Arbitration Rules and the request by the ICDR, Respondent Kellogg Brown & Root Services, Inc. ("KBR" or "Respondent") respectfully files its First Amended Statement of Defense and Counterclaims as set out below. Pursuant to ICDR Arts. 3.4, 4, 16, and 17, Respondent reserves its right to set out the facts and contentions of law supporting its defenses in further detail in its subsequent memorial as later directed by the Tribunal.

## I.   ALL CLAIMS ADVANCED BY CLAIMANT ARE BARRED BY APPLICABLE TEXAS STATUTE OF LIMITATIONS

1.     On December 14, 2001, the U.S. Department of the Army awarded KBR Contract Number DAAA09-02-D-0007 ("LOGCAP III") to provide logistical support for U.S. Military operations in Kuwait and Iraq primarily during Operation Iraqi Freedom.  On 22 March 2005 KBR and Al Farez-Wamed ("Wamed" or "Claimant") executed subcontract 02H8-US-SJ00163 ("the Subcontract") for the construction of a 24,000 square foot maintenance facility in support of LOGCAP III.

2.     The Subcontract provides that Texas law applies to any disputes under the contract.

3.     Work under the Subcontract was complete by 31 March 2007.  On 8 April 2007, KBR became aware that Wamed was complaining to the Army's Administrative Contracting Officer that KBR allegedly owed it money for additional work not included in the Scope of Work ("SOW") for the Subcontract.  On 29 July 2007 KBR received 31 claims from Wamed under the Subcontract.

4.     Thereafter, KBR began its review of the claims and was in communication with Claimant regarding its claims evaluation process.  On May 2, 2008, KBR issued a formal response. Therein, KBR provided Claimant with a detailed analysis and response to each claim.  KBR denied 29 of Wamed's 31 claims because it determined each claim was either included within

1

the SOW or because the work comprising Wamed's claim was outside the parties' agreement and not directed by KBR.  With respect to the two remaining claims, KBR agreed that they were valid but notified Wamed that KBR would not pay Wamed any money for the two claims.  KBR explained that, although KBR had determined that those two claims were valid, the amount KBR owed Wamed on the two valid claims was less than the amount of the existing backcharges Wamed owed KBR for work included in the SOW that Claimant did not perform, and which KBR self-performed.  Although Wamed had been unequivocally notified of KBR's denial of the claims on 2 May 2008, KBR reiterated its position on 22 May 2008.

5.      Claimant filed its initial Demand for Arbitration on 24 September 2012.

6.      Under Texas's four-year statute of limitations, Claimant had until 2 May 2012 to bring a claim for breach of contract or an action on a debt.  *See* Tex. Civ. Prac. & Rem.Code Ann. § 16.051; 16.004.  Accordingly, Claimant's arbitration is barred by the Texas four-year statute of limitations.

## II.      RESPONDENT'S DENIAL OF CLAIMS ADVANCED BY CLAIMANT

7.      Subject to the foregoing objections and pursuant to Article 3 of the ICDR Arbitration Rules, KBR denies all of the claims advanced by Wamed in its Statement of Claim.

8.      In the Amended Demand for Arbitration, Claimant alleges that KBR owes it $2,777,800.00 "[d]ue to unprofessional scope of work and drawings submitted by KBR and due to KBR engineering request to change all the drawings and due to KBR always breach the contract and change orders and due to no role and monitoring the contract by the contracting officer as it's a cost plus army contract [sic]."  Wamed Demand for Arbitration, at 1.

9.      KBR denies this claim.  KBR has fully paid Wamed for its performance under the contract and does not owe Wamed for any work that was not part of the parties' agreement.

Further, KBR denies that it orally directed Wamed to perform work outside of the contractual agreement of the parties.

10.     Further, Wamed breached the terms of the subcontract by failing to perform work required in the SOW.  KBR does not owe Wamed payment for work it did not perform and work KBR was forced to self-perform in order to complete the maintenance facility project.

11.     Pursuant to ICDR Arts. 3.4, 4, 16, and 17, Respondent reserves its right to set out the facts and contentions of law supporting its defenses in further detail as later directed by the Tribunal.

## III.     RESPONDENT'S BRIEF STATEMENT DESCRIBING ITS COUNTERCLAIMS

12.     Subject to the Tribunal's ruling on the statute of limitations issue, which bars this arbitration, and pursuant to ICDR Article 3.2, KBR briefly sets out its counterclaims as follows.

13.     As referenced above, KBR has suffered various forms of damage and associated expense proximately caused by Wamed's failure to perform its duties pursuant to the terms of the Subcontract.  KBR asserts its right to all relief afforded to KBR.

14.     Subject to the Tribunal's ruling on KBR's statute of limitations objection and pursuant to ICDR Arts. 4, 16 and 17, Respondent reserves its right to set out the facts, contentions of law, and the relief claimed in its counterclaims in further detail as later directed by the Tribunal and pursuant to the ICDR Rules.

## IV.     ADMINISTRATIVE INFORMATION

15.     Copies of this Response are being served simultaneously on all other parties to the arbitration by email and courier as follows:

> Wameedh al Azzawi
> General Manager, Al Farez-Wamed Co.
> 888 Williams St.
> Tracy, CA 95376

Respectfully Submitted,


SCHIRRMEISTER DIAZ-ARRASTIA BREM LLP


_W.W.Russell_

Margaret T. Brenner
William W. Russell
Briana J. Bassler
Pennzoil Place - North Tower
700 Milam Street, 10th Floor
Houston, Texas 77002
Telephone: (713) 221-2500
Facsimile: (713) 228-3510
         pbrenner@sdablaw.com
         wrussell@sdablaw.com
         bbassler@sdablaw.com

*Attorneys for Respondent*
*Kellogg Brown & Root Services, Inc.*

00151655.DOCX; 1

# Exhibit F

----- Forwarded Message -----
**From:** Markham Ball <markhamball@gmail.com>
**To:** wamed jameel <wamed_jameel@yahoo.com>; "David Brenner (David.Brenner2@kbr.com)" <David.Brenner2@kbr.com>; Peggy Brenner <pbrenner@sdablaw.com>; William Russell <wrussell@sdablaw.com>; DK Hodges <dkhodges@sdablaw.com>; Briana Bassler <bbassler@sdablaw.com>
**Cc:** Tom Welby <twelby@wbgllp.com>; chazas@adr.org; Robert Rubin <rrubin@mccarter.com>
**Sent:** Sunday, February 23, 2014 1:52 PM
**Subject:** Al Farez Wameed, ICDR Case No. 50 110 00698 12 – Supplemental Disclosure Statement

I have been appointed by ICDR as a sole arbitrator in the case of Vega Co. v. Kellogg, Brown & Root Services, Inc., ICDR Case No. 50 132 T 00432 13. The case involves a claim against KBR under a subcontract with Vega. The respondent in the Vega case seems to be the same corporation as the corporation that has been named as the respondent in the Al Farez case. I was appointed as arbitrator in the Vega case on or about November 18, 2013, after disclosing my ongoing assignment in the Al Farez case to the administrator in the Vega case and, through her, to the parties in that case.

Having held a preliminary conference in the Vega case, and having reviewed the claimant's allegations in that case, I have concluded that the two cases involve separate subcontracts under one or more contracts between KBR and the U.S. Government relating to a large construction project in Iraq. The claimants in the two cases are separate unrelated organizations. The issues of fact and law presented in the two cases are entirely different. I have concluded that under these circumstances no additional conflict of interest disclosure statement is required.

I made my initial conflict of interest disclosure in the Al Fared case at the time of my appointment as chair of the tribunal in that case, in July 2013. (There was nothing to disclose.) I am required under Article 7 of the ICDR Rules to notify the parties if new circumstances should arise that "are likely to give rise to justifiable doubts" as to my independence or impartiality. I have concluded that the new circumstance arising in this case—namely, the fact that I shall be serving in two arbitrations that involve a single respondent—is not sufficient to give rise to such justifiable doubts. I am confident that my independence and impartiality are and will remain unimpaired in both cases. I make this supplemental disclosure not because I believe it is required under the rules, but because I believe that full disclosure of even such remotely relevant facts as these enhances confidence in the arbitration process.

Markham Ball
Tribunal Chair

# Exhibit G

September , 2013

**International Centre for Dispute Resolution**

**Case No. 50 110 T 00698 12**

**Al Farez-Wamed Co.,**
**Claimant**

**v.**

**Kellogg Root & Brown,**
**Respondent**

---

**Memorandum of Preliminary Conference**
**and**
**Procedural Order No. 2**

Participating in a telephonic Preliminary Teleconference on September 24, 2013 were:
    Representative of Claimant: Wameedh Al azzawi
    Counsel for Respondent: William W. Russell, Margaret T. Brenner, David Brenner
    Arbitrators: Robert Rubin, Thomas H. Welby, Markham Ball (chair)

It was agreed that the governing procedural rules are the ICDR Rules of Arbitration, June 10, 2010.

Having heard the views of the parties on how the arbitration should proceed, the Tribunal hereby orders:

1.  The proceeding shall be bifurcated, with the first stage being limited to the issue whether the Claimant's Claim is time barred—by the Texas Statute of Limitations or by any other standard that may be applicable. Other issues will be addressed, to the extent necessary following a decision on this first issue.

2.  On or before October 22, Claimant shall furnish to the Tribunal, with a copy to Respondent, a concise statement of each claim that it wishes to have adjudicated in this proceeding. With respect to each claim, the statement shall include a brief description of the nature of the claim, the relief sought and an identification of any and all invoices and other documents in which the claim is asserted.

3.  On or before November 19, each party shall deliver to the other party and to the Tribunal copies of all documents in its possession or subject to its control in which a claim is asserted by Claimant or responded to by Respondent. Included in the documents shall be all records of negotiations between the parties relating to the payment or settlement of the claims.

4.   On or before December 3, each party shall submit to the Tribunal, with copies to the other party, any proposals for further proceeding to resolve the issue of the alleged time bar.  Such proposals may include requests for further discovery of documents, the submission of briefs, a hearing, or any combination of these, and such other elements as the submitting party may propose.

5.   The foregoing schedule may be altered by the Tribunal at the request of either party, or without a request being made, as may be necessary or appropriate to ensure fairness, to expedite this proceeding and to avoid the imposition of undue burdens on either party.

6.   To the extent possible, all written communications in this proceeding shall be by email, except that copies of documents submitted as ordered under paragraph 3 above may be submitted in paper form.  Submissions to the Tribunal shall be in three copies, one to each arbitrator.


So ordered.

The Tribunal
      Robert Rubin
      Thomas H. Welby
      Markham Ball, chair

# Exhibit H

International Centre for Dispute Resolution

Case No. 50 110 T 00698 12

Al Farez-Wameedh Co., Claimant

v.

Kellogg, Brown & Root Services, Inc., Respondent

May 9, 2014

Interim Award

In its Procedural Order No. 2 of September 25, 2013, this tribunal ordered the proceedings in this arbitration to be bifurcated, with the first phase to be restricted to the question whether the Claimant's claims are time barred by the Texas Statute of Limitations or any other standard that may be applicable. The parties have submitted documentary evidence, copies of cases and legal commentary, and written argument on the relevant facts and legal principles. On March 31 a hearing was held before the tribunal. The Claimant was represented by its general manager, Wameedh Al Azzawi. The Respondent was represented by William W. Russell, Esq., and David W. Brenner, Esq.

Having considered all of the evidence and argument presented to it, the tribunal issues this Interim Award.

The arbitration clause in the contract that is the subject of this proceeding provides, "The governing law of this contract shall be the law of Texas, U.S.A., excluding any conflict of law provisions which would lead to the application of a different body of law." Respondent contends that this choice of law clause incorporates the Texas Statute of Limitations. We disagree. Typically, choice of law clauses are interpreted as designating the governing substantive law, but not the procedural law, of the designated jurisdiction. We conclude that the effect of the choice of law clause in this case is to make the law that governs the rights of the parties the substantive law of Texas (including the Texas law of contracts). There has been no showing, however, that the parties also agreed that the laws governing procedures in the courts of Texas, including the Texas Statute of Limitations, would apply in an arbitration, particularly an arbitration with a situs outside Texas.

Respondent asserts that the following provision of the Texas Civil Practice and Remedies Code applies in this case:

> Sec. 16.051. RESIDUAL LIMITATIONS PERIOD. Every action for which there is no express limitations period, except an action for the recovery of real property, must be brought not later than four years after the day the cause of action accrues.

This section appears in Title II of the Civil Practice and Remedies Code, which is headed "Trial, Judgment and Appeal," and in the Subtitle headed "Trial Matters." This Subtitle, and in particular Chapter 16 of the Subtitle (which is headed "Limitations"), appears to apply only to litigation, and to litigation in courts in Texas.[1]

Furthermore, the section relied on by Respondent applies only to "actions." In common legal parlance (and as defined by Black's Law Dictionary) an "action" is a proceeding in a court of law to enforce a right. There is no basis for thinking that the word has a different meaning in the Texas Statute of Limitations.

Thus we find that the Texas Statute of Limitations, by its terms, does not apply to arbitrations. Most clearly it does not apply to arbitrations, such as the one here at issue, that are held outside Texas. We find that the parties did not intend that any of the provisions of that obviously inappropriate statute should apply in an arbitration under their contract. We hold that the Texas Statute of Limitations does not apply in this case.

We note, however, that if the statute were to apply—even if the word "action" were construed to include arbitrations—the statute would not bar Claimant's claim. The statute provides that an action "must be brought not later than four years after the day the cause of action accrues." As noted below, Claimant's cause of action accrued less than four years before the commencement of this arbitration.

Having concluded that the Texas Statute of Limitations does not apply, we have considered whether there may be another set of rules or principles under which Claimant's claim could be held to be time barred. We have found none. For example, for the equitable doctrine of laches to apply, the party relying on that defense must show (1) that the claimant unreasonably delayed in bringing its claim, and (2) that the respondent changed its position to its detriment because of the delay. See City of Fort Worth v. Johnson (Texas Supreme Court, 1964).

In this case, The Claimant did not unreasonably delay in filing its claim for arbitration. Until as late as September 8, 2010, Respondent told Claimant that Claimant's claims were under review and that a final determination of these claims would be made at a future date. By an email dated November 20, 2010, Respondent issued what purported to be its "final" determination that Claimant's claims had been further reviewed and were rejected, and advised Claimant that its only recourse was to file a claim in arbitration. This is the point at which the claims submitted in this arbitration accrued. Claimant's Demand for Arbitration was filed on September 12, 2012, approximately 22 months after that date.

Respondent has failed, furthermore, to demonstrate that the second element of a laches defense has been met. It has not shown that it changed its position to its detriment because of any delay in the filing of the claim in arbitration.

We hold that Claimant's claims in arbitration are not time barred.

---
1

Phase one of this arbitration is ended.  The tribunal will schedule further proceedings in the arbitration in due course.

By the Tribunal:

Robert Rubin
Tom Welby
Markham Ball, chair

*****

Footnote 1.

See the following sections of Chapter 16:

Sec. 16.063.  TEMPORARY ABSENCE FROM STATE.  The absence from this state of a person against whom a cause of action may be maintained suspends the running of the applicable statute of limitations for the period of the person's absence.

Sec. 16.064.  EFFECT OF LACK OF JURISDICTION.  (a)  The period between the date of filing an action in a trial court and the date of a second filing of the same action in a different court suspends the running of the applicable statute of limitations for the period if:
(1)  because of lack of jurisdiction in the trial court where the action was first filed, the action is dismissed or the judgment is set aside or annulled in a direct proceeding;  and
(2)  not later than the 60th day after the date the dismissal or other disposition becomes final, the action is commenced in a court of proper jurisdiction.
(b)  This section does not apply if the adverse party has shown in abatement that the first filing was made with intentional disregard of proper jurisdiction.

# Exhibit I

Procedural Order No. 7

The second prehearing conference in this case, to establish procedures for deciding all remaining issues, was held by conference call on July 1, 2014.  Present on the call were Wameedh Al Azzawi, the claimant; Mark Font, Peggy Brenner and David Brenner, counsel for respondent; Thomas Welby and Robert Rubin, arbitrators; and Markham Ball, tribunal chair.  Taking into account the discussions at the prehearing conference, and memoranda submitted by the parties in anticipation of the conference, the tribunal issues the following order.

1.  On or before July 14 claimant shall identify, by an email to the other party and to the  tribunal, each of the claims he wishes to have considered at the hearing of the case and to be resolved by the tribunal's final award. At the prehearing conference, claimant stated that many, but not necessarily all, of the claims it wishes to make are identified in an Exhibit A that was attached to respondent's email of June 27, 2014.  A copy of Exhibit A is attached hereto. Claimant shall identify those "items" listed in Exhibit A that describe claims that claimant wishes to make.  Claimant may make any changes to the wording of the "items" that claimant believes necessary to reflect his true intent.  If claimant intends to advance any claims that are not listed in Exhibit A, he shall identify each of them separately, briefly stating the alleged factual basis for each claim and the amount of each claim.

2.  On or before July 21 respondent shall identify, by an email to the other party and to the  tribunal, each of the counterclaims it wishes to have considered at the hearing of the case and to be resolved by the tribunal's final award, briefly stating the alleged factual basis for each counterclaim and the amount of each counterclaim.

3.  On or before August 13 each party shall submit to the other a written request for the production of relevant documents believed to be in the other party's custody or control.  Each requested document shall be described with as much specificity as possible, by reference to documents that are individually identified or to a narrow class or classes of documents.  The requested documents shall not be in the possession of the requesting party and shall not have been previously submitted to the other party or to the tribunal.  The requested documents must reasonably be expected to be relevant and material to the outcome of the case, that is, the documents must reasonably be expected to serve as evidence tending to prove or disprove a fact that will determine or help determine the outcome of the case.

4.  A party requested to provide a document shall comply with the request within 30 days of receiving the request.  If, however, it objects to the request, it shall state its objection to requesting party and to the tribunal within 10 days of receiving the request.  Having stated its objection, the objecting party need not provide the requested document unless and until the tribunal orders production or the parties reach an agreement with respect to production of the document.

5.  Following the completion of discovery, the tribunal shall fix the schedule for further proceedings that will take place before the hearing in the case.  These proceedings will include (1) the submission by each party of a list of the witnesses whose testimony it may wish to submit at the hearing of the case; (2) the submission by each party of the documents it intends to rely on as evidence is the case. Except as the tribunal may allow for good cause shown, (1) no witness's testimony may be submitted unless the witness has been named in the witness list, and (2) no document may be relied on as evidence unless it has been timely submitted in advance of the hearing.  The tribunal estimates that the deadline that it fixes for filing witness lists will be no later than September 30, and that the deadline for filing documents will be no later than October 10.

6.  The tribunal, after consulting the parties, shall schedule a hearing in the case for as early a date as is feasible.  Unless either party objects, or the tribunal otherwise directs, the hearing will be held in the offices of McCarter & English in New York City.

7.  No later than 10 days before the start of the hearing, each party shall submit to opposing counsel and to the tribunal an outline of the facts it wishes to prove and the specific remedy or remedies it seeks.

8. The witnesses shall testify under oath or by affirmation. Unless otherwise ordered by the tribunal, the testimony in chief of each witness shall be submitted in the form of a sworn affidavit.  Each party shall make its submissions to the tribunal with copies to the opposing party. Each witness whose written testimony is submitted by one party must be available at the hearing for questioning by the opposing party or its counsel and by the tribunal.  No written testimony will be considered by the tribunal unless the witness is so available. The written testimony of each witness shall be submitted no later than 10 days before the appearance of the witness at the hearing.  Witnesses whose testimony in chief is submitted in writing may provide rebuttal testimony orally.



So ordered.



Markham Ball

For the tribunal



# Exhibit J

# INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION
## Arbitration No. 50-467-T-000707-12

In the Matter of

AL FAREZ-WAMED CO.,

Claimant

vs.

KELLOGG BROWN & ROOT SERVICES, INC.,

Respondent.

---

## RESPONDENT KBR'S AMENDED COUNTERCLAIM

---

SCHIRRMEISTER DIAZ-ARRASTIA BREM LLP
Pennzoil Place - North Tower
700 Milam Street, 10th Floor
Houston, Texas 77002
Telephone: (713) 221-2500
Facsimile: (713) 228-3510

*Attorneys for Respondent*
*Kellogg Brown & Root Services, Inc.*

July 21, 2014

Pursuant to the Tribunal's Procedural Order No. 7 and International Arbitration Article 4, Respondent Kellogg Brown & Root Services, Inc. ("KBR") respectfully files this Amended Counterclaim:

## I.    BACKGROUND

1.    On or about March 22, 2005, Al Farez Warned Co. (Al Farez) was awarded a subcontract to build a vehicle maintenance facility (VMF project) as set forth in the Scope of Work (SOW) dated 21 NOV 2004 for a firm-fixed-price (FFP) of $988,500.00. The subcontract was assigned number 02H8-US-SJ00163. A true and correct copy of the Subcontract, Terms & Conditions, SOW, Subcontract General Conditions, and Subcontract Special Conditions is attached hereto as Exhibit A.

2.    In July 2005, asbestos was discovered on a structure that was being demolished. As part of a change order, the SOW was amended to include the asbestos removal and the value of the subcontract was increased by $5,940.00, to a FFP of $944,440.00. The Change Order and SOW are attached as Exhibit B.

3.    In August 2005, it was determined that a certain concrete slab needed to be demolished and the surface graded. As part of another change order, the SOW was amended to include the demolition and grading work and the price of the VMF project was increased by $28,932.00, to a FFP of $1,023,372.00. The Change Order and SOW are attached as Exhibit C.

4.    In December 2005, Al Farez requested a design change which required less concrete than originally called for in the SOW. As a result another change order was

1

executed and the price of the VMF project was reduced by $524.40 to a FFP of $1,022,847.60. The Change Order is attached as Exhibit D.

5.      Numerous quality and progress issues arose with Al Farez' work during the construction of the facility, including the failure of the concrete used for some support beams and the floor of what was supposed to be second floor offices to develop the required strength. Further, as a result of Al Farez' inadequate labor, delays in securing materials, and poor craftsmanship, a building project which Al Farez agreed to complete in 4 months, took almost 2 years, and KBR had to step in to complete the project.

6.      Al Farez' progress was so slow and its work so poor that KBR issued a Corrective Action Notice to Al Farez in August 2006. Five weeks later, KBR was forced to issue a Stop Work Order to Al Farez. Al Farez was allowed to recommence work on the project, but within days, KBR issued a Letter of Concern to Al Farez. A week later, Al Farez' work on the VMF project was stopped for approximately 2 months. In early December 2006, after multiple meetings and negotiations with KBR regarding scheduling and quality of work, Al Farez was allowed to continue work on the VMF project. However, the quality and progress problems continued and on December 14, 2006, KBR issued another Letter of Concern to Al Farez. On January 26, 2007, Wamed Jameel,[1] on behalf of Al Farez, signed a memorandum acknowledging that Al Farez was not going to fulfill several requirements in the SOW. For example, Al Farez was not going to provide 2 water heaters, 2 spare motors and drives for the rolling doors, or 4 rolling door controllers, all as required by the SOW. A copy of that memorandum is attached as

---

[1]  Wamed Jameel is also known as Wamed I. J. Al-Azzawi and Wameedh Al Azzawi

2

Exhibit E.  Nevertheless, Al Farez continued to work on the VMF project through March 2007.  In addition to the foregoing items, Al Farez did not complete other work required by the SOW of the subcontract.

7.      In addition to the quality issues, Al Farez, contrary to its representations, did not possess adequate capitalization to properly undertake the VMF project.  Even before Al Farez began actual work at the VMF project site, Al Farez requested that KBR revise the payment terms of the contract so that Al Farez could pay for some of the materials used for construction of the VMF project.  During the course of the project, to accommodate Al Farez' funding issues, the payments terms which began as net 30, were changed to net 15, and, finally, to an unprecedented net 3.  As reflected on Exhibit F attached hereto, from July 2005 through April 12, 2007, Al Farez submitted 41 invoices which resulted in KBR paying $946,095.42 to Al Farez for materials and work performed for the VMF project.

8.      Despite several requests, Al Farez refused to submit a Contractor's Affidavit at the conclusion of its work on the project.  On July 11, 2011, a unilateral change order was executed to de-obligate funds for the VMF project.  The change order reduced the value of the subcontract by $76,752.18, to a FFP of $946,095.42 (the amount actually paid to Al Farez).  A copy of that Change Order is attached as Exhibit G.

9.      Several months after demobilizing and ceasing all work on the VMF project, Al Farez sent correspondence to KBR asserting a claim for compensation for 31 alleged additional work items.   Al Farez asserted KBR owed it an additional $985,000.00.  At no time during its work on the VMF project did Al Farez assert a claim

3

for any of those items.  Further, Al Farez wholly failed to comply with the Changes provisions of the Subcontract Special Conditions (Section 4.5 indicates the Subcontractor must assert its right to an equitable adjustment within 15 days) or the Disputes provision Subcontract General Conditions (Section 8.2.1 requires the Subcontractor to present written notice to KBR's project manager within 10 days of obtaining knowledge of the facts giving rise to the claim).  At Mr. Al-Azzawi's repeated insistence, KBR evaluated Al Farez' claim several times.  KBR repeatedly concluded that it was proper to approve only 2 of the 31 items Al Farez had submitted in its claim.  More specifically, KBR approved Al Farez' claim for: a) $5,000.00 for building a ramp and b) $15,000.00 for adding footings to a vehicle lift.  The remaining items in Al Farez' claim were denied because they were for work and materials included in the scope of work and/or because Al Farez refused to submit documentation to support that portion of its claim.

## II.    KBR'S COUNTERCLAIM

10.    Under the terms of its contract with the United States, KBR is reimbursed for the costs of projects, like the VMF, which the Army directs it complete.  However, neither the United States nor KBR should be required to pay the full value of a subcontract when some of the work and/or materials were not supplied/completed, only partially supplied/completed, and/or completed improperly.

11.    As previously discussed, numerous quality issues arose during the construction on the VMF project and Al Farez did not install, and/or complete construction of a number of items required by the scope of work for the subcontract.  As a result, KBR was required to install and/or complete some those items, at its cost, in

4

order to fulfill its contractual obligation to the U.S. Government.  More specifically, and in addition to other items, Al Farez did not:

    a.    install the fire alarm and fire suppression system required by section 10 of the SOW;

    b.    install the PA speakerphone system required by section 10 of the SOW;

    c.    provide two (2) HVAC units as required by section 15 of the SOW;

    d.    install an evaporative cooler as required by section 15 of the SOW;

    e.    complete the electrical work required by section 16 of the SOW;

    f.    provide two (2) water heaters as required by section 15 of the SOW;

    g.    provide two (2) spare motors and drives as required by section 11 of the SOW; and,

    h.    provide four (4) rolling door controllers as required by section 11 of the SOW.

Consequently, it is not proper to include those omitted and/or incomplete items in the value (cost) of the subcontract.

    12.    As a result of Al Farez' failure to provide, install, and/or complete the above described items in the SOW, the value of the subcontract should be reduced as follows:

    a.    fire alarm and fire suppression system: $207,838.00;

    b.    PA speakerphone system:  $2,232.87;

    c.    two (2) HVAC units: $25,304.56;

    d.    install evaporative cooler: $2,000.00;

    e.    electrical work: $60,734.20;

f.      two (2) water heaters: $12,581.00;

g.      two (2) spare motors and drives: $4,025.00; and,

h.      four (4) rolling door controllers: $2,600.00.

In sum, the FFP value of the subcontract should be reduced by at least $317,315.63. Consequently, the value of the VMF project subcontract should have a value of $628,779.79.

13.     At the time Change Order 14 was issued (reducing contract value to $946,095.42, the amount actually paid to Al Farez) KBR was in possession $44,740.00 in funds retained pursuant to the terms of the subcontract. KBR could not release those funds because of Al Farez' failure to execute the Contractor's Affidavit and its continued pursuit of claims against KBR.

14.     After crediting Al Farez for the amount of accrued retainage ($44,740.00) and the 2 approved claims for additional work ($20,000.00), and taking into account the reduced value of the contract, Al Farez should be required to pay KBR $252,575.63, together with interest, costs, and attorney's fees for its failures to comply with the SOW for the subcontract.

### III.   CONCLUSION

For the reasons described herein, KBR requests that upon hearing of this counterclaim, that the Tribunal enter an Award requiring Claimant Al Farez-Wamed Co. to pay to KBR $252,575.63, together with interest, costs, and attorney's fees for its failures to comply with the SOW for the subcontract.

# Exhibit K

# INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION
## Arbitration No. 50-110-T-00698-12

In the Matter of

AL FAREZ-WAMED CO.,

Claimant

v.

KELLOGG BROWN & ROOT SERVICES, INC.,

Respondent.

---

### RESPONDENT KBR'S FIRST AMENDED COUNTERCLAIM

---

SCHIRRMEISTER DIAZ-ARRASTIA BREM LLP
Pennzoil Place - North Tower
700 Milam Street, 10th Floor
Houston, Texas 77002
Telephone: (713) 221-2500
Facsimile: (713) 228-3510

*Attorneys for Respondent*
*Kellogg Brown & Root Services, Inc.*

January 16, 2015

Pursuant to Article 4 of the International Arbitration Rules (as amended and effective June 1, 2009), Respondent Kellogg Brown & Root Services, Inc. ("KBR") respectfully files this First Amended Counterclaim.

The purpose of this amendment is to reduce the amount of certain items within KBR's counterclaim and to correct typographical and calculation errors.

## I.    BACKGROUND

1.      On or about March 22, 2005, Al Farez Wamed Co. (Al Farez) was awarded a subcontract to build a vehicle maintenance facility (VMF project) as set forth in the Scope of Work (SOW) dated 21 NOV 2004 for a firm-fixed-price (FFP) of $988,500.00. The subcontract was assigned number 02H8-US-SJ00163.  A true and correct copy of the Subcontract, Terms & Conditions, SOW, Subcontract General Conditions, and Subcontract Special Conditions is located at KBR-FH-00084 to KBR-FH-000155.

2.      In July 2005, asbestos was discovered on a structure that was being demolished.  As part of a change order, the SOW was amended to include the asbestos removal and the value of the subcontract was increased by $5,940.00, to a FFP of $944,440.00.  The Change Order and SOW are located at KBR-FH-00174 to KBR-FH-000184.

3.      In August 2005, it was determined that a certain concrete slab needed to be demolished and the surface graded.  As part of another change order, the SOW was amended to include the demolition and grading work and the price of the VMF project was increased by $28,932.00, to a FFP of $1,023,372.00. The Change Order and SOW are located at KBR-FH-00207 to KBR-FH-000215.

4.     In December 2005, Al Farez requested a design change which required less concrete than originally called for in the SOW.  As a result another change order was executed and the price of the VMF project was reduced by $524.40 to a FFP of $1,022,847.60.  The Change Order is located at KBR-FH-00295 to KBR-FH-000301.

5.     Numerous quality and progress issues arose with Al Farez' work during the construction of the facility, including the failure of the concrete used for some support beams and the floor of what was supposed to be second floor offices to develop the required strength.  Further, as a result of Al Farez' inadequate labor, delays in securing materials, and poor craftsmanship, a building project which Al Farez agreed to complete in 4 months, took almost 2 years, and KBR had to step in to complete the project.

6.     Al Farez's progress was so slow and its work so poor that KBR issued a Corrective Action Notice to Al Farez in August 2006.  Five weeks later, KBR was forced to issue a Stop Work Order to Al Farez.  Al Farez was allowed to recommence work on the project, but within days, KBR issued a Letter of Concern to Al Farez.  A week later, Al Farez' stopped work on the VMF project for approximately 2 months.  In early December 2006, after multiple meetings and negotiations with KBR regarding scheduling and quality of work, Al Farez was allowed to continue work on the VMF project. However, the quality and progress problems continued and on December 14, 2006, KBR issued another Letter of Concern to Al Farez.  On January 26, 2007, Wamed Jameel,[1] on behalf of Al Farez, signed a memorandum acknowledging that Al Farez was not going to fulfill several requirements in the SOW.  For example, Al Farez was not going to provide

_____
[1] Wamed Jameel is also known as Wamed I. J. Al-Azzawi and Wameedh Al Azzawi

2 water heaters, 2 spare motors and drives for the rolling doors, or 4 rolling door controllers, all as required by the SOW. A copy of that memorandum is located at KBR-FH-002310.. Nevertheless, Al Farez continued to work on the VMF project through March 2007. In addition to the foregoing items, Al Farez did not complete other work required by the SOW of the subcontract.

7.      In addition to the quality issues, Al Farez, contrary to its representations, did not possess adequate capitalization to properly undertake the VMF project. Even before a Notice to Proceed was issued and Al Farez began actual work at the VMF project site, Al Farez requested that KBR revise the payment terms of the contract so that Al Farez could pay for some of the materials used for construction of the VMF project. During the course of the project, to accommodate Al Farez' funding issues, the payments terms which began as net 30, were changed to net 15, and, finally, to an unprecedented net 3. As reflected on payment history summary located at KBR-FH-000735, from July 2005 through April 12, 2007, Al Farez submitted 41 invoices which resulted in KBR paying $946,095.42 to Al Farez for materials and work performed for the VMF project.

8.      Pursuant to the terms the subcontract, KBR withheld 20% of the amount of certain invoices submitted by Al Farez for payment during the course of its work on the VMF. As reflected in the payment history summary located at KBR-FH-000735, the cumulative total of the amounts withheld from payment on Al Farez's invoices was $44,700.00.[2]

---

[2] The amount withheld from payment in construction contracts is commonly referred to as retainage; however, that is a bit of a misnomer in this case because KBR did not actually retain

9.     Despite several requests, Al Farez refused to submit a Contractor's Affidavit at the conclusion of its work on the project.  On July 11, 2011, a unilateral change order was executed to de-obligate funds for the VMF project.  The change order reduced the value of the subcontract by $76,752.18, to a FFP of $946,095.42 (the amount actually paid to Al Farez).  A copy of that Change Order is located at KBR-FH-000442 to KBR-FH-000443.

10.    Several months after demobilizing and ceasing all work on the VMF project, Al Farez sent correspondence to KBR asserting a claim for compensation for 31 alleged additional work items.   Al Farez asserted KBR owed it an additional $985,000.00.  At no time during its work on the VMF project did Al Farez comply with the Changes provisions of the Subcontract Special Conditions (Section 4.5 indicates the Subcontractor must assert its right to an equitable adjustment within 15 days) or the Disputes provision Subcontract General Conditions (Section 8.2.1 requires the Subcontractor to present written notice to KBR's project manager within 10 days of obtaining knowledge of the facts giving rise to the claim).  At Mr. Al-Azzawi's repeated insistence, KBR evaluated Al Farez' claims several times.  KBR repeatedly concluded that it was proper to approve only 2 of the 31 items Al Farez had submitted in its claim. More specifically, KBR approved Al Farez' claim for: a) $5,000.00 for building a ramp and b) $15,000.00 for adding footings to a vehicle lift.  The remaining items in Al Farez's claim were denied because they were for work and materials included in the scope of

the funds.  KBR only sought and was paid the amount actually paid to Al Farez.  KBR did not request and was not paid the amounts withheld from payment on Al Farez invoices for work on the VMF project.

work and/or because Al Farez refused to submit documentation to support that portion of its claim.

## II.    KBR'S COUNTERCLAIM

11.    Under the terms of its contract with the United States, KBR is reimbursed for the reasonable cost of projects, like the VMF, which the Army directs it complete. However, neither the United States nor KBR should be required to pay the full value of a subcontract when some of the work and/or materials were not supplied/completed, only partially supplied/completed, and/or completed improperly.

12.    As previously discussed, numerous quality issues arose during the construction on the VMF project and Al Farez did not install, and/or complete construction of a number of items required by the scope of work for the subcontract. As a result, KBR was required to install and/or complete some those items, at its cost, in order to fulfill its contractual obligation to the U.S. Government. More specifically, and in addition to other items, Al Farez did not:

    a.    install the fire alarm and fire suppression system required by section 10 of the SOW;

    b.    install the PA speakerphone system required by section 10 of the SOW;

    c.    provide two (2) HVAC units as required by section 15 of the SOW;

    d.    install an evaporative cooler as required by section 15 of the SOW;

    e.    complete the electrical work required by section 16 of the SOW;

    f.    provide two (2) water heaters as required by section 15 of the SOW;

    g.    provide two (2) spare motors and drives as required by section 11 of the SOW; and,

      h.      provide four (4) rolling door controllers as required by section 11 of the SOW.

Consequently, it is not proper to include those omitted and/or incomplete items in the value (cost) of the subcontract.

13. The value/cost of the items in the SOW that Al Farez failed to provide, install, and/or complete is as follows:

| | | |
|---|---|---|
| a. | fire alarm system: | $ 8,000.00 |
| b. | PA speakerphone system: | $ 2,232.87 |
| c. | two (2) HVAC units: | $25,304.56 |
| d. | install evaporative cooler: | $ 2,000.00 |
| e. | electrical work: | $40,000.00 |
| f. | two (2) water heaters: | $12,581.00 |
| g. | two (2) spare motors and drives: | $ 4,025.00 |
| h. | four (4) rolling door controllers: | $ 2,600.00 |
| | **TOTAL** | **$96,743.43** |

14. After taking into account the value/cost of the items in the SOW that Al Farez failed to provide, install, and/or complete ($96.743.43) and deducting the amount withheld from payment from Al Farez's invoices ($44,700.00) and the amount of the 2 approved claims ($20,000.00), it becomes clear that KBR paid Al Farez more ($32,043.43) than amount it was due for its work on the VMF project. Consequently, Al Farez should be required to pay KBR $32,043.43, together with interest, costs, and attorney's fees for its failures to comply with the SOW for the subcontract.

## III.   CONCLUSION

For the reasons described herein, KBR requests that upon hearing of this counterclaim, that the Tribunal enter an Award requiring Claimant Al Farez-Wamed Co. to pay to KBR $32,043.43, together with interest, costs, and attorney's fees for its failures to comply with the SOW for the subcontract.

Respectfully Submitted,

SCHIRRMEISTER DIAZ-ARRASTIA BREM LLP

Margaret T. Brenner
William W. Russell
Mark A. Font
Briana J. Bassler
Pennzoil Place - North Tower
700 Milam Street, 10th Floor
Houston, Texas 77002
Telephone: (713) 221-2500
Facsimile: (713) 228-3510
   *pbrenner@sdablaw.com*
   *wrussell@sdablaw.com*
   *mfont@sdablaw.com*
   *bbassler@sdablaw.com*

*Attorneys for Respondent*
*Kellogg Brown & Root Services, Inc.*

# Exhibit L

## Background

On September 22 Respondent filed certain requests, including (1) a request that the dates of proceedings herein be extended, (2) a request that Respondent be permitted to submit the testimony of "certain witnesses" by deposition or videoconference, and (3) a request that Claimant's witnesses be subject to the same requirements as KBR's witnesses.

By an email of October 1 the tribunal ruled that Claimant may respond to requests 1 and 3 on or before October 7, and that it would take no action at that time on request 2. In a response of October 7, claimant objected to the proposed schedule extension and stated that Claimant himself should not be considered a witness. Ruling: The timetable shall be extended as provided in Procedural Order No. 9 below; if Claimant testifies at the hearing, he shall be considered a witness (a party witness) and shall be subject to the procdures generally applicable to witnesses.

In a motion of September 30, Claimant requested that the tribunal "strike and dismiss" certain of Claimant's documents and claims. In its email of October 1, the tribunal stated that it would take no action at that time on that request.

On October 3, Respondent requested that the tribunal reconsider its decision of October 1 to take no action with regard to its September 30 motion to strike, and that it require Claimant to respond to the motion. Later on October 3, Claimant submitted a response in opposition to Claimant's motion of September 30. Claimant's request that the tribunal reconsider its decision of October 1 is denied.

On October 6 Claimant moved the tribunal to strike certain of Respondent's documents and to appoint an expert. The tribunal will take no action on this motion at this time.

On October 6, Respondent alleged by email that Claimant had not properly responded to Respondent's requests for discovery. It asked the tribunal to issue an order "requiring Claimant to promptly serve proper responses and/or impose an appropriate punishment." Claimant responded the same day with an email stating that Respondent's response was not proper and asking that Respondent be punished. Respondent's request is denied. The reciprocal requests for the imposition of sanctions are denied without prejudice.

In light of the foregoing the tribunal issues the following procedural order.

## Procedural Order No. 9

1. On or before November 12, each party shall submit to the tribunal all documents that it wishes to rely on as evidence in the proceeding.

   *It will be important for the tribunal to know exactly what documents each party intends to rely on. Consequently, unless good cause is shown, the tribunal will*

*consider as evidence in the case only those documents that are submitted as evidence on or before November 12. The tribunal notes that each party has already filed numerous documents with the tribunal, sometimes identifying them as "exhibits." The tribunal will not consider any of those documents as evidence unless they are submitted anew in the evidence submission phase.*

2. If either party wishes to submit witness testimony at the hearing, that party shall, on or before **December 15, 2014**, submit to the tribunal, with a copy to the other party, a tentative list of any witnesses (including expert witnesses and party witnesses) that it anticipates it will call to testify at the hearing, together with a one or two sentence summary of the substance of each witness's expected testimony and the basis for the witness's knowledge. In addition, on or before January 5, 2015, a party may submit sworn written testimony from any one or more witnesses. Unless otherwise ordered by the tribunal, any witness submitting written testimony must be made available to appear for cross examination at the hearing, if requested by a party or the tribunal. Any witness testifying as an expert witness shall be identified as such, and his or her testimony in chief shall be submitted in writing on or before January 5, 2015.

> *It will be important for the tribunal to know exactly what witnesses each party intends to present and what they will talk about. Consequently, unless good cause is shown, the tribunal will not consider the testimony of witnesses other than those named in a party's witness list or whose statement has been timely submitted as provided in this paragraph 2.*

The foregoing does not apply to witnesses called as rebuttal witnesses. Either party may call rebuttal witnesses not previously identified. Their testimony may relate only to issues addressed in the opposing party's evidence.

3. On or before January 26, 2015 either party may, in a writing to the tribunal with a copy to the other party, briefly outline the legal and factual contentions on which it intends to rely, and may also propose an agenda for the hearing, stating the order in which issues should be presented and witnesses heard. The tribunal may wish to schedule an additional prehearing conference after receiving proposals from either party.

4. The hearing in the case shall commence on March 2, 2015, to continue if necessary for up to four additional days. The hearing will be held in New York City at the offices of the American Arbitration Association.

<u>Discussion</u>

The tribunal regards the recent flurry of filings by both parties as unproductive, at best. We have concluded that justice will best be served, and a fair disposition of the case arrived at as expeditiously as possible, if the various contentions of the parties can be fully heard, with evidence and argument by both sides, at the hearing in the case. At the present stage of the proceedings, there is little or no evidence in the record relating the issues now being raised by the parties. We deem the issues in the current filings to be unripe for decision on the record before us, and we believe that attempting to address these issues piecemeal would unduly complicate and delay the proceeding.

As stated in our Procedural Order No. 8, the claims and counterclaims in the case are those defined in Claimant's email of July 14 and Respondent's email of July 21. As stated in Procedural Order No. 9 above, if in the future either party attempts to submit a document into evidence that was not included in that party's evidence submission due on or before November 12, that document, on objection by the other party, will not be admitted into evidence, unless good cause is shown for its late submission. If either party proffers documents as evidence, even documents that were timely submitted, that do not relate to issues within the scope of the issues defined in the above mentioned emails of July 14 and 21, or that should be excluded on any other ground, the other party may object to the introduction of such evidence, stating its reasons for the objection, and shall do so as early as practicable. The tribunal will rule on any objections at the hearing, after giving both parties an opportunity to present relevant evidence and argument.

With respect to Respondent's request that we order Claimant to respond "properly" to Respondent's document requests, Respondent may call at the hearing any witness believed to have knowledge of Claimant's ability to produce relevant requested documents and may at the hearing offer argument on what should be the consequences of any failure on Claimant's part to comply with any request for relevant documents.

For the tribunal,

Markham Ball, chair

# Exhibit M

----- Forwarded Message -----
**From:** Markham Ball <markhamball@gmail.com>
**To:** Mark Font <mfont@sdablaw.com>; DK Hodges <dkhodges@sdablaw.com>; warned jameel <warned_jameel@yahoo.com>; Peggy Brenner <pbrenner@sdablaw.com>; Marc Folsom <Marc.Folsom@kbr.com>
**Cc:** Robert Rubin <rrubin@mccarter.com>; Tom Welby <twelby@wbgllp.com>; Tom Simotas <SimotasAt@adr.org>
**Sent:** Thursday, August 13, 2015 7:54 AM
**Subject:** Al Farez v. KBR--Procedural Order No. 14

At the conclusion of the hearing in this case, the tribunal asked that post hearing briefs be submitted within 45 days.

1. Each party is asked to assess the claims asserted by the other party ,and, with respect to each such claim, whether the evidence in the record (i.e., testimony and exhibits) is sufficient to satisfy the asserting party's burden of proof. If not, with respect to each such claim state in what specific respects the burden of proof is not satisfied.

2. With respect to each counterclaim, if Respondent incurred costs to cure an alleged deficiency in Claimant's performance:

   --What evidence, if any, is there in the record to establish the amount of these costs?
   --To what extent, if any, does the record show to whether Respondent has recovered these costs, or may recover these costs, from the Government under its prime contract?

3. Under what legal authority, if any, may Respondent recover, or seek to recover, the amounts of its counterclaims:

   --The terms of the subcontract (specifically, what terms)?
   --The Federal Acquisition Regulation or another Government regulation (identify the sections)?
   --The rules of the applicable Texas law on contracts, breach of contract, and damages for breach of contract (how might such rules apply)?

4. May the Tribunal take notice (the equivalent of judicial notice) of the terms of the prime contract (Army Contract ROCAP III, DAAA-0902-D-0007), as published by the Department of the Army?

The parties shall file their briefs on or before September 21.

For the Tribunal
Markham Ball, chair

Reply  Forward

Click here to Reply or Forward

3.63 GB (24%) of 15 GB used
Manage
Terms - Privacy
Last account activity: 26 minutes ago
Details

# Exhibit N

INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION
International Arbitration Tribunal

---

Al Farez-Wamed Co.,

        Claimant,

v.

                            ICDR Case No. 50 2012 000698
                            (Formally 50 110 T 000698 12)

Kellogg Brown and Root LLC,

        Respondent.

---

## PARTIAL FINAL AWARD

We, THE UNDERSIGNED ARBITRATORS, having been designated in accordance with the arbitration agreement entered into between the above-named parties and dated July 27, 2006, and having been duly sworn, and having duly heard the proofs and allegations of the parties, do hereby, AWARD, as follows:

In this case, Claimant Al Farez Wamed Co. ("Claimant") seeks to recover the costs of extra work—the costs of work not called for under its written subcontract with Respondent Kellogg Brown and Root LLC ("Respondent" or "KBR")—that it incurred in the course of a project for the construction of a military facility in Iraq. Respondent asserts counterclaims. In the paragraphs below, we consider, first, Claimant's claims, and, second, Respondent's counterclaims.

### The Claims

Claimant worked under difficult war time conditions. Clearly, it did a certain amount of work not called for by the subcontract's Statement of Work. Some of this extra work Claimant did on its own initiative and voluntarily. Claimant's project manager and its representative at the hearing, Wameedh Al Azzawi, asserted at the hearing that his intention was to correct errors in the Statement of Work and to provide a better product than the Statement of Work required. Some of the extra work was done with at least the tacit approval of KRB personnel. None of the extra work was authorized by a written change order issued by the contracting officer.

Claimant's Claim consists of 45 separate claims. Recognizing that most, if not all, of these individual claims were claims under the subcontract's changes clause, we instructed Claimant to submit evidence to show, with respect to each claim item:

1. The extra work done.
2. The costs of doing the extra work.
3. The subcontract provision, if any, (e.g., the statement of work) most relevant to that work.
4. The change order or orders, or other circumstances, that made it necessary to do the extra work.



These instructions were included in Procedural Orders No. 11 and 13 of April 7, and July 13, 2015, and were repeated at the beginning of the hearing, before Claimant presented its evidence (Tr. 29-301), and during Claimant's presentation of evidence (Tr. 434).[1]

We have carefully reviewed each of Claimant's individual claims. We have analyzed the extent to which Claimant has or has not followed our often repeated instructions regarding the evidence that must be submitted. Under the governing law, Claimant has the burden of proof to prove its claims. As a matter of law, the tribunal may award damages with respect to any claim only to the extent Claimant has shown by a preponderance of the evidence that it is entitled to an award.

As indicated below, Claimant has failed to carry its burden of proof with respect to any of its claims. Most critically, it has failed to introduce evidence to establish even a prima facie case showing the amounts, if any, of the costs it incurred in doing any of the items of extra work covered by its claims. For this reason, and for the additional reasons stated in the paragraphs that follow, we deny all of Claimant's claims.

### Claim by Claim Analysis

Claim No. 1:  100 KV Generator ($36,000.00)

   AWARD:  $0 - Claimant failed to furnish sufficient, credible evidence to establish a prima facie case for this claim item.

Claimant failed to prove that providing a generator (together with fuel and maintenance) for use in the construction of the vehicle maintenance facility ("VMF") was extra work or not within the scope of work of the subcontract. In fact, on cross examination Claimant's witness admitted that providing a generator was in the scope of work.

Claimant failed to prove that it complied with the contractual requirements for seeking a change order or an equitable adjustment for additional compensation under the subcontract terms for this claim.

Claimant failed to provide evidence to show the actual cost incurred in providing a generator.

Claim No. 2:  New Separate Footings and Tie Beams ($150,000.00)

   AWARD:  $0 - Claimant failed to furnish sufficient, credible evidence to establish a prima facie case for this claim item.

---

[1] References to the transcript (Tr.) are to the transcript prepared by the Digital Evidence Group, which Respondent had retained. Respondent sent copies of this transcript to the tribunal and also, Respondent tells us, to the Claimant. A second reporter, from another reporting service retained by the Claimant, was present and appeared to be recording the proceedings. We have not, however, been furnished with any transcript that that reporter may have prepared.

Claimant failed to prove that changing the office foundation design from a continuous footer to separate footings was extra work and not within the scope of work of the subcontract, or that it was necessary or requested by Respondent.

Claimant failed to prove it complied with the contractual requirements for seeking a change order or an equitable adjustment for additional compensation under the subcontract terms for this claim.

Claimant failed to provide evidence to show the actual cost incurred to change the design and the method of construction of the office foundation portion of the project.

Claim No. 3:  Demolish 6 footings ($15,000.00)

   AWARD:  $0 - Claimant failed to furnish sufficient credible evidence to establish a prima facie case for this claim item.

Claimant failed to prove that demolishing the six footings was extra work and not within the scope of work of the subcontract, that Claimant's failure to properly construct the six footings that had to be demolished was somehow caused by the fault of anyone other than itself, or that the demolition was requested by Respondent.

Claimant failed to prove it complied with the contractual requirements for seeking a change order or an equitable adjustment for additional compensation under the subcontract terms for this claim.

Claimant failed to provide evidence to show the actual cost incurred to demolish six footings.

Claim No. 4:  Demolish Main Office Slab ($25,000.00)

   AWARD:  $0 – Claimant failed to furnish sufficient credible evidence to establish a prima facie case for this claim item.

Claimant offered no testimony in support of this claim.  The documentary evidence offered in support of this claim does not indicate how or why this claim is for extra work or work beyond that required by the scope of work.

Claimant's documentary evidence does not contain a change order, any direction or order from Respondent, or a description of any facts or circumstances that made it necessary to do the work.

Claimant's documentary evidence fails to show that it complied with the contractual requirements for seeking a change order or an equitable adjustment for additional compensation under the subcontract terms for this claim.

Claimant failed to provide evidence to show the actual cost incurred to demolish the main office slab.

Claim No. 5:  Adding Sub-base over Main Office Area ($6,000.00)

   AWARD:  $0 – Claimant failed to furnish sufficient credible evidence to establish a prima facie case for this claim item.

3

Claimant offered no testimony in support of this claim. The documentary evidence offered in support of this claim does not indicate how or why this claim is for extra work or work beyond that required by the scope of work.

Claimant's documentary evidence does not contain a change order, any direction or order from Respondent, or a description of the facts or circumstances that made it necessary to do the work.

Claimant's documentary evidence fails to show that it complied with the contractual requirements for seeking a change order or an equitable adjustment in compensation under the subcontract for this claim.

Claimant failed to provide evidence to show the actual cost incurred to add sub-base over the main office area.

Claim No. 6:  Adding 7 Concrete Columns ($35,000.00)

   AWARD:  $0 – Claimant failed to furnish sufficient credible evidence to establish a prima facie case for this claim item.

Claimant offered no testimony in support of this claim. The documentary evidence offered in support of this claim does not indicate how or why this claim is for extra work or work beyond that required by the scope of work.

Claimant's documentary evidence does not contain a change order, any direction or order from Respondent, or a description of the facts or circumstances which made it necessary to do the work.

Claimant's documentary evidence fails to show that it complied with the contractual requirements for seeking a change order or an equitable adjustment in compensation under the subcontract for this claim.

Claimant failed to provide evidence to show the actual cost incurred to add seven concrete columns.

Claim No. 7:  Adding 7 Steel Columns ($28,000.00)

   AWARD:  $0 – Claimant failed to furnish sufficient credible evidence to establish a prima facie case for this claim.

Claimant offered no testimony in support of this claim. The documentary evidence offered in support of this claim does not indicate how or why this claim is for extra work or work beyond that required by the scope of work.

Claimant's documentary evidence does not contain a change order, any direction or order from Respondent, or a description of the facts or circumstances which made it necessary to do the work.

Claimant's documentary evidence fails to show that it complied with the contractual requirements for seeking a change order or an equitable adjustment in compensation under the subcontract for this claim.

Claimant failed to provide evidence to show the actual cost incurred to add seven steel columns.

4

<u>Claim No. 8</u>:  Increase the Entrance Corridor ($9,000.00)

AWARD:  $0 - Claimant failed to furnish sufficient, credible evidence to establish a prima facie case for this claim item.

Mr. al Azzawi testified on behalf of Claimant in support of this claim that he spoke to Mary DeWitt of the Defense Finance and Audit Agency and he claims that she told him that an invoice for this task had been paid to Respondent by the U.S. Government.  However, on cross examination Mr. al Azzawi could not produce the invoice or any other documentary evidence reflecting such payment.

The documentary evidence offered in support of this claim does not indicate how or why this claim is for extra work or work beyond that required by the scope of work.

Claimant's documentary evidence does not contain a change order, any direction or order from Respondent, or a description of the facts or circumstances which made it necessary to do the work.

Claimant's documentary evidence fails to show that it complied with the contractual requirements for seeking a change order or an equitable adjustment in compensation under the subcontract for this claim.

Claimant failed to provide evidence to show the actual cost incurred to increase the entrance corridor.


<u>Claim No. 9</u>:  Adding Terrace in the Main Office ($18,000.00)

AWARD:  $0 – Claimant failed to furnish sufficient credible evidence to establish a prima facie case for this claim item.

Claimant offered no testimony in support of this claim.  The documentary evidence offered in support of this claim does not indicate how or why this claim is for extra work or work beyond that required by the scope of work.

Claimant's documentary evidence does not contain a change order, any direction or order from Respondent, or a description of the facts or circumstances that made it necessary to do the work.

Claimant's documentary evidence fails to show that it complied with the contractual requirements for seeking a change order or an equitable adjustment in compensation under the subcontract for this claim.

Claimant failed to provide evidence to show the actual cost incurred to add a terrace in the main office.


<u>Claim No. 10</u>:  Building with Thermostone ($20,000.00)

AWARD:  $0 – Claimant failed to furnish sufficient credible evidence to establish a prima facie case for this claim item.

Claimant offered no testimony in support of this claim.  The documentary evidence offered in support of this claim does not indicate how or why this claim is for extra work or work beyond that required by the scope of work.

Claimant's documentary evidence does not contain a change order, any direction or order from Respondent, or a description of the facts or circumstances that made it necessary to do the work.

Claimant's documentary evidence fails to show that it complied with the contractual requirements for seeking a change order or an equitable adjustment in compensation under the subcontract for this claim.

Claimant failed to provide evidence to show the actual cost incurred to build with thermostone.

Claim No. 11:  Adding Kick Plate ($10,000.00)

   AWARD:  $0 – Claimant failed to furnish sufficient credible evidence to establish a prima facie case for this claim item.

Claimant offered no testimony in support of this claim.  The documentary evidence offered in support of this claim does not indicate how or why this claim is for extra work or work beyond that required by the scope of work.

Claimant's documentary evidence does not contain a change order, any direction or order from Respondent, or a description of the facts or circumstances that made it necessary to do the work.

Claimant's documentary evidence fails to show that it complied with the contractual requirements for seeking a change order or an equitable adjustment in compensation under the subcontract for this claim.

Claimant failed to provide evidence to show the actual cost incurred to add a kick plate.

Claim No. 12:  4 Rolling Up Doors ($90,000.00)

   AWARD:  $0 – Claimant failed to furnish sufficient credible evidence to establish a prima facie case for this claim item.

Claimant offered no testimony in support of this claim.  The documentary evidence offered in support of this claim does not indicate how or why this claim is for extra work or work beyond that required by the scope of work.

Respondent's documentary evidence shows the following:

- Claimant's invoice transmittal form file number 2 (ITF No.2) shows that Claimant included four rolling doors as part of the material and equipment included in its Invoice No.2.
- Respondent verified that the materials and equipment, including the rolling doors, were on-site and acceptable under the scope of work.
- Respondent paid Claimant as requested.

Claimant's documentary evidence does not contain a change order, any direction or order from Respondent, or a description of the facts or circumstances that made it necessary to do the work.

Claimant's documentary evidence fails to show that it complied with the contractual requirements for seeking a change order or an equitable adjustment in compensation under the subcontract for this claim.

Claimant failed to provide evidence to show the actual cost incurred to provide four rolling up doors.

6

<u>Claim No. 13</u>:  Adding Additional Steel/Cladding Over Rolling Doors ($25,000.00)

AWARD:  $0 – Claimant failed to furnish sufficient credible evidence to establish a prima facie case for this claim item.

Claimant offered no testimony in support of this claim.  The documentary evidence offered in support of this claim does not indicate how or why this claim is for extra work or work beyond that required by the scope of work.

Claimant's documentary evidence does not contain a change order, any direction or order from Respondent, or a description of the facts or circumstances that made it necessary to do the work.

Claimant's documentary evidence fails to show that it complied with the contractual requirements for seeking a change order or an equitable adjustment in compensation under the subcontract for this claim.

Claimant failed to provide evidence to show the actual cost incurred to add additional steel/cladding over rolling doors.

<u>Claim No. 14</u>:  Cover Roof with Sandwich Panel ($50,000.00)

AWARD:  $0 – Claimant failed to furnish sufficient credible evidence to establish a prima facie case for this claim item.

Claimant offered no testimony in support of this claim.  The documentary evidence offered in support of this claim does not indicate how or why this claim is for extra work or work beyond that required by the scope of work.

Respondent's documentary evidence shows the following:

- The invoice transmittal form file number 1 (ITF:  No.1) shows that Claimant included sandwich panel for the roof as part of the materials included in its Invoice No. 2.
- Respondent verified that the materials, including the sandwich panel, were on-site and acceptable under the scope of work.
- Respondent paid Claimant as requested.

Claimant's documentary evidence does not contain a change order, any direction or order from Respondent, or a description of the facts or circumstances that made it necessary to do the work.

Claimant's documentary evidence fails to show that it complied with the contractual requirements for seeking a change order or an equitable adjustment in compensation under the subcontract for this claim.

Claimant failed to provide evidence to show the actual cost incurred to cover the roof with sandwich panel.

<u>Claim No. 15</u>:  Cover Front of Building with Ceramic Tiles ($5,000.00)

AWARD:  $0 – Claimant failed to furnish sufficient credible evidence to establish a prima facie case for this claim item.



Claimant offered no testimony in support of this claim. The documentary evidence offered in support of this claim does not indicate how or why this claim is for extra work or work beyond that required by the scope of work.

During Claimant's argument in support of this claim, Claimant stated that the tile work at issue was not in the scope of work; that Claimant performed the work on its own initiative; and there was no need for Respondent to pay for it.

Claimant's documentary evidence does not contain a change order, any direction or order from Respondent, or a description of the facts or circumstances that made it necessary to do the work.

Claimant's documentary evidence fails to show that it complied with the contractual requirements for seeking a change order or an equitable adjustment in compensation under the subcontract for this claim.

Claimant failed to provide evidence to show the actual cost incurred in covering the front of the building with ceramic tile.

Claim No. 16: Cover Tie Beam Parapet with Stone ($6,000.00)

   AWARD: $0 – Claimant failed to furnish sufficient credible evidence to establish a prima facie case for this claim item.

On Claimant's behalf, Mr. Al Azzawi testified in support of this claim that he spoke to an unidentified contracting officer who stated that Claimant did more work than this unnamed person expected. That testimony did not explain how or why the claim is for extra work or work beyond that required by the scope of work. The testimony did not contain a description of the facts or circumstances that made it necessary to do the work.



The testimony did not show that Claimant complied with the contractual requirements for seeking a change order or an equitable adjustment in compensation under the subcontract for this claim

Claimant's documentary evidence does not contain a change order, any direction or order from Respondent, or a description of the facts or circumstances which made it necessary to do the work.

Claimant's documentary evidence fails to show that it complied with the contractual requirements for seeking a change order or an equitable adjustment in compensation under the subcontract for this claim.

Claimant failed to provide evidence to show the actual cost incurred to cover the tie beam parapet with stone. In response to questioning by the arbitrators Mr. Alazzawi stated that records of material and labor costs were made in Iraq. (Tr. 555-63). His statements in this regard were not offered as sworn witness testimony, and nor did they make it entirely clear whether or not any such records still exist. In any event, Claimant offered no such records in evidence with respect to Claim No. 16 or any other claim.

Claim No. 17: Adding Additional Windows ($23,000.00)

   AWARD: $0 – Claimant failed to furnish sufficient credible evidence to establish a prima facie case for this claim item.



Claimant offered no testimony in support of this claim. However, in response to a question posed by the panel, Mr. Al Azzawi stated that Respondent did not direct or request additional windows and the decision to add extra windows was Claimant's because it wanted to construct a good looking building.

The documentary evidence offered in support of this claim does not indicate how or why this claim is for extra work or work beyond that required by the scope of work.

Claimant's documentary evidence does not contain a change order, any direction or order from Respondent, or a description of the facts or circumstances that made it necessary to do the work.

Claimant's documentary evidence fails to show that it complied with the contractual requirements for seeking a change order or an equitable adjustment in compensation under the subcontract for this claim.

Claimant failed to provide evidence to show the actual cost incurred to add additional windows.

Claim No. 18:  Mezzanine Made of Steel ($40,000.00)

   AWARD:  $0 – Claimant failed to furnish sufficient credible evidence to establish a prima facie case for this claim item.

Claimant offered no testimony in support of this claim. The documentary evidence offered in support of this claim does not indicate how or why this claim is for extra work or work beyond that required by the scope of work.



Claimant's documentary evidence does not contain a change order, any direction or order from Respondent, or a description of the facts or circumstances that made it necessary to do the work.

Claimant's documentary evidence fails to show that it complied with the contractual requirements for seeking a change order or an equitable adjustment in compensation under the subcontract for this claim.

Claimant failed to provide evidence to show the actual cost incurred to install a mezzanine made of steel.

Claim No. 19:  Adding Additional Support for Ducts ($8,000.00)

   AWARD:  $0 – Claimant failed to furnish sufficient credible evidence to establish a prima facie case for this claim item.

Claimant offered no testimony in support of this claim. The documentary evidence offered in support of this claim does not indicate how or why this claim is for extra work or work beyond that required by the scope of work.

Claimant's documentary evidence does not contain a change order, any direction or order from Respondent, or a description of the facts or circumstances that made it necessary to do the work.

Claimant's documentary evidence fails to show that it complied with the contractual requirements for seeking a change order or an equitable adjustment in compensation under the subcontract for this claim.



Claimant failed to provide evidence to show the actual cost incurred to add additional support for ducts.



<u>Claim No. 20</u>:  Adding 6 Footings for Lifts ($15,000.00)

AWARD:  $0 – Claimant failed to furnish sufficient credible evidence to establish a prima facie case for this claim item.

Claimant offered no testimony in support of this claim.  The documentary evidence offered in support of this claim does not indicate how or why this claim is for extra work or work beyond that required by the scope of work.

Claimant's documentary evidence does not contain a change order, any direction or order from Respondent, or a description of the facts or circumstances that made it necessary to do the work.

Claimant's documentary evidence fails to show that it complied with the contractual requirements for seeking a change order or an equitable adjustment in compensation under the subcontract for this claim.

Claimant failed to provide evidence to show the actual cost incurred to add six footings for lifts.


<u>Claim No. 21</u>:  Adding Additional Angles to Mezzanine Deck ($8,000.00)

AWARD:  $0 – Claimant failed to furnish sufficient credible evidence to establish a prima facie case for this claim item.

Claimant offered no testimony in support of this claim.  The documentary evidence offered in support of this claim does not indicate how or why this claim is for extra work or work beyond that required by the scope of work.

Claimant's documentary evidence does not contain a change order, any direction or order from Respondent, or a description of the facts or circumstances that made it necessary to do the work.

Claimant's documentary evidence fails to show that it complied with the contractual requirements for seeking a change order or an equitable adjustment in compensation under the subcontract for this claim.

Claimant failed to provide evidence to show the actual cost incurred to add additional angles to mezzanine deck.


<u>Claim No. 22</u>:  All the Electrical Work ($75,000.00)

AWARD:  $0 – Claimant failed to furnish sufficient credible evidence to establish a prima facie case for this claim item.

Claimant offered no testimony in support of this claim.  The documentary evidence offered in support of this claim does not indicate how or why this claim is for extra work or work beyond that required by the scope of work.

Claimant's documentary evidence does not contain a change order, any direction or order from Respondent, or a description of the facts or circumstances that made it necessary to do the work.

Claimant's documentary evidence fails to show that it complied with the contractual requirements for seeking a change order or an equitable adjustment in compensation under the subcontract for this claim.



Claimant failed to provide evidence to show the actual cost incurred to perform all electrical work.

Claim No. 23:  2 Evaporative Coolers ($50,000.00)

   AWARD:  $0 – Claimant failed to furnish sufficient credible evidence to establish a prima facie case for this claim item.

Claimant offered no testimony in support of this claim.  The documentary evidence offered in support of this claim does not indicate how or why this claim is for extra work or work beyond that required by the scope of work, or that Claimant actually furnished or installed the equipment.

Claimant's documentary evidence, including a "Bill of Lading" (Exhibit "C"), does not contain a change order, any direction or order from Respondent, or a description of the facts or circumstances under which this work was done.

Claimant's documentary evidence fails to show that it complied with the contractual requirements for seeking a change order or an equitable adjustment in compensation under the subcontract for this claim.

Claimant failed to provide evidence to show the actual cost incurred to furnish and install evaporative coolers.



Claim No. 24:  Concrete Slab for Steel Structure ($100,000.00)

   AWARD:  $0 – Claimant failed to furnish sufficient credible evidence to establish a prima facie case for this claim item.

Claimant offered no testimony in support of this claim.  The documentary evidence offered in support of this claim does not indicate how or why this claim is for extra work or work beyond that required by the scope of work.

Claimant's documentary evidence does not contain a change order, any direction or order from Respondent, or a description of the facts or circumstances that made it necessary to do the work.

Claimant's documentary evidence fails to show that it complied with the contractual requirements for seeking a change order or an equitable adjustment in compensation under the subcontract for this claim.

Claimant failed to provide evidence to show the actual cost incurred to construct the concrete slab.

Claim No. 25:  Change Lifting from 14,000 lbs. to 18,000 lbs. ($12,000.00)

   AWARD:  $0 – Claimant failed to furnish sufficient credible evidence to establish a prima facie case for this claim item.

Claimant offered no testimony in support of this claim.  The documentary evidence offered in support of this claim does not indicate how or why this claim is for extra work or work beyond that required by the scope of work.

Claimant's documentary evidence does not contain a change order, any direction or order from Respondent, or a description of the facts or circumstances that made it necessary to do the work.

Claimant's documentary evidence fails to show that it complied with the contractual requirements for seeking a change order or an equitable adjustment in compensation under the subcontract for this claim.

Claimant failed to provide evidence to show the actual cost incurred to increase the capacity of the lift.


Claim No. 26:  Pour Concrete for Ramp ($5,000.00)

AWARD:  $0 – Claimant failed to furnish sufficient credible evidence to establish a prima facie case for this claim item.

Claimant offered no testimony in support of this claim.  The documentary evidence offered in support of this claim does not indicate how or why this claim is for extra work or work beyond that required by the scope of work.

Claimant's documentary evidence does not contain a change order, any direction or order from Respondent, or a description of the facts or circumstances that made it necessary to do the work. However, some documentary evidence does indicate that Respondent's VTR accepted this item as work outside the scope of work.

Claimant's documentary evidence fails to show that it complied with the contractual requirements for seeking a change order or an equitable adjustment in compensation under the subcontract for this claim.

Claimant failed to provide evidence to show the actual cost incurred to pour this concrete ramp.


Claim No. 27: Provide 3 Vehicle Lifting ($15,000.00)

AWARD:  $0 – Claimant failed to furnish sufficient credible evidence to establish a prima facie case for this claim item.

Claimant offered no testimony in support of this claim.  The documentary evidence offered in support of this claim does not indicate how or why this claim is for extra work or work beyond that required by the scope of work.

Claimant's documentary evidence does not contain a change order, any direction or order from Respondent, or a description of the facts or circumstances that made it necessary to do the work.

Claimant's documentary evidence fails to show that it complied with the contractual requirements for seeking a change order or an equitable adjustment in compensation under the subcontract for this claim.

Claimant failed to provide evidence to show the actual cost incurred to demolish the main office slab. Nevertheless, Respondent provided documentary evidence that it paid Claimant for this work and equipment.

Claim No. 28:  Demobilization ($10,000.00)

AWARD:  $0 – Claimant failed to furnish sufficient credible evidence to establish a prima facie case for this claim item.

Claimant offered no testimony in support of this claim.  The documentary evidence offered in support of this claim does not indicate how or why this claim is for extra work or work beyond that required by the scope of work.

Claimant's documentary evidence does not contain a change order, any direction or order from Respondent, or a description of the facts or circumstances that made it necessary to do the work.

Claimant's documentary evidence fails to show that it complied with the contractual requirements for seeking a change order or an equitable adjustment in compensation under the subcontract for this claim.

Claimant failed to provide evidence to show the actual cost incurred to demobilize from the project.

Claim No. 29:  Finish Concrete Using Power Float Machine ($18,000.00)

AWARD:  $0 – Claimant failed to furnish sufficient credible evidence to establish a prima facie case for this claim item.

Claimant offered no testimony in support of this claim.  The documentary evidence offered in support of this claim does not indicate how or why this claim is for extra work or work beyond that required by the scope of work.  This is only a matter of means and methods to produce an item within the scope of work.

Claimant's documentary evidence does not contain a change order, any direction or order from Respondent, or a description of the facts or circumstances that made it necessary to do the work.

Claimant's documentary evidence fails to show that it complied with the contractual requirements for seeking a change order or an equitable adjustment in compensation under the subcontract for this claim.

Claimant failed to provide evidence to show the actual cost incurred to use the power float.

Claim No. 30:  Provide Shelves for Parts Room ($21,000.00)

AWARD:  $0 – Claimant failed to furnish sufficient credible evidence to establish a primae facie case for this claim item.

Claimant offered no testimony in support of this claim.  The documentary evidence offered in support of this claim does not indicate how or why this claim is for extra work or work beyond that required by the scope of work.

Claimant's documentary evidence does not contain a change order, any direction or order from Respondent, or a description of the facts or circumstances that made it necessary to do the work.

Claimant's documentary evidence fails to show that it complied with the contractual requirements for seeking a change order or an equitable adjustment in compensation under the subcontract for this claim.

Claimant failed to provide evidence to show the actual cost incurred to furnish and install these shelves. Respondent claims to have paid for these shelves under the contract.

Claim No. 31:  Provide 2 Exhaust Fans for Bathrooms ($7,000.00)

   AWARD:  $0 – Claimant failed to furnish sufficient credible evidence to establish a prima facie case for this claim item.

Claimant offered no testimony in support of this claim.  The documentary evidence offered in support of this claim does not indicate how or why this claim is for extra work or work beyond that required by the scope of work.

Claimant's documentary evidence does not contain a change order, any direction or order from Respondent, or a description of the facts or circumstances that made it necessary to do the work.

Claimant's documentary evidence fails to show that it complied with the contractual requirements for seeking a change order or an equitable adjustment in compensation under the subcontract for this claim.

Claimant failed to provide evidence to show the actual cost incurred to furnish and install these exhaust fans.

Claim No. 32:  20% Retainage ($51,142.00)

   AWARD:  $0 – Claimant failed to furnish sufficient credible evidence to establish a prima facie case for this claim item.

Claimant offered no testimony in support of this claim.

Claimant's documentary evidence does not support its claim.

Claimant's documentary evidence fails to show that it complied with the contractual requirements for seeking retainage.

Claimant failed to provide evidence to show the actual amount of retainage due, if any.

Claim No. 33:  Delays Caused by KBR ($1,792,000.00)

   AWARD:  $0 – Claimant failed to furnish sufficient credible evidence to establish a prima facie case for this claim item.

Claimant offered no testimony in support of this claim.  The documentary evidence offered in support of this claim does not indicate how or why this claim is for extra work or work beyond that required by the scope of work, or for actual delay damages.

Claimant's documentary evidence does not contain a change order, any direction or order from Respondent, or a schedule analysis explaining the claimed delay or who or what caused it.

14

Claimant's documentary evidence fails to show that it complied with the contractual requirements for seeking a change order or an equitable adjustment in compensation under the subcontract for this claim.

Claimant failed to provide evidence to show the actual cost, if any, of the claimed delay.

Claim No. 34:  Removal of Asbestos ($5,940.00)

   AWARD:  $0 – Claimant failed to furnish sufficient credible evidence to establish a prima facie case for this claim item.

Claimant offered no testimony in support of this claim.  The documentary evidence offered in support of this claim does not indicate how or why this claim is for extra work or work beyond that required by the scope of work.

Claimant's documentary evidence does not contain a change order, any direction or order from Respondent, or a description of the facts or circumstances that made it necessary to do the work.

Claimant's documentary evidence fails to show that it complied with the contractual requirements for seeking a change order or an equitable adjustment in compensation under the subcontract for this claim.

Claimant failed to provide evidence to show the actual cost incurred to remove the asbestos.

Claim No. 35:  Dowel Slab ($85,400.00)

   AWARD:  $0 – Claimant failed to furnish sufficient credible evidence to establish a prima facie case for this claim item.

Claimant offered no testimony in support of this claim.  The documentary evidence offered in support of this claim does not indicate how or why this claim is for extra work or work beyond that required by the scope of work.

Claimant's documentary evidence does not contain a change order, any direction or order from Respondent, or a description of the facts or circumstances that made it necessary to do the work.

Claimant's documentary evidence fails to show that it ever complied with the contractual requirements for seeking a change order or an equitable adjustment in compensation under the subcontract for this claim.

Claimant failed to provide evidence to show the actual cost incurred to install dowels in the slab.

Claim No. 36:  Additional Concrete for Dowelled Area ($35,000.00)

   AWARD:  $0 – Claimant failed to furnish sufficient credible evidence to establish a prima facie case for this claim item.

Claimant offered no testimony in support of this claim.  The documentary evidence offered in support of this claim does not indicate how or why this claim is for extra work or work beyond that required by the scope of work.

Claimant's documentary evidence does not contain a change order, any direction or order from Respondent, or a description of the facts or circumstances that made it necessary to do the work.

Claimant's documentary evidence fails to show that it complied with the contractual requirements for seeking a change order or an equitable adjustment in compensation under the subcontract for this claim.

Claimant failed to provide evidence to show the actual cost incurred to install this concrete.

Claim No. 37:  Material for Ramp ($36,000.00)

AWARD:  $0 – Claimant failed to furnish sufficient credible evidence to establish a prima facie case for this claim item.

Claimant offered no testimony in support of this claim.  The documentary evidence offered in support of this claim does not indicate how or why this claim is for extra work or work beyond that required by the scope of work.

Claimant's documentary evidence does not contain a change order, any direction or order from Respondent, or a description of the facts or circumstances that made it necessary to do the work.

Claimant's documentary evidence fails to show that it complied with the contractual requirements for seeking a change order or an equitable adjustment in compensation under the subcontract for this claim.

Claimant failed to provide evidence to show the actual cost incurred to furnish and place this material.

Claim No. 38:  Demolish Temporary Office/Remove Debris ($22,000.00)

AWARD:  $0 – Claimant failed to furnish sufficient credible evidence to establish a prima facie case for this claim item.

Claimant offered no testimony in support of this claim.  The documentary evidence offered in support of this claim does not indicate how or why this claim is for extra work or work beyond that required by the scope of work.

Claimant's documentary evidence does not contain a change order, any direction or order from Respondent, or a description of the facts or circumstances that made it necessary to do the work.

Claimant's documentary evidence fails to show that it complied with the contractual requirements for seeking a change order or an equitable adjustment in compensation under the subcontract for this claim.

Claimant failed to provide evidence to show the actual cost incurred to demolish the temporary office.

Claim No. 39:  Furnish Ducts in Factory ($87,000.00)

AWARD:  $0 – Claimant failed to furnish sufficient credible evidence to establish a prima facie case for this claim item.

Claimant offered no testimony in support of this claim. The documentary evidence offered in support of this claim does not indicate how or why this claim is for extra work or work beyond that required by the scope of work.

Claimant's documentary evidence does not contain a change order, any direction or order from Respondent, or a description of the facts or circumstances that made it necessary to do the work.

Claimant's documentary evidence fails to show that it complied with the contractual requirements for seeking a change order or an equitable adjustment in compensation under the subcontract for this claim.

Claimant failed to provide evidence to show the actual cost incurred to furnish this duct work.


Claim No. 40:  2 Compressors ($26,000.00)

AWARD:  $0 – Claimant failed to furnish sufficient credible evidence to establish a prima facie case for this claim item.

Claimant offered no testimony in support of this claim. The documentary evidence offered in support of this claim does not indicate how or why this claim is for extra work or work beyond that required by the scope of work. It appears that the construction equipment is owned by the Claimant.

Claimant's documentary evidence does not contain a change order, any direction or order from Respondent, or a description of the facts or circumstances that made it necessary to do the work.

Claimant's documentary evidence fails to show that it complied with the contractual requirements for seeking a change order or an equitable adjustment in compensation under the subcontract for this claim.

Claimant failed to provide evidence to show the actual cost incurred to provide this equipment.


Claim No. 41:  Losses Due to Back Charge/High Loan ($170,000.00)

AWARD:  $0 – Claimant failed to furnish sufficient credible evidence to establish a prima facie case for this claim item.

Claimant offered no testimony in support of this claim. The documentary evidence offered in support of this claim does not indicate how or why this claim is for extra work or work beyond that required by the scope of work.

Claimant's documentary evidence does not contain a change order, any direction or order from Respondent, or a description of the facts or circumstances that made it necessary to do the work.

Claimant's documentary evidence fails to show that it ever complied with the contractual requirements for seeking a change order or an equitable adjustment in compensation under the subcontract for this claim.

Claimant failed to provide evidence to show the actual cost incurred as a result of back charges.

<u>Claim No. 42</u>:  Removal of Part of Factory Area ($28,932.00)

AWARD:  $0 – Claimant failed to furnish sufficient credible evidence to establish a prima facie case for this claim item.

Claimant offered no testimony in support of this claim.  The documentary evidence offered in support of this claim does not indicate how or why this claim is for extra work or work beyond that required by the scope of work.

Claimant's documentary evidence does not contain a change order, any direction or order from Respondent, or a description of the facts or circumstances that made it necessary to do the work.

Claimant's documentary evidence fails to show that it complied with the contractual requirements for seeking a change order or an equitable adjustment in compensation under the subcontract for this claim.

Claimant failed to provide evidence to show the actual cost incurred to remove part of the factory area.


<u>Claim No. 43</u>:  Covering Restroom Walls with Ceramic Tile ($38,000.00)

AWARD:  $0 – Claimant failed to furnish sufficient credible evidence to establish a prima facie case for this claim item.

Claimant offered no testimony in support of this claim.  The documentary evidence offered in support of this claim does not indicate how or why this claim is for extra work or work beyond that required by the scope of work.

Claimant's documentary evidence does not contain a change order, any direction or order from Respondent, or a description of the facts or circumstances that made it necessary to do the work. Claimant appears to have frequently performed work beyond that required by the contract, as a volunteer.

Claimant's documentary evidence fails to show that it complied with the contractual requirements for seeking a change order or an equitable adjustment in compensation under the subcontract for this claim.

Claimant failed to provide evidence to show the actual cost incurred to furnish and install this ceramic tile.


<u>Claim No. 44</u>:  Raise Ceiling Height ($46,000.00)

AWARD:  $0 – Claimant failed to furnish sufficient credible evidence to establish a prima facie case for this claim item.

Claimant offered no testimony in support of this claim.  The documentary evidence offered in support of this claim does not indicate how or why this claim is for extra work or work beyond that required by the scope of work.

Claimant's documentary evidence does not contain a change order, any direction or order from Respondent, or a description of the facts or circumstances that made it necessary to do the work.

Claimant's documentary evidence fails to show that it complied with the contractual requirements for seeking a change order or an equitable adjustment in compensation under the subcontract for this claim.

Claimant failed to provide evidence to show the actual cost incurred to raise the ceiling height of the main building office.

Claim No. 45: 24 HVAC Units ($42,000.00)

AWARD: $0 – Claimant failed to furnish sufficient credible evidence to establish a prima facie case for this claim item.

Claimant offered no testimony in support of this claim. The documentary evidence offered in support of this claim does not indicate how or why this claim is for extra work or work beyond that required by the scope of work.

Claimant's documentary evidence does not contain a change order, any direction or order from Respondent, or a description of the facts or circumstances that made it necessary to do the work.

Claimant's documentary evidence fails to show that it complied with the contractual requirements for seeking a change order or an equitable adjustment in compensation under the subcontract for this claim.

Claimant failed to provide evidence to show the actual cost incurred to furnish and install these 24 each 2-ton split HVAC units.

## Counterclaim Analysis

In evaluating Respondent's counterclaims, we apply the same criteria that we applied to Claimant's claims. We need to know (1) for what work Respondent is claiming compensation, and (2) what were the costs of this work.

Respondent has provided evidence that Claimant failed to perform adequately at least some of the tasks required under the subcontract. Respondent has shown that it itself did work to correct actual or perceived deficiencies. It has failed, however, to provide evidence adequate to show what its costs of doing this remedial work were. In addition, to the extent Respondent's claims may include anticipated future costs—costs that it claims it may incur in the future to complete the remedial work—it has failed similarly to provide evidence of what these future costs will be. Thus, Respondent has failed to carry its burden of proof to establish an essential element of its counterclaims, namely, what were the costs it has incurred, or may incur in the future, in performing remedial work.

For this reason the counterclaims are dismissed.

Texas law, as shown in cases cited by Respondent, provides that, when a prime contractor, upon the failure of a subcontractor to perform, "takes over the job and completes the work himself, he may recover…the excess of the reasonable and necessary cost of completion over and above the unpaid

portion of the...contract price." Freeman v. Shannon Constr., Inc. (Tex. Civ. App., 1977).[2]  Although Respondent's brief cites Freeman for the rule just stated, Respondent, forgetting this rule, states that "KBR is not attempting to recover its actual costs," but the alleged "value" of the work not done as reflected by factors other than the costs of the work it did.

To support this contention, Respondent cites cases to indicate that the recovery of the injured party should be the "reasonable" costs of curing the other party's breach.  Respondent then goes on to attempt to show what the "reasonable" value of its remedial actions amounted to.  It forgets, however, that, to be compensable, alleged costs must not only be "reasonable."  They must be costs—either real costs actually incurred or estimated costs supported by testimony or other evidence.

Respondent has submitted very little evidence of what it cost it to complete work allegedly left undone by Claimant.  Its witnesses at the hearing offered no testimony on costs.  When questioned by the tribunal at the hearing, Matt Bayne, a subcontract administrator, said he did not know what it cost KBR to purchase a replacement speakerphone system (Tr. 798-99, 807), replacement coolers (Tr. 824-26, 831), or hot water heaters (Tr. 903).

Respondent uses various standards to attempt to show the "value" of the remedial work.  These standards include:

- The amount stated in Claimant's response to KRB's initial request for proposals as the price of a fire suppression system less sophisticated than the system ultimately installed by Respondent (Tr. 774-76).

- Written estimates prepared in July 2014 (after this arbitration was commenced) by KBR employees (who did not testify and who were thus not available for cross examination) of the "market price" of speakerphones (Tr.796-98), water heaters (Tr.899, KBR 2061), spare motors and drives (Tr. 903-04), and rolling door controllers (Tr. 904, KBR 2061).

- The amount Claimant paid a vendor for coolers that were defective and were not installed (Tr. 812).

- An agreed milestone payment for cooler installation, which work Claimant did not do (Tr. 838-39).[3]

---

[2] There is no need to make an adjustment under the Freeman formula with respect to any "unpaid portion" of the subcontract price.  By Change Order 15 of July 11, 2011, Respondent reduced the amount of the subcontract to zero, leaving no part of the subcontract price that might still be paid.

[3] Respondent also puts the value of correcting alleged defects in electrical work at $40,000.  The tribunal does not understand how Respondent came up with this figure.  Claimant's response to the RFP put a price of $75,000 on all of the electrical work (Tr. 848-49).  One of Respondent's witnesses testified that another KBR employee—who did not testify and who was not available for cross examination—estimated that Claimant completed only 20 percent of the required electrical work (Tr. 849).  The same witness testified that the budget estimate for electrical materials ordered by KRB was $89,277.680 (Tr. 861, 875-76), and that the total time charges of all KBR electricians employed on the construction project in the period December 2006 through March 2007 were $60,734.20 (Tr. 852, KBR 2058).  There is no evidence to establish what part of these alleged material and labor costs were incurred in doing the electrical work that Claimant failed to do. The tribunal does not understand how the figures that Respondent has presented can be manipulated to produce a value of $40,000.

Respondent has been imaginative in proposing ways to find the "value" of remedial work. The test that Respondent must meet, however, is not the "value," but the cost of this work. Respondent has failed to carry its burden of proof on this essential point. For this reason its counterclaims must be denied.

A final point. If, in fact, Respondent did incur costs in curing deficiencies in Claimant's performance, the record shows that it could have mitigated its damages by billing the Government for reimbursement. KBR's contract with the Government was a cost reimbursement contract. When Respondent incurred costs that had not previously been billed, its practice was to invoice the Government. The invoices for these costs, if properly substantiated, were paid by the Government (Tr. 930-31). Respondent failed to introduce any evidence to show that it had attempted to mitigate its damages by requesting the Government to reimburse it for any costs of extra work that it had incurred. This is a further ground for denying Respondent's counterclaims.

## Costs and Expenses of Arbitration

The tribunal has reviewed the subcontract documents and has considered Respondent's arguments in its post-hearing brief regarding the award of the costs and expenses of arbitration. Claimant did not address this issue in its brief. Respondent's brief, at page 49, fn. 11, refers to Subcontract General Condition 23.10.4.5, as set forth in Doc. No. KBR-FH-000360. As set forth in that document, General Condition 23.10.4.5 provides:

> Each of the Parties shall (a) bear all of its own legal and other costs and expenses in the dispute resolution process, including attorney fees, and (b) pay its proportionately equal share of the costs and expenses of the administration of any Dispute hereunder, unless otherwise awarded by an arbitrator or court, or otherwise agreed upon in writing by the Parties in any settlement. The prevailing Party in such arbitration shall be reimbursed by the nonprevailing Party for any reasonable costs and expenses incurred as may be awarded by a sole arbitrator or tribunal.

The page on which that provision appears (KBR-FH-000360) bears the legend "6-15-05" at the bottom of the page.

That provision appears not to be the subcontract provision that is controlling here. It appears to have been superseded by Change Order 11 of February 2, 2006.   Change Order 11, paragraph 5.0 (KBR-FH-000326), makes changes to (among other subcontract provisions) the Subcontract Special Conditions Overseas. It replaces an earlier version of these Special Conditions with Subcontract Special Conditions Overseas, Rev. 003 (12/12/05). These revised Special Conditions, at paragraph 5.0.7, provide as follows:

> Each of the parties shall pay one-half of the costs and expenses of the American Arbitration Association in the administration of any dispute resolution proceeding, including but not limited to any mediation and arbitration. Each party shall bear all of its own expenses in the dispute resolution process.

Doc. No. KBR-FH-002675.

Change Order 11 changed Subcontract Special Conditions Overseas, at paragraph 17.1 (Doc. No. KBR-FH-002679-002680), to state an order of precedence in case of conflicts between various subcontract documents.   Applying ordinary principles of contract interpretation, paragraph 17.1 provides that Subcontract Special Conditions have a higher precedence than Subcontract General Conditions.

Hence, the tribunal has provisionally concluded that the above quoted paragraph 5.0.7 prevails. Under the subcontract, as the tribunal now understands it, each party shall pay one-half of the costs and expenses of ICDR, including the arbitrators' costs and fees,[4] and each party shall bear all of its own expenses, including legal fees, in this arbitration.

We have called this conclusion a "provisional" conclusion because neither party has had an opportunity to consider the tribunal's analysis as set forth above. Before issuing a Final Award in this matter, the panel invites the parties to comment on the panel's aforementioned provisional conclusion.

## PARTIAL FINAL AWARD

For the reasons stated above, we AWARD as follows:

1. Claimant Al Farez Wamed Co.'s claims and Respondent Kellogg Brown and Root LLC's counterclaims are denied.[5]

2. The parties are invited to comment, on or before November 30, 2015, on the tribunal's provisional conclusion with respect to the allocation of costs and expenses. Each shall party shall provide the other with a copy of any comments it chooses to make.

3. This Partial Final Award may be executed in any number of counterparts, each of which shall be deemed an original, and all of which shall constitute together one and the same instrument.

---

[4] Article 34 of the ICDR rules says that the costs of an arbitration "may include" arbitrators' fees and expenses. In the absence of any provision in the subcontract to the contrary, we conclude that the costs of the arbitration in this case include arbitrators' fees and expenses.

[5] Respondent has argued that Claimant Al Farez Wamed Co. lacks standing to pursue this claim, and that Mr. Wameedh al Azzawi, who managed that company during its work on the project and who represented the company at the hearing in this arbitration, has not been properly authorized by the company to initiate and maintain this arbitration. It has moved that the claim be dismissed on these grounds. Because we hold, in the paragraphs above, that Claimant is not entitled to any recovery, we dismiss that motion as moot. We also hold that Respondent's course of dealing during the making of the contract and its performance, before this arbitration was commenced, when it dealt Mr. al Azzawi and the company without questioning either the authority of the one or the capacity of the other, further serves to render the motion to dismiss moot. We deny the motion.

We hereby certify that, for the purposes of Article I of the New York Convention of 1958, on the Recognition and Enforcement of Foreign Arbitral Awards, this Partial Final Award was made in New York, New York, United States of America.

_____
Date

_____
_____, Arbitrator/Chair

_____
Date

_____
_____, Arbitrator

_____
Date

_____
_____, Arbitrator

State of STATE                    )

                                  )    SS:
County of COUNTY                  )

I, _____, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is our Final Award.

_____          _____
Date                                    _____, Arbitrator

State of STATE                    )
                                  )    SS:
County of COUNTY                  )

On this _____ day of _____, 2015, before me personally came and appeared _____, to me known and known to me to be the individual described in and who executed the foregoing instrument and he acknowledged to me that he executed the same.

_____
Notary Public

State of STATE                    )
                                  )   SS:
County of COUNTY                  )


I, _____, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is our Final Award.



_____
Date                                        _____
                                            _____, Arbitrator



State of STATE                    )
                                  )   SS:
County of COUNTY                  )


On this _____ day of _____, 2015, before me personally came and appeared _____, to me known and known to me to be the individual described in and who executed the foregoing instrument and he acknowledged to me that he executed the same.



_____
Notary Public

State of STATE     )
                       )  SS:
County of COUNTY   )

I, _____, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is our Final Award.

_____
Date

_____
_____, Arbitrator

State of STATE     )
                       )  SS:
County of COUNTY   )

On this _____ day of _____, 2015, before me personally came and appeared _____, to me known and known to me to be the individual described in and who executed the foregoing instrument and he acknowledged to me that he executed the same.

_____
Notary Public

26

# Exhibit O



**International Centre
for Dispute Resolution**

Thomas Ventrone
Vice President

1633 Broadway, 10th Floor, New York, NY 10019
telephone: 212-484-4181 facsimile: 212-246-7274
internet: http://www.adr.org/ICDR

January 7, 2013

**Via E-Mail Only**

Wameedh al Azzawi
Al Farez-Wamed Co.
888 Willames Street
Tracy, CA  95376

David Brenner, Esq.
Kellogg Brown & Root, Inc.
4100 Clinton Drive
Houston, TX  77002

William W. Russell
Peggy Brenner
Schirrmeister Diaz-Arrastia Brem LLP
700 Milam
10th Floor
Houston, TX  77002

Re: 50 110 T 00698 12
    Al Farez-Wamed Co.
    vs
    Kellogg Brown and Root LLC

Dear Counsel:

After careful review of the comments submitted by the parties and pursuant to our authority under Article
9 of the International Dispute Resolution Procedures, the ICDR has determined that the challenge is
hereby sustained and Arbitrator Comodeca is therefore removed. Respondent shall have until **January
22, 2013** to select a party-appointed arbitrator to replace Mr. Comodeca.

Sincerely,

Neda Shahghasemi
International Case Manager
212 484 3262
ShahghasemiN@adr.org

Michael Namias
ICDR Supervisor
212 484 4170
NamiasM@adr.org

*A Division of the American Arbitration Association*



**I C**
**D R**
**International Centre**
**for Dispute Resolution**

Thomas Ventrone
Vice President

1633 Broadway, 10th Floor, New York, NY 10019
telephone: 212-484-4181  facsimile: 212-246-7274
internet: http://www.adr.org/ICDR

## NOTICE OF APPOINTMENT

**In the Matter of Arbitration Between:**

Re: 50 110 T 00698 12
    Al Farez-Warned Co.
    **vs**
    Kellogg Brown and Root LLC

Date submitted: November 13, 2012

To: Peter J. Comodeca, Esq.

> It is most important that the parties have complete confidence in the arbitrator's impartiality. Therefore, please disclose any past or present relationship with the parties, their counsel, or potential witnesses, direct or indirect, whether financial, professional, social or of any other kind. This is a continuing obligation throughout your service on the case and should any additional direct or indirect contact arise during the course of the arbitration or if there is any change at any time in the *ICDR/AAA Resume* that you have provided to the ICDR/AAA, it must also be disclosed. Any doubts should be resolved in favor of disclosure. If you are aware of direct or indirect contact with such individuals, please describe it below. Failure to make timely disclosures may forfeit your ability to collect compensation. The ICDR will call the disclosure to the attention of the parties.

You will not be able to serve until a duly executed Notice of Appointment is received and on file with the ICDR. Please review the attached *Disclosure Guidelines* and, after conducting a conflicts check, answer the following questions and complete the remainder of this Notice of Appointment:

|   |   | Yes | No |
|---|---|-----|-----|
| 1. | Do you or your law firm presently represent any person in a proceeding involving any party to the arbitration? | ☐ | ☒ |
| 2. | Have you represented any person against any party to the arbitration? | ☐ | ☒ |
| 3. | Have you had any professional or social relationship with counsel for any party in this proceeding or the firms for which they work? | ☒ | ☐ |
| 4. | Have you had any professional or social relationship with any parties or witnesses identified to date in this proceeding or the entities for which they work? | ☐ | ☒ |
| 5. | Have you had any professional or social relationship of which you are | | |

aware with any relative of any of the parties to this proceeding, or any relative of counsel to this proceeding, or any of the witnesses identified to date in the proceeding? ☐ ☒

6. Have you, any member of your family, or any close social or business associate ever served as an arbitrator in a proceeding in which any of the identified witnesses or named individual parties gave testimony? ☒ ☐

7. Have you, any member of your family, or any close social or business associate been involved in the last five years in a dispute involving the subject matter contained in the case, which you are assigned? ☐ ☒

8. Have you ever served as an expert witness or consultant to any party, attorney, witness or other arbitrator identified in this case? ☐ ☒

9. Have any of the party representatives, law firms or parties appeared before you in past arbitration cases? ☒ ☐

10. Are you a member of any organization that is not listed on your *ICDR/AAA Resume* that may be relevant to this arbitration? ☐ ☒

11. Have you ever sued or been sued by either party or its representative? ☐ ☒

12. Do you or your spouse own stock in any of the companies involved in this arbitration? ☐ ☒

13. If there is more than one arbitrator appointed to this case, have you had any professional or social relationships with any of the other arbitrators? ☐ ☒

14. Are there any connections, direct or indirect, with any of the case participants that have not been covered by the above questions? ☐ ☒

Should the answer to any question be "Yes", or if you are aware of any other information that may lead to a justifiable doubt as to your impartiality or independence or create an appearance of partiality, then describe the nature of the potential conflict(s) on an attached page.

**Please indicate one of the following:**

☐ I have conducted a check for conflicts and have **nothing to disclose**.

☒ I have conducted a check for conflicts and have made **disclosures on an attached sheet**.

# THE ARBITRATOR'S OATH

State of _Ohio_

County of _Cuyahoga_ } SS:

Where applicable, I attest that I have reviewed the *ICDR/AAA Resume* (if any) which the ICDR provided to the parties on this case and confirm it is current, accurate and complete.

I attest that I have diligently conducted a conflicts check, including a thorough review of the information provided to me about this case to date, and that I have performed my obligations and duties to disclose in accordance with the Rules of the AAA, *Code of Ethics for Commercial Arbitrators* and/or all applicable statutes pertaining to arbitrator disclosures.

I understand that my obligation to check for conflicts and make disclosures is ongoing for the length of my service as an arbitrator in this matter, and that failing to make appropriate and timely disclosures may result in my removal as arbitrator from the case and/or, where applicable, my removal from the AAA's Roster of Neutrals.

The Arbitrator being duly sworn, hereby accepts this appointment, and will faithfully and fairly hear and decide the matters in controversy between the parties in accordance with their arbitration agreement, the *Code of Ethics for Commercial Arbitrators*, and the Rules of the AAA will make an Award according to the best of the arbitrator's understanding.

Dated: _29 NOV 12_          Signed: _Pet/ Conrol_

State of _Ohio_

County of _Cuyahoga_ } SS:

On this _29 th_ day of _November_ 2012, before me personally came and appeared _Peter J. Conradce_, to me known and known to me to be the individual described in and who executed the foregoing instrument and he/she acknowledged to me that he/she executed the same.

_Judith A. Stroup_
Notary Public

## ARBITRATOR DISCLOSURE

### Case No. 50 110 T 00698 12

The areas on the Notice of Appointment where I checked "yes" for disclosures all reflect my services as an Arbitrator and not any other relationship between myself and the parties. In late 2010 and early 2011, I served as the sole Arbitrator in a dispute where Kellogg Brown & Root Services, Inc., was the Respondent. During the course of that Arbitration, Kellogg Brown & Root served a Motion for Summary Judgment, which I denied in February 2011. Subsequent to my action, the parties settled their dispute, and no further involvement was required on my part. Counsel in that matter were different from counsel in this matter. The hearing in that matter was conducted in Houston.

On September 4, 2012, I was appointed as a party appointed Arbitrator in Case No. 50 467 T 00448 12, Gulf Catering Company vs. Kellogg Brown & Root International, Inc., and Kellogg Brown & Root Services, Inc. The arbitration panel consists of three Arbitrators and I have reviewed the preliminary submissions of the parties and am scheduled to participate in a preliminary telephonic hearing with party counsel on November 29, 2012. I have had no dealings with party counsel for either side other than with regard to the above-referenced 2012 Arbitration.

The above disclosures do not affect my ability to fairly and impartially serve as Arbitrator in this matter.

{01749022.DOC;1 }



**INTERNATIONAL CENTRE
FOR DISPUTE RESOLUTION®**

Thomas Ventrone
Vice President

1633 Broadway, 10th Floor, New York, NY 10019
telephone: 212-484-4181 facsimile: 212-246-7274
internet: http://www.adr.org/ICDR

May 8, 2013

<u>**Via E-Mail Only**</u>

Wameedh al Azzawi
Al Farez-Wamed Co.
888 Willames Street
Tracy, CA  95376

David Brenner, Esq.
Kellogg Brown & Root, Inc.
4100 Clinton Drive
Houston, TX  77002

William W. Russell, Esq.
Peggy Brenner
Schirrmeister Diaz-Arrastia Brem LLP
700 Milam
10th Floor
Houston, TX  77002


Re: 50 110 T 00698 12
    Al Farez-Wamed Co.
    vs
    Kellogg Brown and Root LLC


Dear Counsel:

The ICDR has appointed John P. Madden to hear the above-captioned matter. Mr. Madden was selected jointly by the party-appointed arbitrators, Mr. Welby and Mr. Rubin. Enclosed please find copies of Arbitrator Madden's duly executed Notice of Appointment and Notice of Compensation Arrangements.

Please refer to the Notice of Compensation Arrangements for the specific rates.  Per our rules, all arbitrators are neutrals, unless otherwise agreed by the parties in the situation of party appointed arbitrators. Compensation to the arbitrator represents an independent obligation of the parties, and it is understood that the ICDR/AAA has no liability, direct or indirect, for such payment. Each party shall promptly deposit in advance with the ICDR such sums of money as required by the administrator to defray arbitrator invoices. Compensation incurred will be deducted from deposits on hand, if any. Upon request, checks are to be made payable to the American Arbitration Association and submitted to the case manager.

Arbitrator Madden has made disclosures, as detailed on the enclosed Notice of Appointment and attachment.  Please advise the ICDR of any objections to the appointment of Mr. Madden by <u>**May 22, 2013**</u>, copying the other side.  Arbitrators shall not be copied on any comments related to the disclosure.

If any objections to Arbitrator Madden's appointment are raised, the other party may respond within **five business days**. The ICDR will make a determination regarding the arbitrator's continued service in accordance with the Rules.

If either party or their counsel knows of any contact or conflict that may be relevant, they are to communicate this information to the ICDR within ten days. Each party should be responsible for updating its disclosures as such information become available. The duty to update this information continues up to and including the date of the hearing.

There shall be no direct telephone or any other type or contact with the Panel at this time. Please note that any challenges or financial matters must be exclusively submitted to the case manager.

Sincerely,

/s/

Neda Shahghasemi
International Case Manager
212 484 3262
ShahghasemiN@adr.org

Michael Namias
ICDR Supervisor
212 484 4170
NamiasM@adr.org

cc:      John P. Madden, Esq.
         Thomas H. Welby, PE, Esq.
         Robert A. Rubin, Esq.
         w/o Notice of Compensation Arrangements.



INTERNATIONAL CENTRE
FOR DISPUTE RESOLUTION®

RECEIVED

MAY 03 2013

INTERNATIONAL CENTER

## NOTICE OF APPOINTMENT

In the Matter of Arbitration Between:

Re: 50 110 T 00698 12
Al Faras-Waxeed Co.
vs
Kellogg Brown and Root LLC

Date submitted: April 24, 2013

To: John P. Madden

It is most important that the parties have complete confidence in the arbitrator's impartiality. Therefore, please disclose any past or present relationship with the parties, their counsel, or potential witnesses, direct or indirect, whether financial, professional, social or of any other kind. This is a continuing obligation throughout your service on the case and should any additional direct or indirect contact arise during the course of the arbitration or if there is any change at any time in the *ICDR/AAA Resume* that you have provided to the ICDR/AAA, it must also be disclosed. Any doubts should be resolved in favor of disclosure. If you are aware of direct or indirect contact with such individuals, please describe it below. Failure to make timely disclosures may forfeit your ability to collect compensation. The ICDR will call the disclosure to the attention of the parties.

You will not be able to serve until a duly executed Notice of Appointment is received and on file with the ICDR. Please review the attached *Disclosure Guidelines* and, after conducting a conflicts check, answer the following questions and complete the remainder of this Notice of Appointment:

|   |   | Yes | No |
|---|---|-----|-----|
| 1. | Do you or your law firm presently represent any person in a proceeding involving any party to the arbitration? | ☐ | ☑ |
| 2. | Have you represented any person against any party to the arbitration? | ☐ | ☑ |
| 3. | Have you had any professional or social relationship with counsel for any party in this proceeding or the firms for which they work? | ☐ | ☑ |
| 4. | Have you had any professional or social relationship with any parties or witnesses identified to date in this proceeding or the entities for which they work? | ☐ | ☑ |
| 5. | Have you had any professional or social relationship of which you are aware with any relative of any of the parties to this proceeding, or any relative of counsel to this proceeding, or any of the witnesses identified to date in the proceeding? | ☐ | ☑ |

6. Have you, any member of your family, or any close social or business associate ever served as an arbitrator in a proceeding in which any of the identified witnesses or named individual parties gave testimony? ☐ ☑

7. Have you, any member of your family, or any close social or business associate been involved in the last five years in a dispute involving the subject matter contained in the case, which you are assigned? ☐ ☑

8. Have you ever served as an expert witness or consultant to any party, attorney, witness or other arbitrator identified in this case? ☐ ☑

9. Have any of the party representatives, law firms or parties appeared before you in past arbitration cases? ☑ ☐

10. Are you a member of any organization that is not listed on your ICDR/AAA Resume that may be relevant to this arbitration? ☐ ☑

11. Have you ever sued or been sued by either party or its representative? ☐ ☑

12. Do you or your spouse own stock in any of the companies involved in this arbitration? ☐ ☑

13. If there is more than one arbitrator appointed to this case, have you had any professional or social relationships with any of the other arbitrators? ☑ ☐

14. Are there any connections, direct or indirect, with any of the case participants that have not been covered by the above questions? ☐ ☑

Should the answer to any question be "Yes", or if you are aware of any other information that may lead to a justifiable doubt as to your impartiality or independence or create an appearance of partiality, then describe the nature of the potential conflict(s) on an attached page.

Please indicate one of the following:

☐ I have conducted a check for conflicts and have nothing to disclose.

☑ I have conducted a check for conflicts and have made disclosures on an attached sheet.

INTERNATIONAL CENTRE
FOR DISPUTE RESOLUTION®

## THE ARBITRATOR'S OATH

State of New York }
County of New York } ss:

Where applicable, I attest that I have reviewed the *ICDR/AAA Resume* (if any) which the ICDR provided to the parties on this case and confirm it is current, accurate and complete.

I attest that I have diligently conducted a conflicts check, including a thorough review of the information provided to me about this case to date, and that I have performed my obligations and duties to disclose in accordance with the Rules of the AAA, *Code of Ethics for Commercial Arbitrators* and/or all applicable statutes pertaining to arbitrator disclosures.

I understand that my obligation to check for conflicts and make disclosures is ongoing for the length of my service as an arbitrator in this matter, and that failing to make appropriate and timely disclosures may result in my removal as arbitrator from the case and/or, where applicable, my removal from the AAA's Roster of Neutrals.

The Arbitrator being duly sworn, hereby accepts this appointment, and will faithfully and fairly hear and decide the matters in controversy between the parties in accordance with their arbitration agreement, the *Code of Ethics for Commercial Arbitrators*, and the Rules of the AAA will make an Award according to the best of the arbitrator's understanding.

Dated: 2 April 2013          Signed: _____

DON SAVATTA
Notary Public, State of New York
No. 02SA6074273
Qualified in New York County
Commission Expires March 10, 20 15

State of New York }
County of New York } ss:

On this 25th day of April, 2013 before me personally came and appeared John McFadden to me known and known to me to be the individual described in and who executed the foregoing instrument and he/she acknowledged to me that he/she executed the same.



Notary Public

INTERNATIONAL CENTRE FOR DISPUTE RESOULTION

In the Matter of Arbitration Between:

*Re: 50 110 T 00098 12*
*Al Faras-Hamad Co.*
*vs*
*Kellogg Brown and Root LLC*

## DISCLOSURE BY JOHN P. MADDEN

I have conducted a check for conflicts and make the following disclosure:

I currently serve as Co-Arbitrator with Thomas H. Welby on another matter which is currently scheduled to be concluded this summer. Mr. Welby also received undergraduate and graduate engineering degrees from the same schools which I attended, but at separate times from me; we served together on other case approximately 15 years ago; we have both attended some of the same events sponsored by professional organizations and have met socially on occasion over the years.

Over the years, I have served as Neutral Mediator in approximately three matters wherein one of the parties was represented by Mr. Welby and/or an associate from his firm.

About seven years ago, I served as a Neutral on a Dispute Review Board with Robert Rubin.

I am currently serving as Co-Arbitrator in a matter wherein one of the other Co-Arbitrators is from the firm McCarter & English LLP.

Four years ago, I served as a Neutral Arbitrator on a matter in which one of the parties was a subsidiary of KBR.

This will in no way affect my judgment nor my ability to act impartially with respect to the matter herein.

I have served as a neutral in hundreds of cases and cannot recall all parties, lawyers, witnesses and other participants. I have responded based on my present recollection, to the best of my ability.

Date: _____

John P. Madden



I **C**
**D** R
International Centre
for Dispute Resolution

Thomas Ventrone
Vice President

1633 Broadway, 10th Floor, New York, NY 10019
telephone: 212-484-4181 facsimile: 212-246-7274
Internet: http://www.adr.org/ICDR

# NOTICE OF APPOINTMENT

In the Matter of Arbitration Between:

Re: 50 110 T 00698 12
    Al Farez-Wamed Co.
    **vs**
    Kellogg Brown and Root LLC

Date submitted: November 13, 2012

To: Thomas H. Welby PE, Esq.

> It is most important that the parties have complete confidence in the arbitrator's impartiality. Therefore, please disclose any past or present relationship with the parties, their counsel, or potential witnesses, direct or indirect, whether financial, professional, social or of any other kind. This is a continuing obligation throughout your service on the case and should any additional direct or indirect contact arise during the course of the arbitration or if there is any change at any time in the *ICDR/AAA Resume* that you have provided to the ICDR/AAA, it must also be disclosed. Any doubts should be resolved in favor of disclosure. If you are aware of direct or indirect contact with such individuals, please describe it below. Failure to make timely disclosures may forfeit your ability to collect compensation. The ICDR will call the disclosure to the attention of the parties.

You will not be able to serve until a duly executed Notice of Appointment is received and on file with the ICDR. Please review the attached *Disclosure Guidelines* and, after conducting a conflicts check, answer the following questions and complete the remainder of this Notice of Appointment:

|  |  | Yes | No |
|---|---|---|---|
| 1. | Do you or your law firm presently represent any person in a proceeding involving any party to the arbitration? | ☐ | ☒ |
| 2. | Have you represented any person against any party to the arbitration? | ☐ | ☒ |
| 3. | Have you had any professional or social relationship with counsel for any party in this proceeding or the firms for which they work? | ☐ | ☒ |
| 4. | Have you had any professional or social relationship with any parties or witnesses identified to date in this proceeding or the entities for which they work? | ☐ | ☒ |

*A Division of the American Arbitration Association*

5.  Have you had any professional or social relationship of which you are aware with any relative of any of the parties to this proceeding, or any relative of counsel to this proceeding, or any of the witnesses identified to date in the proceeding?    ☐  ☒

6.  Have you, any member of your family, or any close social or business associate ever served as an arbitrator in a proceeding in which any of the identified witnesses or named individual parties gave testimony?    ☐  ☒

7.  Have you, any member of your family, or any close social or business associate been involved in the last five years in a dispute involving the subject matter contained in the case, which you are assigned?    ☐  ☒

8.  Have you ever served as an expert witness or consultant to any party, attorney, witness or other arbitrator identified in this case?    ☐  ☒

9.  Have any of the party representatives, law firms or parties appeared before you in past arbitration cases?    ☐  ☒

10. Are you a member of any organization that is not listed on your *ICDR/AAA Resume* that may be relevant to this arbitration?    ☐  ☒

11. Have you ever sued or been sued by either party or its representative?    ☐  ☒

12. Do you or your spouse own stock in any of the companies involved in this arbitration?    ☐  ☒

13. If there is more than one arbitrator appointed to this case, have you had any professional or social relationships with any of the other arbitrators?    ☐  ☒

14. Are there any connections, direct or indirect, with any of the case participants that have not been covered by the above questions?    ☐  ☒

Should the answer to any question be "Yes", or if you are aware of any other information that may lead to a justifiable doubt as to your impartiality or independence or create an appearance of partiality, then describe the nature of the potential conflict(s) on an attached page.

**Please indicate one of the following:**

☒  I have conducted a check for conflicts and have **nothing to disclose**.

☐  I have conducted a check for conflicts and have **made disclosures on an attached sheet**.

# THE ARBITRATOR'S OATH

State of *New York*
County of *Westchester*  } SS:

Where applicable, I attest that I have reviewed the *ICDR/AAA Resume* (if any) which the ICDR provided to the parties on this case and confirm it is current, accurate and complete.

I attest that I have diligently conducted a conflicts check, including a thorough review of the information provided to me about this case to date, and that I have performed my obligations and duties to disclose in accordance with the Rules of the AAA, *Code of Ethics for Commercial Arbitrators* and/or all applicable statutes pertaining to arbitrator disclosures.

I understand that my obligation to check for conflicts and make disclosures is ongoing for the length of my service as an arbitrator in this matter, and that failing to make appropriate and timely disclosures may result in my removal as arbitrator from the case and/or, where applicable, my removal from the AAA's Roster of Neutrals.

The Arbitrator being duly sworn, hereby accepts this appointment, and will faithfully and fairly hear and decide the matters in controversy between the parties in accordance with their arbitration agreement, the *Code of Ethics for Commercial Arbitrators*, and the Rules of the AAA will make an Award according to the best of the arbitrator's understanding.

Dated: 11/19/12     Signed: _____

State of *New York*
County of *Westchester*  } SS:

On this 19th day of *Nov.*, 2012, before me personally came and appeared *Thomas Wells* to me known and known to me to be the individual described in and who executed the foregoing instrument and he/she acknowledged to me that he/she executed the same.

_____
Notary Public
TONIE M. PRICE
Notary Public, State of New York
No. 01PR6165364
Appointed for Westchester County
Commission Expires May 7, 20 15

----- Forwarded Message -----
**From:** wamed jameel <wamed_jameel@yahoo.com>
**To:** "Neda Shahghasemi, Esq." <ShahghasemiN@adr.org>; "david.brenner2@kbr.com"
<david.brenner2@kbr.com>; "pbrenner@sdablaw.com" <pbrenner@sdablaw.com>;
"wrussell@sdablaw.com" <wrussell@sdablaw.com>
**Cc:** "Shingirirai Chaza, LL.M." <ChazaS@adr.org>
**Sent:** Wednesday, May 8, 2013 12:15 PM
**Subject:** Re: Al Farez-Wamed Co. v. KBR - ICDR Case No. 50 110 T 00698 12

Dear Mrs Neda


I am challenging the appointing of Mr. Maddens as mentioned in his disclosure as he work with a case
before with KBR .
The  matter is so sensitive as my case including also a fraud towards the government which I mention it to
the government.

Best regard

Al Farez-wamed Co
General Manager
Wameedh Al azzawi
888 Williams St.
Tracy 95376
cell ; 5104370708


---

**From:** "Neda Shahghasemi, Esq." <ShahghasemiN@adr.org>
**To:** "wamed_jameel@yahoo.com" <wamed_jameel@yahoo.com>; "david.brenner2@kbr.com"
<david.brenner2@kbr.com>; "pbrenner@sdablaw.com" <pbrenner@sdablaw.com>;
"wrussell@sdablaw.com" <wrussell@sdablaw.com>
**Cc:** "Shingirirai Chaza, LL.M." <ChazaS@adr.org>
**Sent:** Wednesday, May 8, 2013 9:50 AM
**Subject:** RE: Al Farez-Wamed Co. v. KBR - ICDR Case No. 50 110 T 00698 12

Please see Mr. Madden's resume attached. Thank you.


**Neda Shahghasemi, Esq.**
**International Case Manager**
International Centre for Dispute Resolution
1633 Broadway,10th Floor
New York, NY 10019
www.icdr.org
T:+1 212 484 3262
F:+1 212 246 7274

The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s)
listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended
recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal.
Thank you.

**From:** Neda Shahghasemi, Esq.
**Sent:** Wednesday, May 08, 2013 11:35 AM

----- Forwarded Message -----
**From:** William Russell <wrussell@sdablaw.com>
**To:** "Neda Shahghasemi, Esq." <ShahghasemiN@adr.org>; "Shingirirai Chaza, LL.M."
<ChazaS@adr.org>
**Cc:** DK Hodges <dkhodges@sdablaw.com>; Briana Bassler <bbassler@sdablaw.com>;
"david.brenner2@kbr.com" <david.brenner2@kbr.com>; Peggy Brenner <pbrenner@sdablaw.com>;
wamed jameel <wamed_jameel@yahoo.com>
**Sent:** Wednesday, May 8, 2013 12:48 PM
**Subject:** RE: Al Farez-Wamed Co. v. KBR - ICDR Case No. 50 110 T 00698 12

Dear Ms. Shahghasemi and Ms. Chaza,

In order to prevent any question as to the fairness of these

proceedings, KBR will not oppose the removal of Mr. Madden as the third arbitrator in this case.

Best regards,

William W. Russell

Schirrmeister Diaz-Arrastia Brem LLP

Pennzoil Place- North Tower

700 Milam, 10th Floor

Houston, TX 77002

Phone: 713.221.2540

Fax: 713.228.3510

WRussell@sdablaw.com

www.sdablaw.com

**Sent:** Thursday, May 9, 2013 1:49 PM
**Subject:** RE: Al Farez-Warned Co. v. KBR – ICDR Case No. 50 110 T 00698 12

Dear Counsel,

Both Parties comments regarding Mr. Madden's appointment are duly noted and acknowledged.

I'll go ahead and let the Party-Appointed Arbitrators that on the basis of Nr. Madden's disclosures, the Parties mutually agreed to his removal as the third arbitrator in this case. Mr. Madden will be informed too.

In addition, please do not copy Ms. Shahghasemi in future correspondence.

Kind regards,
Shingi

### Shingirirai Chaza, LL.M.
### International Case Manager
International Centre for Dispute Resolution
1633 Broadway, 10th Floor
New York , NY 10019
www.icdr.org
T:+1 212 484 4116
F:+1 212 484 3299

The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

**From:** William Russell [mailto:wrussell@sdablaw.com]
**Sent:** Wednesday, May 08, 2013 3:49 PM
**To:** Neda Shahghasemi, Esq.; Shingirirai Chaza, LL.M.
**Cc:** DK Hodges ; Briana Bassler ; david.brenner2@kbr.com ; Peggy Brenner ; warned jameel
**Subject:** RE: Al Farez-Warned Co. v. KBR – ICDR Case No. 50 110 T 00698 12

Dear Ms. Shahghasemi and Ms. Chaza,

In order to prevent any question as to the fairness of these
proceedings, KBR will not oppose the removal of Mr. Madden as the third arbitrator in this case.

Best regards,

William W. Russell
Schirrmeister Diaz-Arrastia Brem LLP
Pennzoil Place– North Tower
700 Milam, 10th Floor
Houston, TX 77002
Phone: 713.221.2540
Fax: 713.228.3510



**INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION®**

Thomas Ventrone
Vice President

120 Broadway, 21st Floor, New York, NY 10271
telephone: 212-484-4181 facsimile: 212-246-7274
internet: http://www.adr.org/ICDR

June 5, 2013

<u>**Via Email**</u>

Wameedh al Azzawi
Al Farez-Wamed Co.
888 Willames Street
Tracy, CA 95376

David Brenner, Esq.
Kellogg Brown & Root, Inc.
4100 Clinton Drive
Houston, TX 77002

William W. Russell
Schirrmeister Diaz-Arrastia Brem LLP
700 Milam
10th Floor
Houston, TX 77002

Peggy Brenner
Schirrmeister Diaz-Arrastia Brem LLP
Pennzoil Place - North Tower
700 Milam Street, 10th Floor
Houston, TX 77002

Re: 50 110 T 00698 12
    Al Farez-Wamed Co.
    vs
    Kellogg Brown and Root LLC

Dear Parties,

After careful review of the comments submitted by the Parties and pursuant to our authority under the International Dispute Resolution Procedures, the ICDR has determined that the challenge is hereby denied and Arbitrators Rubin and Welby are therefore reaffirmed.

Sincerely,
Shingi Chaza

Shingirirai Chaza
International Case Manager
212 484 4116
ChazaS@adr.org

Michael Namias
ICDR Supervisor
212 484 4170
NamiasM@adr.org

*A Division of the American Arbitration Association*

**From:** wamed jameel [mailto: wamed_jameel@yahoo.com ]
**Sent:** Wednesday, June 05, 2013 9:36 PM
**To:** Shingirirai Chaza, LL.M.
**Subject:** Re: ***Document for Case: 50 110 T 00698 12

Dear Ms Chaza

I am still didnt get an answering to my inquiry in my letter dated on
05/21/2013  regarding Arbitrators breaching  ICDR  rules Article 7 .1 and 2  .

So are you considering all these indications  as coincidence

1-  Respondent select Arbitrator Rubin  after more than three  month of my selection
Arbitrator Welby and they both have family relation.

   So is that coincidence.?

2-  Respondent Arbitrator Rubin and Arbitrator both  select Arbitrator Joseph
from Texas which Arbitrator Welby confirm to me in his

    correspondence that he will not select any arbitrator from Texas so is that
coincidence ?

3-  Both Arbitrators Welby and Rubin select  a third arbitrator  Madden who work with a
case with respondent before and has been removed by        ICDR so is  that
coincidence?

4-  Both Arbitrators select a third arbitrator Jhon H Wilkinson  whos in mater related with
Arbitrator Welby so is that coincidence ?

All that four indication by arbitrators Welby and Rubin in selecting the third arbitrator are
definitely not coincidence and are breaching the ICDR rules Article 7 .1 & 2 , therefore
both should be removed from tribunal .

The respondent also breaching the ICDR rules in contacting  with arbitrator
Rubin  ICDR rule Article 7..2.

—— Forwarded Message ——
**From:** "Shingirirai Chaza, LL.M." <ChazaS@adr.org>
**To:** wamed jameel <wamed_jameel@yahoo.com>
**Cc:** DK Hodges <dkhodges@sdablaw.com>; Briana Bassler <bbassler@sdablaw.com>;
"david.brenner2@kbr.com" <david.brenner2@kbr.com>; Peggy Brenner <pbrenner@sdablaw.com>;
William Russell <wrussell@sdablaw.com>
**Sent:** Thursday, June 6, 2013 6:55 AM
**Subject:** RE: ***Document for Case: 50 110 T 00698 12

Dear Parties,

The ICDR reiterates its reaffirmation of the Party Appointed Arbitrators (Rubin and Welby) as per our letter of June 5, 2013.

However, we respectfully request that Respondent review the below email from Claimant, and provide comments, if any, by **June 11, 2013**.

I remain available should you have any questions.

Kind regards,

Shingi

**Shingirirai Chaza, LL.M.**
**International Case Manager**
International Centre for Dispute Resolution
120 Broadway, 21st Floor
New York, NY 10271
www.icdr.org
**T:**+1 212 484 4116
**F:**+1 212 484 3299

The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

**Michael F. Namias**
**Supervisor**
International Centre for Dispute Resolution
120 Broadway, 21st Floor
New York, NY 10271
www.icdr.org
T:+1 212 484 4170
F:+1 212 246 7274

The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

---

**From:** wamed jameel [mailto:wamed_jameel@yahoo.com]
**Sent:** Monday, June 10, 2013 1:26 PM
**To:** Tom H. Welby
**Cc:** Neda Shahghasemi, Esq.; Shingirirai Chaza, LL.M.; Michael F. Namias
**Subject:** Al Farez-Warned Co. v. KBR - ICDR Case No. 50 110 T 00698 12

Mr.Welby

On  Feb /08/2013  you send me a correspondence ( attached)of list of arbitrators to review it , and as long as its the ICDR trusted list of arbitrators so i have no objection on any of them and that's why i selected you cause you are on that list.
  In your correspondence.( attached) you confirm to me  for the selection of the third arbitrator that none of them from Housten Tx, and also none of them should have a professional relation with the respondent ( KBR ) as our agreement and that's was before KBR appointed their arbitrator Mr. Rubin
On  March /25/2013 The Respondent ( KBR ) select Mr. Rubin from the list of ICDR arbitrators ,who was in professional relation with you.and as  Stated it to you , they do it for a reason and that could be known later related to actions and indications comes later in selecting the third arbitrator.
  I had a doubt of that selection cause the respondent always breach the ICDR rules in selecting their arbitrator  as following:
<u>The first time</u> when respondent mention in his letter on Nov / 5/ 2012 that's this case is under Texas law and its barred by Texas law .and thats obstruction with the subcontract dispute procedure .and the  ICDR reply the respondent that's this dispute underlying the ICDR  AAA law.
<u>The second</u> time  when they select arbitrator Comodeca who was in a professional relation with KBR and work with them in many cases before, even a family relation , and removed by ICDR  on Jan/22/2013 .

<u>The third time</u> when respondent select arbitrator Mr.sheppard from Texas  whom also have a professional relation with respondent and removed  on Feb/1 /2013,
<u>The fourth time</u>   When  you and Arbitrator Rubin appointed  arbitrator madden to be the third arbitrator who work with respondent in a case before and later removed by ICDR.
<u>The fifth time</u>   When you and Arbitrator Rubin appointed arbitrator Mr.Joseph from Texas and he is not from the list of arbitrator you send it to me to review  the third arbitrator and he located in Texas which you confirm in your letter not to select  from it.
<u>The sixth time</u>   When you and arbitrator Rubin appointed Mr. Jhon .H wilkinson and he is not from the list of arbitrator you send it to me and have a matter relation with arbitrator Rubin.

So , will you please explain the reason why you change your decision and our agreement in selecting  the third arbitrator ? is that the order of preference mentioned in your letter?
Can you consider your action and Arbitrator Rubin  as a neutral actions?
Isnt  that action considers  a breaching of ICDR rule Article 7.1 ,2 ?
Isnt that a violate of oath?
Isnt that underlying of ethic action?

In reviewing the sixth items above , Its look like i deal in this case with a respondent attorney teams , rather than neutral Arbitrators and that's what respondent aim to.


From:Tom H. Welby
Sent: Friday, February 08, 2013 5:56 PM
To: Tom H. Welby; 'warned_jameel@yahoo.com'
Cc: 'Neda Shahghasemi'
Subject: RE: RE: Al Farez-Warned Co. v. KBR - ICDR Case No. 50 110 T 00698 12

Dear Mr. Azzawi, I hope that you
had a chance to review the biographies of potential arbitrators, as I forwarded to you on 1/30/13.  The following have engineering degrees and experience:  Riverso, Madden, Bastianelli, Rodgers, Eckert, Agnew, Rubin and Franczek.  None are from Houston , TX .  Are any of these unacceptable to the Claimant?  Do you have an order of preference?
Thanks, Tom Welby



Al Farez-warned Co
General Manager
Wameedh Al azzawi

Dear Ms Chaza

Referring to my correspondent attached.

I have no more trusted Arbitrator Rubin as well as arbitrator Welby in appointing a third arbitrator cause they show no impartial and independent in chosing the third arbitrator and thats against the ICDR rules .

Will you please take an action and let me know.


Best regard


Al Farez-wamed Co

General Manager

Wameedh Al azzawi

888 Williams St.

Tracy 95376

cell ; 5104370708




----- Forwarded Message -----
**From:** wamed jameel < wamed_jameel@yahoo.com>
**To:** Tom H. Welby< twelby@wbgllp.com>
**Cc:** "ChazaS@adr.org"< ChazaS@adr.org>
**Sent:** Tuesday, May 14, 2013 11:39 AM
**Subject:** Re: Third Arbitrator



Mr. Welby

KBR counsel selected Mr. Rubbin after i challenged two other arbitrators they selected before .
I wonder why  the three arbitrators appointed are either one of them working with KBR in case before ,
and the other in TX ( KBR location ) , and now the arbitrator in profissional relation with Mr.Rubbin.

Thats increase my doubt that Mr, Rubbin are not impartial and KBR selected him for a reason . As we agree before to chose arbitrator from the list of ICDR but it seam that Mr. Rubbin are un willing to chose from it and if he did he chose only the arbitrator he know him.
Dear Welby : KBR are a power company and they thought they are above the law and they thought they can control people ,any where every where.

Best regard

Al Farez-wamed Co
General Manager
Wameedh Al azzawi
888 Williams St.
Tracy 95376
cell ; 5104370708

---

**From:** Tom H. Welby <twelby@wbgllp.com>
**To:** wamed jameel <wamed_jameel@yahoo.com>
**Sent:** Tuesday, May 14, 2013 7:21 AM
**Subject:** RE: Third Arbitrator

Attached please find the bio of a highly experienced and qualified arbitrator, with considerable international experience.  He is not from Texas .  He had one matter with Robert Rubin.  Please recall that you had previously accepted Rubin as a potential Third Arbitrator, so you must have some trust in his judgement.  Please advise.  Thanks, Tom Welby

------ Forwarded Message ------
**From:** wamed jameel <wamed_jameel@yahoo.com>
**To:** Tom H. Welby< twelby@wbgllp.com>
**Sent:** Monday, May 13, 2013 4:46 PM
**Subject:** Re: Third Arbitrator

Mr.Welby

I prefer to chose the arbitrator from the list of ICDR on a consideration mentioned in my previous letter.

Thank you

------ Forwarded Message ------
**From:** wamed jameel <wamed_jameel@yahoo.com>
**To:** Tom H. Welby< twelby@wbgllp.com>

----- Forwarded Message -----
**From:** Michael F. Namias <NamiasM@adr.org>
**To:** 'wamed jameel' <wamed_jameel@yahoo.com>
**Cc:** "Shingirirai Chaza, LL.M." <ChazaS@adr.org>
**Sent:** Thursday, June 13, 2013 12:54 PM
**Subject:** RE: Al Farez-Wamed Co. v. KBR - ICDR Case No. 50 110 T 00698 12

Dear Mr. Jameel:

We acknowledge receipt of your e-mail below dated June 10, 2013 to Arbitrator Thomas H. Welby.

In an arbitration in which the two party-appointed arbitrators are expected to appoint the third arbitrator, each party-appointed arbitrator may consult with the party who appointed the arbitrator concerning the choice of the third arbitrator.  Your concerns regarding prior selections and prospective selections are duly noted, but the ICDR has determined that there is no evidence of any unethical behavior on the part of arbitrators Thomas H. Welby and/or Robert A. Rubin.

The ICDR has previously denied your challenge to the continued service of Messrs. Welby and Rubin.  Our decision is conclusive, and we have instructed Mr. Welby not to respond to your e-mail below.

If the party-appointed arbitrators are unable to appoint the third arbitrator by **June 19, 2013**, the ICDR will administratively appoint the third arbitrator at the written request of any party.

This e-mail will be shared with opposing counsel by separate e-mail.

Best regards,

Michael F. Namias

INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION
Arbitration No. 50-110-T-00698 12

In the Matter of

AL FAREZ-WAMED CO.

Claimant,

VS.

KELLOGG BROWN & ROOT SERVICES, INC.,

Respondent.

---

## KBR's Response to Claimant's Comment Regarding Appointment of Chairman

---

SCHIRRMEISTER DIAZ-ARRASTIA BREM LLP
Pennzoil Place - North Tower
700 Milam Street, 10th Floor
Houston, Texas 77002
Telephone: (713) 221-2500
Facsimile: (713) 228-3510

*Attorneys for Respondent*
*Kellogg Brown & Root Services, Inc.*

20 May 2013

Pursuant to Ms. Chaza's request dated 5/15/2013, Respondent Kellogg Brown & Root Services, Inc. ("KBR" or "Respondent") respectfully submits its comments regarding Claimant's email to the ICDR dated 5/15/2013.

1.      In Claimant's email to the ICDR dated May 15, 2013, Claimant suggests that Mr. Rubin and Mr. Welby should not be allowed to select the chairman of the tribunal.

2.      As the ICDR is aware, the agreement to arbitrate sets out the procedure which must be followed to constitute the Tribunal:

> The arbitration panel shall be composed of three arbitrators; one arbitrator shall be appointed by each of the parties to the claim or dispute, *and another independent arbitrator appointed by the two arbitrators chosen by the parties*. (emphasis added).

3.      The parties agreed that the two party-appointed arbitrators shall appoint the chairman of the Tribunal.  Under the Article IV(1)(d) of the New York Convention, the composition of the arbitral authority must be "in accordance with the agreement of the parties."  Claimant's efforts to breach the agreement of the parties regarding the selection of the chairman could jeopardize the enforceability of the award.

4.      There is no indication whatsoever that Mr. Welby (Claimant's party-appointed arbitrator) and Mr. Rubin are not impartial or lack independence.  There is no legal or factual justification to violate the terms of the parties' agreement regarding the procedure to select the chairman.

5.      Accordingly, Respondent simply requests that the parties' agreement regarding the constitution of the tribunal be honored, and that the chairman be "appointed by the two arbitrators chosen by the parties."

00155208.DOCX; 1

Respectfully Submitted,

SCHIRRMEISTER DIAZ-ARRASTIA BREM LLP

Margaret T. Brenner
William W. Russell
Pennzoil Place - North Tower
700 Milam Street, 10th Floor
Houston, Texas 77002
Telephone: (713) 221-2500
Facsimile: (713) 228-3510
     pbrenner@sdablaw.com
     wrussell@sdablaw.com

*Attorneys for Respondent*
*Kellogg Brown & Root Services, Inc.*

2

1INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION
Arbitration No. 50-110-T-00698 12

In the Matter of

AL FAREZ-WAMED CO.

Claimant,

VS.

KELLOGG BROWN & ROOT SERVICES, INC.,

Respondent.

---

### KBR's Response to Claimant's Renewed Challenge
### To Entire Tribunal

---

SCHIRRMEISTER DIAZ-ARRASTIA BREM LLP
Pennzoil Place - North Tower
700 Milam Street, 10th Floor
Houston, Texas 77002
Telephone: (713) 221-2500
Facsimile: (713) 228-3510

*Attorneys for Respondent*
*Kellogg Brown & Root Services, Inc.*

11 June 2013

Pursuant to Ms. Chaza's request dated 6/6/2013, Respondent Kellogg Brown & Root Services, Inc. ("KBR" or "Respondent") respectfully submits its comments regarding Claimant's email to the ICDR dated 6/5/2013.

1.     The ICDR has properly re-affirmed both Claimant's party-nominated arbitrator and Respondent's party nominated arbitrator.  As the ICDR has confirmed, both are serving properly under the rules of the agreement to arbitrate and the ICDR rules.

2.     Claimant initiated this ICDR arbitration, but is now obstructing it at every step. Claimant's strategy of reflexive, meritless objections is illustrated by the history of these proceedings:

- 10/4/12: Claimant lodges his **first** objection seeking to obstruct the arbitration agreement's provision that the parties choose their party-appointed arbitrator.  Claimant demands that the parties' choice of party-appointed arbitrator be limited by the ICDR list supplied as a courtesy to Claimant.  Respondent incurs the expense of briefing the issue in response.

- 10/23/2013: ICDR confirms that "the parties are not limited to the reference list below and may select a party-appointed arbitrator that is not in the attached list."

- 11/5/2012: Claimant appoints Thomas H. Welby as his party-appointed arbitrator.

- 11/5/2012: Respondent appoints Peter J. Comodeca, a well-respected and experienced arbitrator, as its party-appointed arbitrator.

- 10/10/2012: Claimant lodges his **second** objection challenging Mr. Comodeca on what Respondent considers to be meritless grounds.  Respondent incurs the expense of preparing a brief showing that there can be no legitimate challenge to Mr. Comodeca under any legal or ethical standard possibly implicated.  Nonetheless, Mr. Comodeca is removed.

- 1/22/2013: Respondent appoints Prof. Ben Sheppard, Jr., an internationally renowned and respected arbitrator.

00155828.DOCX; 2

- 2/11/2013: Claimant lodges his **third** objection challenging Prof. Sheppard on baseless grounds. Pursuant to Prof. Sheppard's personal policy not to serve if anyone objects, Prof. Sheppard steps down.

- 3/7/2013: In order to appease Claimant's strategy of objecting, Respondent nominates Mr. Rubin from the list previously supplied by the ICDR as a courtesy. Mr. Rubin is also an internationally renowned and respected lawyer and arbitrator. Claimant does not object.

- 5/8/2013: Mr. Welby and Mr. Rubin select Mr. Madden from the ICDR courtesy list. Claimant reflexively files his **fourth** objection challenging Mr. Madden. In order to continue appeasing Claimant's objection strategy and not incur additional briefing costs, Respondent does not oppose the challenge.

- 5/15/2013: Claimant lodges his **fifth** objection seeking to change the arbitration agreement's provision that the party-nominated arbitrators choose the third arbitrator. Claimant demands that the arbitrator's choice be limited to the ICDR list supplied as a courtesy to Claimant. Respondent incurs the expense of briefing the issue in response.

- 5/21/2013: Claimant lodges his **sixth** challenge to both Mr. Rubin (Respondent's party-appointed arbitrator) and Mr. Welby (his own party-nominated arbitrator) based on ex-parte communications between Mr. Welby and Claimant.[1]

- 5/21/2013: The ICDR asks Respondent to respond and states "the Parties are requested to **not send any further comments or submissions** regarding the appointment of the Chairperson." (emphasis in original). Respondent again incurs the expense of briefing the issue.

- 5/23/2013: Respondent files its brief on the issue. The ICDR acknowledges receipt and again states that "[t]he Parties are requested to not submit any further comments." Within 18 minutes, Claimant "submitted further comments."

- 6/5/2013: The ICDR properly re-confirmed the appointment of Mr. Welby and Mr. Rubin. Within hours, Claimant lodges his **seventh** objection, apparently complaining of Mr. Welby, Mr. Rubin, the arbitration agreement, and the ICDR's ruling. At the ICDR's request,

---

[1] Respondent recognizes that such communications with the party regarding potential chairman are proper under the applicable ethical and legal rules, guidelines, and practice.

Respondent again incurred the cost of preparing this response.

3.       It is readily apparent that the ICDR has provided extra scrutiny to this process in an effort to respond to Claimant's serial objections.  Respondent is concerned that Claimant's serial objections will not stop, they will just reform and continue coming.  Claimant's objection strategy is undeterred by the law governing these proceedings or any amount of appeasement by the ICDR or Respondent.  These serial objections are overtly meritless, dilatory, obstructive, and have caused significant unnecessary expense to Respondent.  Additionally, these meritless objections continue to delay the analysis of the merits of these claims.  Both parties agreed to this arbitral procedure, Claimant should not be permitted to scuttle it by persistently asserting meritless objections.

4.       This is precisely the type of situation the ICDR, as the administrative body, is designed (and paid) to address.  The ICDR is designed so that it can take the necessary action to preserve the legitimacy and efficiency (both in terms of time and cost) of arbitration.  If this were a non-administered, ad hoc arbitration, Claimant would have completely derailed the process.

5.       These proceedings have suffered extensive and improper delay, and Respondent has been forced to incur significant costs responding to these meritless objections.  The ICDR should overrule this latest objection and allow the tribunal to be established.  To date Respondent has incurred attorney's fees reviewing and responding to seven meritless objections filed by Claimant.  The ICDR should provide Respondent the opportunity to recover the fees it has incurred in responding to these staccato, meritless objections.

6.       Respondent requests that the ICDR reaffirm (again) the two party-appointed arbitrators, and request that they appoint a chairperson as required under the agreement to arbitrate.  Respondent respectfully requests that the ICDR elevate the proceedings over the dilatory

3

obstructive objections and allow the parties to address the merits of this dispute.

Respectfully Submitted,

SCHIRRMEISTER DIAZ-ARRASTIA BREM LLP

Margaret T. Brenner
William W. Russell
Pennzoil Place - North Tower
700 Milam Street, 10th Floor
Houston, Texas 77002
Telephone: (713) 221-2500
Facsimile: (713) 228-3510
         pbrenner@sdablaw.com
         wrussell@sdablaw.com

*Attorneys for Respondent*
*Kellogg Brown & Root Services, Inc.*

4

00155828.DOCX; 2

INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION
Arbitration No. 50-110-T-00698 12


In the Matter of

AL FAREZ-WAMED CO.

Claimant,

VS.


KELLOGG BROWN & ROOT SERVICES, INC.,

Respondent.

---

### KBR's Response to Claimant's Challenge
### To Entire Tribunal

---

Schirrmeister Diaz-Arrastia Brem LLP
Pennzoil Place - North Tower
700 Milam Street, 10th Floor
Houston, Texas 77002
Telephone: (713) 221-2500
Facsimile: (713) 228-3510

***Attorneys for Respondent***
***Kellogg Brown & Root Services, Inc.***


23 May 2013

Pursuant to Ms. Chaza's request dated 5/21/2013, Respondent Kellogg Brown & Root Services, Inc. ("KBR" or "Respondent") respectfully submits its comments regarding Claimant's email to the ICDR dated 5/21/2013.

1.      In Claimant's email to the ICDR dated May 21, 2013, Claimant suggests that Mr. Rubin and Mr. Welby should not be allowed to select the chairman of the tribunal, and apparently he also suggests that they both should be removed from the panel. Claimant's reflexive and meritless challenges to these arbitrators is undermining the arbitral process and is an unjustified attack on the character and professionalism of Mr. Welby and Mr. Rubin.

2.      Claimant challenged KBR's first arbitrator because he served on other KBR arbitrations. As set out in Respondent's response to the challenge, the AAA rules, the IBA guidelines, and the governing law, confirm that there is nothing improper (or even unusual) about this. This type of relationship is not even required to be disclosed by the *Code of Ethics for Commercial Arbitrators* or the Rules of the ICDR or the *IBA Guidelines on Conflicts of Interest in International Arbitration*, much less grounds for disqualification. In an effort to appease Claimant, the ICDR granted the request even though it was unquestionably groundless.

3.      Claimant challenged KBR's second nominated arbitrator—Ben Sheppard, one of the most well-regarded arbitrators in the world— because he casually knows counsel for Respondent. As set out in our prior response, the AAA rules, the IBA rules, and the governing law, confirm that there is nothing improper or unusual about this. As the ICDR is well aware, there would not be many qualified arbitrators left if this were a valid objection. In order to appease Claimant, Mr. Sheppard withdrew based on a totally baseless challenge.

4.      Respondent then appointed Mr. Rubin from the list of nonbinding suggestions circulated at Claimant's request by the ICDR. Claimant did not object to Mr. Rubin.

5.    Mr. Rubin and Mr. Welby (Claimant's party-nominated arbitrator) nominated Mr. Madden to serve as the chair. Claimant objected to Mr. Madden because he knew the other two arbitrators. This is a patently baseless objection, as has been recognized by the AAA *Code of Ethics for Commercial Arbitrators*, the *IBA Guidelines on Conflicts of Interest in International Arbitration*, and any other group that has considered the issue. In order to appease Claimant and to quell the unprecedented waste of time and money to respond to baseless challenges, Respondent acquiesced to Claimant's challenge to Mr. Madden.

6.    Now Claimant has raised the same sort of baseless and conspiratorial challenges to both his party-nominated arbitrator and to Mr. Rubin. It appears that Claimant is complaining that candidates for the chair either knew or have been on tribunals with Mr. Welby or Mr. Rubin. There is not a shadow of any legitimate question as to the impartiality and independence of Mr. Welby or Mr. Rubin. The IBA Guidelines on Conflicts of Interest in International Arbitration, a set of ubiquitously accepted standards in international arbitration, separate these types of questions into categories. *See* IBA Guidelines on Conflicts of Interest in International Arbitration, Part 1, Explanation to General Standard 3. The "Green List" circumstances include "situations [which] should never lead to disqualification" and "such situations need not be disclosed regardless of the parties' perspective." *Id.* (emphasis added). The fact that arbitrator candidates might have known or worked with one of the arbitrators is one of these specifically enumerated circumstances:

> 4.4.2 The arbitrator and counsel for one of the parties or another arbitrator have previously served together as arbitrators or co-counsel.

IBA Guidelines on Conflicts of Interest in International Arbitration, Art. 4.4.2.

7.    Accordingly, Claimants complaints are not even required to be disclosed and "should never lead to disqualification." Claimant's unsupported musings and ad homonym attacks on

2

these gentlemen are not only legally improper, but they are also personally improper.  This type of reflexive and staccato challenge to every member of the tribunal undermines the very point of arbitration.  Simply put, enough is enough.

8.       Commentators have labeled this type of meritless challenge as "guerrilla tactics."  In a recent article by Edna Sussman for example, she identifies some uncannily similar examples of such guerrilla tactics:

> *Frivolous Challenges of the Arbitrators*: ...  Examples: Respondents reported frivolous challenges to arbitrators such as on the ground that the arbitrator and one of the counsel attended a class together 25 years ago, or because the arbitrator and the opposing counsel share a bar association professional affiliation. Others reported that, after having sent abusive and inflammatory communications to the arbitrator or after having challenged the arbitrator, counsel then challenged the arbitrator for bias.

Edna Sussman & Solomon Ebere, *All's Fair in Love and War — Or Is It? Reflections on Ethical Standards For Counsel in International Arbitration*, 22 Am. Rev. Int'l Arb. 611, 614 (2011).

9.       It is the ICDR's <u>duty</u> to put an end this tactic and to implement the parties' agreement regarding the constitution of the tribunal so that these proceedings can do just that, proceed.  Mr. Welby and Mr. Rubin are properly appointed under the agreement to arbitrate and every conceivable legal or administrative standard.  Their obligation under the agreement to arbitrate is to appoint a chairman:

> The arbitration panel shall be composed of three arbitrators; one arbitrator shall be appointed by each of the parties to the claim or dispute, *and another independent arbitrator appointed by the two arbitrators chosen by the parties.* (emphasis added).

10.      Any further deviation from the agreed procedure could jeopardize an award under the Article IV(1)(d) of the New York Convention, which provides that the composition of the arbitral authority must be "in accordance with the agreement of the parties."  Claimant agreed to

00155278.DOCX; 1

this procedure.  It is now the ICDR's obligation to put an end to Claimant's attempts to obstruct that agreed procedure.

11.     As stated in the three previous times Respondent has had to respond to these baseless challenges, Respondent simply requests that the parties' agreement regarding the constitution of the tribunal be honored, and that the chairman be "appointed by the two arbitrators chosen by the parties."


                              Respectfully Submitted,

                              SCHIRRMEISTER DIAZ-ARRASTIA BREM LLP

                              _W. W. Russell_____
                              Margaret T. Brenner
                              William W. Russell
                              Pennzoil Place - North Tower
                              700 Milam Street, 10th Floor
                              Houston, Texas 77002
                              Telephone: (713) 221-2500
                              Facsimile: (713) 228-3510
                                   pbrenner@sdablaw.com
                                   wrussell@sdablaw.com

                              *Attorneys for Respondent*
                              *Kellogg Brown & Root Services, Inc.*

4

00155278.DOCX; 1

# Exhibit P

700 Milam Street, 10th Floor | Houston, Texas 77002
D: 713.221.2550 | Main: 713.221.2500 | F: 713.228.3510
pbrenner@sdablaw.com  |  website: www.sdablaw.com

**From:** Markham Ball [mailto:markhamball@gmail.com]
**Sent:** Thursday, July 16, 2015 9:20 AM
**To:** DK Hodges; wamed_jameel@yahoo.com; Peggy Brenner; Mark Font
**Cc:** Robert Rubin; Tom Welby; Tom Simotas (simotasat@adr.org)
**Subject:** AlFarez hearing—court reporter

Dear parties:

Please tell the Tribunal whether either party wishes there to be a court reporter at the hearing.  If only one party wishes to have a court reporter, that party shall hire and pay for the reporter, and only that party and the Tribunal will receive transcripts.  If both parties want a reporter, they shall consult together and jointly hire and pay the reporter, and both parties and the Tribunal will receive transcripts.

Please inform the Tribunal and the case administrator, Tom Simotas, of any arrangements that are made.

Markham Ball,
Tribunal chair

**Sent:** Monday, July 20, 2015 12:30 PM
**Subject:** Re: AlFarez hearing--court reporter

Dear Mr. Al Azzawi-

Please refer to my email of July 16, in which I wrote:

If only one party wishes to have a court reporter, that party shall hire and pay for the reporter, and only that party and the Tribunal will receive transcripts.  If both parties want a reporter, they shall consult together and jointly hire and pay the reporter, and both parties and the Tribunal will receive transcripts.

If you need more information, I suggest you talk to the case administrator, Tom Simotas.

Sincerely,
Markham Ba;ll


On Mon, Jul 20, 2015 at 2:24 PM, warned jameel <wamed_jameel@yahoo.com> wrote:

Dear Mr. Tribunal


The Claimant need a clarify from the Tribunal  regarding the way of hired the court reporter  in phase one

Best Regard

Wameedh Al Azzawi   / Civil Eng
    GENERAL MANAGER
    Al FAREZ-WAMED CO
    888 WILLIAMS ST.
    TRACY / CA 95376 USA
    Cell :        001 5104370708            USA
    Cell :        00962 795358717           JORDAN
    Cell :        00964 7714277666          IRAQ

    E-mail : wamed@alfarez-wamed.com
    URL : www.alfarez-wamed.com


**From:** Markham Ball <markhamball@gmail.com>
**To:** Peggy Brenner <pbrenner@sdablaw.com>
**Cc:** Robert Rubin <rrubin@mccarter.com>; Tom Welby <twelby@wbgllp.com>; "Tom Simotas (simotasat@adr.org)" <simotasat@adr.org>; DK Hodges <dkhodges@sdablaw.com>;

Tom Simotas


**Tom Simotas**
**Supervisor**
American Arbitration Association
International Centre for Dispute Resolution
120 Broadway, 21st Floor
New York, NY 10271
www.icdr.org
T:+1 212 484 4077
F:+1 212 246 7274

The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

**From:** wamed jameel [mailto:wamed_jameel@yahoo.com]
**Sent:** Monday, July 20, 2015 3:48 PM
**To:** Tom Simotas
**Cc:** Markham Ball; Robert Rubin; Tom Welby; Peggy Brenner; Marc Folsom; Mark Font
**Subject:** Fw: AlFarez hearing--court reporter

Dear Mr. Tom


Will you please clarify to me the procedure in which the court reporter had been selected in our hearing case before ( phase one).

Best Regard

Wameedh Al Azzawi   / Civil Eng
    GENERAL MANAGER
    Al FAREZ-WAMED CO
    888 WILLIAMS ST.
    TRACY / CA 95376 USA
    Cell :        001 5104370708        USA
    Cell :        00962 795358717        JORDAN
    Cell :        00964 7714277666        IRAQ

    E-mail : wamed@alfarez-wamed.com
    URL :  www.alfarez-wamed.com


—— Forwarded Message ——
**From:** Markham Ball <markhamball@gmail.com>
**To:** wamed jameel <wamed_jameel@yahoo.com>
**Cc:** Peggy Brenner <pbrenner@sdablaw.com>; Robert Rubin <rrubin@mccarter.com>; Tom Welby <twelby@wbgllp.com>; "Tom Simotas (simotasat@adr.org)" < simotasat@adr.org>; DK Hodges <dkhodges@sdablaw.com>; Mark Font <mfont@sdablaw.com>; Marc Folsom <Marc.Folsom@kbr.com>

------ Forwarded Message ------
**From:** Mark Font <mfont@sdablaw.com>
**To:** wamed jameel <wamed_jameel@yahoo.com>; Markham Ball <markhamball@gmail.com>; Tom Welby <twelby@wbgllp.com>; Robert Rubin <rrubin@mccarter.com>
**Cc:** Peggy Brenner <pbrenner@sdablaw.com>; Marc Folsom <Marc.Folsom@kbr.com>; DK Hodges <dkhodges@sdablaw.com>; Tom Simotas <SimotasAt@adr.org>; Marc Folsom <Marc.Folsom@kbr.com>
**Sent:** Wednesday, July 29, 2015 7:56 AM
**Subject:** RE: 50 2012 000698 (Al Farez-Wamed Co. vs KBR)

Dear Members of the Tribunal,

Mr. al Azzawi's email below is another example of his intentional efforts to prejudice KBR in this proceeding.

KBR did not have anything to do with the retention of Mr. Donald DePew, the court reporter for March 31, 2014, hearing.

As reflected in the emails between Ms. Chaza, the prior case administrator, and Mr. Russell (see below) and the reporter's invoice (attached), it was Mr. Rubin (or someone in his office) who was kind enough to have engaged the court reporter for the hearing.

Neither KBR, nor Mr. Rubin, nor Mr. DePew did anything improper with regard to the engagement of a court reporter or the accuracy of the reporting of proceedings in this matter.  Nevertheless, KBR has once again been forced to needlessly expend resources to show the falsity of Mr. al Azzawi's baseless accusations.

Sincerely,
Mark Font

> **From:** Shingirirai Chaza, LL.M. [mailto:ChazaS@adr.org]
> **Sent:** Thursday, March 27, 2014 2:43 PM
> **To:** William Russell
> **Cc:** David Brenner (David.Brenner2@kbr.com); Peggy Brenner
> **Subject:** RE: Al Farez-Wamed Co. v. KBR ICDR #50 110T 00698 12
>
> It may be -- Mr. Rubin had said he wanted to have the funds in in order to engage the court reporter.
>
> I'll let him know, and see what he says.
>
> Best,
> Shingi
>
> **From:** William Russell [mailto:wrussell@sdablaw.com]
> **Sent:** Thursday, March 27, 2014 3:40 PM
> **To:** Shingirirai Chaza, LL.M.
> **Cc:** David Brenner (David.Brenner2@kbr.com); Peggy Brenner
> **Subject:** RE: Al Farez-Wamed Co. v. KBR ICDR #50 110T 00698 12

Dear Ms. Chaza,

The invoice has been submitted for payment in KBR, and will be paid in the normal payment cycle, 30 to 45 days.  Do you anticipate this being a sticking point?

Best regards,
Will

William W. Russell
Schirrmeister Diaz-Arrastia Brem LLP
Pennzoil Place- North Tower
700 Milam, 10th Floor
Houston, TX 77002
Phone: 713.221.2540
Fax: 713.228.3510
WRussell@sdablaw.com
www.sdablaw.com

**From:** Shingirirai Chaza, LL.M. [mailto:ChazaS@adr.org]
**Sent:** Thursday, March 27, 2014 2:13 PM
**To:** William Russell
**Subject:** RE: Al Farez-Warned Co. v. KBR ICDR #50 110T 00698 12

Dear Mr. Russell,

We still haven't received the funds for the catering and court reporter. We can we expect to receive the funds?

Best,
Shingi

**From:** Shingirirai Chaza, LL.M.
**Sent:** Tuesday, March 11, 2014 5:40 PM
**To:** 'William Russell'
**Subject:** Al Farez-Warned Co. v. KBR ICDR #50 110T 00698 12

Dear Counsel,

Please find attached an invoice reflecting fees for the hearing days – to cover catering and the court reporter.

Please kindly remint payment by **March 21, 2014**.

I remain available should you have any questions.

Best,
Shingi

Mark A. Font  |  Senior Counsel
**SCHIRRMEISTER DIAZ-ARRASTIA BREM LLP**
700 Milam Street, 10th Floor | Houston, Texas 77002
Direct: 713.221.2503 | Cell: 281.635.4830
Main: 713.221.2500 | Facsimile: 713.228.3510
mfont@sdablaw.com | website: www.sdablaw.com

**From:** wamed jameel [mailto:wamed_jameel@yahoo.com]
**Sent:** Tuesday, July 28, 2015 3:44 PM
**To:** Mark Font; Markham Ball; Tom Welby; Robert Rubin
**Cc:** Peggy Brenner; Marc Folsom; DK Hodges; Tom Simotas
**Subject:** Re: 50 2012 000698 (Al Farez-Wamed Co. vs KBR)

Dear Members of Tribunal

Per KBR email attached the Claimant clarify the following:

1- Did KBR disclose the court reporter to Claimant in the hearing before on phase
one ?

2- KBR intension to impose their own court reporter as in hearing phase one.

3- The Claimant did all the arrangement and paid the deposit and selected his own ourt
reporter in referring to Tribunal procedures and ICDR rules , as stated before to Tribunal
,the Claimant can not trusted  KBR in selecting the court reporter based on hearing
phase one .

Best Regard

Wameedh  Al azzawi

---

**From:** Mark Font <mfont@sdablaw.com>
**To:** Markham Ball <markhamball@gmail.com>; Tom Welby <twelby@wbgllp.com>; Robert Rubin
<rrubin@mccarter.com>
**Cc:** wamed jameel <wamed_jameel@yahoo.com>; Peggy Brenner <pbrenner@sdablaw.com>; Marc
Folsom <Marc.Folsom@kbr.com>; DK Hodges <dkhodges@sdablaw.com>; Tom Simotas
<SimotasAt@adr.org>
**Sent:** Tuesday, July 28, 2015 12:08 PM
**Subject:** RE: 50 2012 000698 (Al Farez-Wamed Co. vs KBR)

Members of the Tribunal,

For the past week, Respondent KBR has in good faith been attempting to reach an agreement with Mr. al Azzawi for the parties to split the cost of a court reporter.  KBR made several suggestions, all of which were summarily rejected by Mr. al Azzawi.

This weekend, Mr. al Azzawi reported that he found several acceptable reporters; however, he refused to disclose their identities.

Now, he reports that he has unilaterally retained a reporter and yet, again, he refuses to disclose their identity.

Mr. al Azzawi's conduct is prejudicial to KBR and is needlessly consuming this Tribunal's, Mr. Simotas', and KBR's resources. This Tribunal should order Mr. al Azzawi to immediately provide the name and contact information of the reporter to KBR's counsel or not allow this unidentified reporter to attend the proceedings.

In order to protect its interests and the interests of its client, The United States Government, KBR will engage its own court reporter for the duration of these proceedings.  KBR can neither abide by nor accept Claimant's unilateral actions intended to circumvent well established and agreed upon procedural rules.

Sincerely,
Mark Font

Mark A. Font   |   Senior Counsel
**SCHIRRMEISTER DIAZ-ARRASTIA BREM LLP**
700 Milam Street, 10th Floor | Houston, Texas 77002
Direct: 713.221.2503 | Cell: 281.635.4830
Main: 713.221.2500 | Facsimile: 713.228.3510
mfont@sdablaw.com  | website: www.sdablaw.com

**From:** Tom Simotas [mailto:SimotasAt@adr.org]
**Sent:** Tuesday, July 28, 2015 11:52 AM
**To:** warned jameel; Markham Ball; DK Hodges; Peggy Brenner; Mark Font; Tom Welby; Robert Rubin
**Subject:** RE: 50 2012 000698 (Al Farez-Warned Co. vs KBR)

Dear Mr. Al Azzawi,

Duly noted and many thanks.

Best,

Tom Simotas

**Tom Simotas**
**Supervisor**
American Arbitration Association
International Centre for Dispute Resolution
120 Broadway, 21st Floor

New York, NY 10271
www.icdr.org
T:+1 212 484 4077
F:+1 212 246 7274

The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

**From:** wamed jameel [mailto:wamed_jameel@yahoo.com]
**Sent:** Tuesday, July 28, 2015 12:50 PM
**To:** Tom Simotas; Markham Ball; DK Hodges; Peggy Brenner; Mark Font; Tom Welby; Robert Rubin
**Subject:** Re: 50 2012 000698 (Al Farez-Wamed Co. vs KBR)

Dear Mr. Tom Simotas

The Claimant selected a court reporter for the case , and he will attends  the hearing . The Claimant will forward his name prior to the hearing .

Best Regard

Wameedh Al azzawi

---

**From:** Tom Simotas <SimotasAt@adr.org>
**To:** wamed jameel <wamed_jameel@yahoo.com>; Markham Ball <markhamball@gmail.com>; DK Hodges <dkhodges@sdablaw.com>; Peggy Brenner <pbrenner@sdablaw.com>; Mark Font <mfont@sdablaw.com>; Tom Welby <twelby@wbgllp.com>; Robert Rubin <rrubin@mccarter.com>
**Sent:** Tuesday, July 28, 2015 7:48 AM
**Subject:** RE: 50 2012 000698 (Al Farez-Wamed Co. vs KBR)

Dear Parties and Panel Members,

So far, I have the following people on my list of guests:

- Markham Ball
- Tom Welby
- Robert Rubin
- Wameedh Al Azzawi

Respondent is kindly requested to provide a list of guests so that I may update our building security.  If you have done so already, kindly resend the same.

Best,

Tom Simotas

# Exhibit Q



**LOGCAP III**
**SUBCONTRACT SPECIAL CONDITIONS – OVERSEAS**

the release. The Subcontractor shall submit its request to CONTRACTOR at least 45 days before the proposed date for release.

Any violation of this provision, is considered a material breach of the subcontract.

## 15.0  ORDER OF PRECEDENCE

15.1  In case of conflicts between various Subcontract documents, the following order of precedence shall be used to settle said conflicts:

Change Order (s) (latest one issued)
Subcontract Terms
Subcontract Special Conditions
Special Subcontract Requirements
Subcontract General Conditions/Purchase Order Terms and Conditions
Specifications (unless specifically stated otherwise elsewhere within the Subcontract documents)
Drawings:
        Schedules shown on drawings
        Details shown on drawings
        Individual drawing sheets

Case 2:15 - CV- 01468 - GEB -AC
DOC No. 22   Filed Dec 04/2015

# Exhibit R

# (Appendix B)

## International Center for Dispute Resolution
### Case No. 50-110-T-00698 12

### AL FAREZ-WAMED CO.
Claimant

### vs.

### KELLOGG BROWN & ROOT SERVICES.
Respondent

---

### Al Farez requested of Production of Relevant Documents ( evidence)

---

Pursuant to tribunal procedural order number 8 pertaining production evidence and documents of the case .

The Claimant requested from Respondent the production of the relevant documents of the case as following:

1. All the government invoices paid to KBR  as a cost plus in date .these invoices should showing the approval of the contractor officer on these invoices and the amount and the date of payment for each invoices.
   This matter affirmed by the letter from the member of the house / Senator Jerry Mc.Nerney to the Defense Finance and Accounting service ( DFAS) on Dec/21/2009 attached ( Doc#40) , Which the DFAS affirmed to AL Farez on a conference call that all the invoices of claim forwarded by the Senator were paid by the DFAS to KBR .

1

And this matters was affirmed too by the detailed Inspector General of the U.S Army contracting command / Mr. Mark Smith in his correspondence on Sep/28/2011 to Al Farez attached ( Doc # 38 )stated :

The contract that existed was between US Government (Army) and KBR to provide the services as indicated in the specific Task/Delivery Orders. Since the work that was done by KBR (and its subcontractors, including your company) was accepted by the contracting official, payments were made in relation to each applicable contract therefore, KBR received payment for the work which was deemed acceptable. It is now incumbent upon KBR to pay all of its subcontractors. KBRs failure to accomplish this task is not the responsibility of this office to ensure happens.

Purpose:

     a) The Claimant need the accurate date of the government invoices paid to KBR for Al Farez claim of invoices submitted to KBR mentioned in KBR VRT analysis on May/02/2008 as stated for)going ( Doc# 38 , # 40 ) So the Claimant can add the accurate interest rate to the invoices in relative to the date of payments by the government to KBR.

     b) The Claimant need to know any approval from the government pertaining KBR back charge of invoices( ITF1 &ITF2 ) mentioned in change order 14.

     c) Did the government paid for all my invoices of claim as stated in (document #38, #40)?

d) Did the government paid for additional concrete in  the new footings approved by KBR engineering and not in scope of work?

e) Did the government paid to KBR for the power supply for the works activity?

f) Did the government paid to KBR for the covering of the factory with sandwich panel or steel corrugated plate?

g) Did the government paid for kick plate.?

h) Did the government paid for thermo stone .?

i) Did the government paid for HVAC in office building and annex buildngs.?

j) Did the government paid for fire suppression?

k) Did the government paid for rolling up doors.

l) Did the government paid for a concrete slab for factory and offices.

m) Did the government paid for removal of asbestos.? When?

n) Did the government paid for jag hammering and removal of old pavement? What the parts approval? When

3

o) Did the government paid for the 3 vehicle lifts? Is it the one in the SOW , or is it the new approval?

p) Did the government paid for steel decking of the mezzanine?

q) Did the government paid for 2 compressors?

r) Did the government paid for 2 exhaust fan in factory?

s) Did the government paid for all Electrical and main board?

t) Did the government paid for adding additional columns in mezzanine with its footings.

u) Did the government paid for terrace in office building?

v) Did the government paid for additional windows?

w) Did the government paid for ramp of factory?

x) Did the government paid for covering the factory parapet (tie beam) with stone?

y) Did the government paid for covering the tie beam in front of the factory with ceramic tiles?

z) Did the government paid for ceramic tiles on all walls of rest rooms? Did the government paid for covering the entrance of the main building with ceramic tiles?

aa) Did the government paid for shelves in mezzanine ?

bb)      Did the government paid for delay invoices?

cc) Did the government paid for foundations of vehicle lifting?

dd)      Did the government paid for the steel structure over the rolling up doors in the factory?

ee) Did the government paid for the new design of the main building office adding additional columns and footings?

2. The invoice of the evaporative coolers ( number , amount , date) as stated by KBR legal counsel Mr. David Brenner allegation that KBR paid it to AL Farez-Wamed Co. In KBR letter dated on May/01/2008. ( attached).

3. Is there any notification of mutual agreement (document) of KBR back charge invoices ( ITF1,ITF2 ) mentioned in change order 14? If so need to forward it .

Respectively submitted

Wameedh Al Azzawi   / Civil Eng
GENERAL MANAGER
Al FAREZ-WAMED CO
888 WILLIAMS ST.
TRACY / CA 95376 USA
Cell :          001 5104370708          USA
Cell :          00962 795358717         JORDAN
Cell :          00964 7714277666        IRAQ

E-mail : wamed@alfarez-wamed.com
URL : www.alfarez-wamed.com

6

## Appendix C

---- Forwarded Message ----
**From:** Mark Font <mfont@sdablaw.com>
**To:** wamed jameel <wamed_jameel@yahoo.com>; Markham Ball <markhamball@gmail.com>; Robert Rubin <rrubin@mccarter.com>; Tom Welby <twelby@wbgllp.com>
**Cc:** "Shinginrai Chaza, LL.M." <ChazaS@adr.org>; DK Hodges <dkhodges@sdablaw.com>; William Russell <wrussell@sdablaw.com>: "David Brenner (David.Brenner2@kbr.com)" <David.Brenner2@kbr.com>; Briana Bassler <bbassler@sdablaw.com>; Peggy Brenner <pbrenner@sdablaw.com>
**Sent:** Saturday, August 2, 2014 12:06 PM
**Subject:** Al Farez v. KBR

Dear Members of the Tribunal and Mr. Al Azzawi,

Attached is Respondent KBR's Objections to Claimant Al Farez' Requests for Production.

Please do not hesitate to contact me if you have any questions or if you wish to discuss this matter further.

Thanks,
Mark

Mark A. Font  |  Senior Counsel
**SCHIRRMEISTER DIAZ-ARRASTIA BREM LLP**
700 Milam Street, 10th Floor | Houston, Texas 77002
Direct: 713.221 2503 | Cell: 281.635.4830
Main: 713.221.2500 | Facsimile: 713.228.3510
mfont@sdablaw.com  | website: www.sdablaw.com

## INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION
### Arbitration No. 50-467-T-000707-12


In the Matter of

AL FAREZ-WAMED CO.,

Claimant

vs.


KELLOGG BROWN & ROOT SERVICES, INC.,

Respondent.

---

### RESPONDENT KBR's OBJECTIONS TO
### CLAIMANT AL FAREZ' REQUESTS FOR PRODUCTION

---




SCHIRRMEISTER DIAZ-ARRASTIA BREM LLP
Pennzoil Place - North Tower
700 Milam Street, 10th Floor
Houston, Texas 77002
Telephone: (713) 221-2500
Facsimile: (713) 228-3510


*Attorneys for Respondent*
*Kellogg Brown & Root Services, Inc.*

August 2, 2014

Pursuant to the Tribunal's Procedural Orders No. 7 and 8 Respondent Kellogg Brown & Root Services, Inc. ("KBR") respectfully objects to the requests for production from Claimant Al Farez-Warned Co. (Al-Farez) as follows:

1. On July 24, 2014, Al Farez sent KBR and this Tribunal an email with several documents attached. One of the documents was Al Farez' requests for production, a true and correct copy of which is attached hereto as Exhibit A.

2. KBR objects to request number 1 because it is not reasonably specific as required by the Procedural Orders. Request number 1 is not limited in time or scope; it literally seeks all government invoices ever paid to KBR. Such a request clearly goes beyond the scope of this dispute. In addition, the request contains a substantial amount of language which is incomprehensible and/or not properly part of a request for production. KBR believes Al Farez is seeking documents reflecting amounts paid by the U.S. Government to KBR on vouchers submitted (KBR does not submit invoices) on subcontract number 02H8-US-SJ00163. Although the payments by the U.S. Government to KBR on subcontract number 02H8-US-SJ00163 are not relevant to Al Farez' claims before this Tribunal, KBR is in the process of locating such documents and will produce those documents related to the vouchers submitted and payments received on subcontract number 02H8-US-SJ00163. The Tribunal should reform and limit request number 1 to those documents.

3. KBR objects to request for production number 2 because it contains misstatement of fact. Al Farez references a statement made by KBR legal counsel in a letter dated May 1, 2008. A copy of the document referred to and sent by Al Farez with

the request is attached hereto as Exhibit B.  It is an email from Tom Hudson, who is not counsel for KBR, to Wamed Jameel.  KBR believes that Al Farez is seeking documents reflecting that KBR purchased 2 evaporative coolers which is part of KBR's counterclaim.  The Tribunal should reform and limit request number 2 to those documents.

4.   KBR objects to request for production number 3 because it contains misstatements of fact.  Attached hereto as Exhibit C is a true and correct copy of Change Order 14, without exhibits.  The document is signed by Mr. Al-Azzawi and does not mention any back charges as alleged in the request.  Consequently, the request does not make sense and KBR has no idea what Al Farez is seeking.  The Tribunal should strike this request.

WHEREFORE, KBR requests that this Tribunal reform and limit Al Farez' requests for production number 1 and 2 as set forth herein and that it strike request no. 3.

Respectfully Submitted,

SCHIRRMEISTER DIAZ-ARRASTIA BREM LLP

Margaret T. Brenner
William W. Russell
Mark A. Font
Briana J. Bassler
Pennzoil Place - North Tower
700 Milam Street, 10th Floor
Houston, Texas 77002
Telephone: (713) 221-2500
Facsimile: (713) 228-3510
        *pbrenner@sdablaw.com*
        *wrussell@sdablaw.com*
        *mfont@sdablaw.com*
        *bbassler@sdablaw.com*

***Attorneys for Respondent***
***Kellogg Brown & Root Services, Inc.***

00168121.DOCX; 3

Appendix D

----- Forwarded Message -----
**From:** Markham Ball <markhamball@gmail.com>
**To:** wamed jameel <wamed_jameel@yahoo.com>; DK Hodges <dkhodges@sdablaw.com>; William
Russell <wrussell@sdablaw.com>; "David Brenner (David.Brenner2@kbr.com)"
<David.Brenner2@kbr.com>; Briana Bassler <bbassler@sdablaw.com>; Peggy Brenner
<pbrenner@sdablaw.com>; Mark Font <mfont@sdablaw.com>
**Cc:** Robert Rubin <rrubin@mccarter.com>; Tom Welby <twelby@wbgllp.com>; "cc: Shinglrirai Chaza,
LL.M." <ChazaS@adr.org>
**Sent:** Wednesday, August 6, 2014 7:08 AM
**Subject:** Al Farez v. KBR--Ruling on KBR's objections to discovery requests

Dear Counsel:

The tribunal has considered KBR's Objections to Claimant's Requests for Production
and Claimant's response thereto. We issue the following order:

Objection to request number 1.  Respondent shall furnish all vouchers that it submitted
for payment under subcontract 02H8-US-SJ00163 and that were paid by the
Government, together with evidence of payments received on such vouchers.

Objection to request number 2.  Respondent shall furnish a copy of Claimant's invoice
for "two evaporative coolers (swamp coolers)" referred to in an email from Tom Hudson
dated May 1, 2008, together with documents showing Respondent's response to the
invoice, including any documents indicating whole or partial payment of the invoice.

Objection to request number 3.  Respondent shall furnish copies of any documents in its
possession showing Claimant's agreement or disagreement with KBR back charge
invoices ITF1 or ITF2.

Except as provided herein, KBR's Objections to Claimant's Requests for Production are
denied.

For the Tribunal,

Markham Ball
Chair

Appendix E

INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION
Arbitration No. 50-467-T-000707-12

In the Matter of

AL FAREZ-WAMED CO.,

Claimant

vs.

KELLOGG BROWN & ROOT SERVICES, INC.,

Respondent.

RESPONDENT KBR'S RESPONSES TO
CLAIMANT AL FAREZ'S OBJECTIONS TO RESPONDENT KBR'S RESPONSES TO
CLAIMANT AL FAREZ'S FIRST REQUESTS FOR PRODUCTION

SCHIRRMEISTER DIAZ-ARRASTIA BREM LLP
Pennzoil Place - North Tower
700 Milam Street, 10th Floor
Houston, Texas 77002
Telephone: (713) 221-2500
Facsimile: (713) 228-3510

*Attorneys for Respondent*
*Kellogg Brown & Root Services, Inc.*

September 4, 2014

Pursuant to the Tribunal's August 25, 2014, email to the Party Representatives,

KBR respectfully files its responses to Al Farez's objections to KBR's Responses to Al

Farez's First Requests for Production.

## Background

1.      On July 24, 2014, Claimant Al Farez Wamed Co. ("Al Farez,,) served its

requests for production on Respondent Kellogg Brown & Root Services, Inc. ("KBR,,).

A true and correct copy of those requests is attached as Exhibit A.

2.      On August 2, 2014, KBR filed its objections to Al Farez's requests for

production of documents.  A true and correct copy of KBR's objections (without

exhibits) is attached as Exhibit B.

3.      On August 6, 2014, the Tribunal sent the Party representatives an email

setting forth its ruling on KBR's Objections to Al Farez's requests for production.  A true

and correct copy of the tribunal's email is attached as Exhibit C.

4.      On August 22, 2014, KBR served its responses to Al Farez's First Requests

for Production together with 265 pages of documents.  A true and correct copy of KBR's

responses is attached as Exhibit D.

5.      On August 25, 2014, Al Farez sent an email complaining of KBR's

responses.  A true and correct copy of Al Farez's email is attached as Exhibit E.

6.      Later on August 25, 2014, the Tribunal sent an email to the Party

representatives stating "KBR shall within 10 days respond to objections to discovery

requests in the August 25 email.,,  A true and correct copy of the Tribunal's email is

attached as Exhibit F.

2

## Responses

KBR responds to the objections set out in Al Farez's August 25, 2014, email as follows:

### Al Farez Objection:[1]

"The Respondent did not comply with tribunal ruling in the production of the relevant document mentioned in Claimant letter to KBR dated on July 24 /20149 (attached) In relative to Al Farez requested production of relative document from KBR item 1 stated:

*((All the government invoices paid to KBR as a cost plus in date .these invoices should showing the approval of the contractor officer on these invoices and the amount and the date of payment for each invoices))."*

### KBR's Response:

On August 6, the Tribunal ordered that "Respondent shall furnish all vouchers that it submitted for payment under subcontract 02-H8-SJ00163 and that were paid by the Government, together with evidence of payments received on such vouchers.„

KBR has more than fully complied with Al Farez's document request and the Order of this Tribunal.  Although it was not requested or required, KBR produced a chart which reflects that Al Farez submitted 41 invoices for work on subcontract 02-H8-SJ00163 ("SJ00163„).  The chart further reflects that KBR sought payment from the US Government in 5 vouchers for the amounts paid to Al Farez on the 41 subcontract SJ00163 invoices.  **KBR has not sought payment from the U.S. Government for any other amounts on subcontract SJ00163.**  KBR produced that chart as courtesy to assist Al Farez in interpreting and analyzing the documents which followed (the vouchers and evidence of payment).

KBR also produced the 5 vouchers as well as a summary and computer screen captures which reflect the dates and amounts paid by the U.S. Government on those 5 vouchers.  Unless the vouchers are rejected or the Defense Contract Audit Agency requests supporting documentation for certain line items, KBR does not

---

[1] KBR is quoting Al Farez' objections verbatim.

3

receive any documentation from the US Government; the vouchers are simply paid.

KBR has no additional responsive documents to this request.

**Al Farez Objection:**

"The Respondent decline in his letter dated on Aug 22/2014 (attached) the production of the relative documents in details as ruling by tribunal on Aug 6 /2014, in showing the approval of the government on each vouchers of task order( all items of Al Farez sublet work ) submitted by KBR to the government for the approval including items of claim invoices( Exhibit A , Exhibit B) .„

**KBR's Response:**

This appears to be a statement or argument rather than an objection.  Regardless, the sentence is not comprehensible as written.

If Al Farez is complaining that KBR did not produce documents showing approval of the U.S. Government on each voucher, then Al Farez's request exceeds the scope of what the Tribunal ordered KBR to produce.  KBR further responds that it does not possess any such approval documents.  If any such approval documents exist, they would be in possession of the U.S. Government and Claimant has had more than 7 years to secure such documents from the U.S. Government.

If Al Farez is complaining that KBR did not produce vouchers for items and/or amounts claimed in Exhibits A and B, then KBR responds that it has fully complied with the Tribunal's August 6, 2014, Order.  KBR would further respond it does not possess any additional responsive documents.  Al Farez has grossly misinterpreted the email it received from Mark Smith, Detailed Inspector General, U.S. Army Contracting Command, on September 28, 2013.  Nowhere in the document does it say the U.S. Government has paid KBR for the claims listed in Exhibits A or B.[2]  **Again, KBR has only requested and only received payment from the U.S. Government for the 41 Al Farez invoices submitted for work on subcontract SK00163.**

---

[2] The email could not refer to the claims in Exhibit B since no one in the Government or at KBR was even aware of the claims listed in Exhibit B until July 14, 2014, when Mr. Azzawi served Exhibit B on this Tribunal and KBR

**Al Farez Objection:**

"The Respondent blanked all the details of vouchers submitted to Al Farez from
KBR000008 through KBR 00000211 (203 pages blank documents)(attached) random
document of KBR blanked voucher.,,

> **KBR's Response:**
>
> The documents were not attached. Nevertheless, Al Farez's representation is not
> accurate; KBR did not redact "all the details,, of the vouchers. As set forth in
> KBR's response to Al Farez's request, a voucher may contain hundreds, or even
> thousands, of line item entries, the majority of which represent an invoice paid to a
> subcontractor (KBR does self-perform some contractually required tasks). KBR
> did redact the line item entries in each voucher that did not related to a request for
> payment of an invoice for work on subcontract SJ00163. Line entry information
> related to non-SJ00163 invoices is not reasonably calculated to lead to the
> discovery of relevant evidence and is not reasonably expected to serve as evidence
> tending to prove or disprove a fact that will determine or help determine the
> outcome of this case. In addition to not being relevant to Al Farez's claims, KBR
> would object to the production of the non-SJ00163 line item entry information
> because such information is protected from disclosure as confidential business
> information and trade secrets.

**Al Farez Objection:**

"In change order 14 the retention money for each invoice is 20% (invoice 7 to 41) and
KBR mentioned in their letter it is 10% and they are lying.,,

> **KBR's Response:**
>
> Al Farez has not stated a valid or proper objection; this is a conclusory statement
> with an improper argument. KBR and its counsel have patiently endured repeated,
> baseless, and improper accusations of "lying,, and engaging in "deceiving tactics.,,
> Mr. Al Azzawi should be held to the same standard of conduct as any counsel
> appearing before this Tribunal. Baseless accusations of KBR or its counsel lying
> or engaging in deceiving tactics is improper and should not be tolerated by this
> Tribunal.

**Al Farez Objection:**

"KBR submitted to Al Farez as their deceiving tactic, the outline of the vouchers , procedures on how KBR submitted vouchers to the government rather than to give evidence and details of the vouchers submitted .,,

> **KBR's Response:**
>
> Al Farez has not stated a valid or proper objection; this is another conclusory statement with a patently improper argument.  KBR has fully complied with Al Farez's request and the Order of the Tribunal.  KBR could have produced the vouchers (evidence) and the screen captures reflecting payment from the U.S. Government (evidence) in response to Al Farez' request for production of documents; however, as a courtesy, KBR also produced two summaries and some explanatory comments in order to assist Al Farez in interpreting documents with which he is clearly not familiar and in hopes of preventing some of Al Farez's incessant and baseless argument.  KBR is more than willing to withdraw the summaries and explanatory comments.

**Al Farez Objection:**

"The government affirmed paid all these invoices ( Exhibit A , Exhibit B) to KBR as stated in the government letter dated on Sep 28 / 2011 ( doc# 38) and they accept all Al Farez works items.,,

> **KBR's Response:**
>
> Al Farez has failed to state a valid or proper objection; this is another incorrect conclusory statement based upon Mr. Al Azzawai's gross misinterpretation of the September 28, 2011, email from Mark Smith, Detailed Inspector General, U.S. Army Contracting Command.  Further, Exhibits A and B are not Al Farez invoices; they are ever changing lists of items and additional amounts Al Farez claims it is due for work on subcontract SJ00163.  **KBR has only requested and only received payment from the U.S. Government for the 41 Al Farez invoices submitted for work on subcontract SK00163.**

**Al Farez Objection:**

"KBR in their letter on Aug 22 2014 to Al Farez deny that the government paid for invoices of claim (Exhibit A , Exhibit B ) and they are lying (doc#38).,,

>   **KBR's Response:**
>
>   Al Farez has failed to state a valid or proper objection; this is another conclusory statement and improper argument.  Further, Exhibits A and B are not Al Farez invoices; they are ever changing lists of items and additional amounts Al Farez claims it is due for work on subcontract SJ00163.  **KBR has only requested and only received payment from the U.S. Government for the 41 Al Farez invoices submitted for work on subcontract SK00163.**

**Al Farez Objection:**

"KBR also deny and lying in their letter, stating that KBR did not back charge from invoice # 3 the amount of the agreement in invoice 1 , 2 (attached Al Farez documents for invoice # 3) and they are lying too when they stated in their letter too that they paid to Al Farez a partial amount on invoice # 3 , the only invoices KBR paid a partial amount is in invoice number ( 1 , 2 ) for the material and equipment imported .,,

>   **KBR's Response:**
>
>   Al Farez has failed to state a valid or proper objection; this is another statement and improper argument.  This is a classic example of Mr. Al Azzawi's inability to adequately read, write, and understand the English language.  Mr. Al Azzawi apparently does not understand the difference between the phrase "back charge,,, a term with contractual significance, and the word subtract.  In this case, KBR did not back charge Al Farez for the amounts paid on invoices nos. 1 and 2.  However, as reflected in Al Farez's invoice no. 3 (copy attached), Al Farez calculated the amount of the invoice by subtracting the amount of invoice nos. 1 and 2 from the amount of the 30% project completion milestone payment.
>
>   Further, KBR did not state in its response to Al Farez's Request for Production No. 3 that it made a partial payment on Al Farez's invoice number 3 as alleged by Mr. Al Azzawi.  KBR produced a "Partial Payment Register,,, an internal KBR document used by KBR to track payments made to subcontractors.  The Partial

Payment Register produced by KBR reflects the amounts of Al Farez's first 3 invoices.

**Al Farez Objection:**

"KBR lying and deceiving the Tribunal when they deliberate to concealment of Al Farez bidding attached with the subcontracts agreement signed with KBR on 22 March / 2005. (doc 39 and doc 40) attached.„

> **KBR's Response:**
>
> Al Farez has failed to state a valid or proper objection.  As written, this statement is not comprehensible.  It appears Al Farez is accusing KBR of lying, deceiving, and deliberately concealing certain documents (docs. 39 and 40) related to Al Farez' bid on subcontract SJ00163.  This accusation is wholly baseless and inappropriate.  KBR has not lied, deceived, or deliberately concealed any documents from this Tribunal.  A review of doc 39 and doc 40 reveals they are not responsive to any of Al Farez's requests for production of documents; therefore, KBR had no obligation to produce them at this time.

**Al Farez Objection:**

"There is no indication of fire suppression in the vouchers outline submitted showing approval of the government as KBR alleged in their counter claim. That's prove and evidence that KBR are lying in their counter claim.„

> **KBR's Response:**
>
> Al Farez does not state a valid or proper objection.  Other than once again improperly accusing KBR of lying, it is unclear why Al Farez included this statement as an objection to KBR's Responses to Al Farez's First Requests for Production of Documents.  The statement is not relevant to the issue of whether KBR properly responded to Al Farez' document requests.

**Al Farez Objection:**

"KBR affirmed in their letter too, that they did not paid to Al Farez the invoice of agreement for the evaporative cooler, and that's another lying of KBR in VRT on May 2 / 2008, as well as all other 31 items.„

**KBR's Response:**

Al Farez has failed to state a valid or proper objection; this is another statement and improper argument. This is also a gross misrepresentation of the evidence. There is no "invoice of agreement for the evaporative cooler.„ What Al Farez fails to disclose to this Tribunal is it did not and would not ever have submitted an invoice for just the evaporative coolers under subcontract SJ00163. The subcontract was a firm fixed price contract which was originally to be paid in several payments based upon completion of certain percentages of the scope of work. Because of Al Farez's financial issues the subcontract payment schedule was changed such that Al Farez was paid based upon a list of milestones.

**WHEREFORE**, KBR respectfully requests that Al Farez's objections be denied.

KBR further requests that this Tribunal reprimand and remind Mr. Al Azzawi that

baseless accusations of KBR or its counsel lying or engaging in deceiving tactics is

improper and will not be tolerated by this Tribunal and that continued improper behavior

may result in adverse action being taken against him and Al Farez.

Respectfully Submitted,

**SCHIRRMEISTER DIAZ-ARRASTIA BREM LLP**

Margaret T. Brenner
William W. Russell
Mark A. Font
Briana J. Bassler
Pennzoil Place - North Tower
700 Milam Street, 10th Floor
Houston, Texas 77002
Telephone: (713) 221-2500
Facsimile: (713) 228-3510
   *pbrenner@sdablaw.com*
   *wrussell@sdablaw.com*
   *mfont@sdablaw.com*
   *bbassler@sdablaw.com*

***Attorneys for Respondent***
***Kellogg Brown & Root Services, Inc.***

10

( Appendix G )


----- Forwarded Message -----
**From:** wamed jameel <wamed_jameel@yahoo.com>
**To:** Markham Ball <markhamball@gmail.com>; DK Hodges <dkhodges@sdablaw.com>; William Russell
<wrussell@sdablaw.com>; "David Brenner (David.Brenner2@kbr.com)" <David.Brenner2@kbr.com>;
Bnana Bassler <bbassler@sdablaw.com>; Peggy Brenner <pbrenner@sdablaw.com>; Mark Font
<mfont@sdablaw.com>
**Cc:** Robert Rubin <rrubin@mccarter.com>; Tom Welby <twelby@wbgllp.com>; "cc: Shingirirai Chaza,
LL.M." <ChazaS@adr.org>
**Sent:** Monday, August 25, 2014 6:11 AM
**Subject:** Re: Al Farez v. KBR--Ruling on KBR's objections to discovery requests


Dear members of Tribunal

Pursuant to the Tribunals order procedural # 8 and to Tribunal ruling on Aug 6
2014 .
The Respondent did not comply with tribunal ruling  in the production of the
relevant document mentioned in Claimant letter to KBR dated on July 24 /20149
(attached) In relative to Al Farez requested production of relative document from
KBR item 1 stated:

((*All the government invoices paid to KBR  as a cost plus in date .these invoices
should showing the approval of the contractor officer on these invoices  and the
amount and the date of payment for each invo*ices)).

• The Respondent decline in his letter dated on Aug 22/2014 ( attached) the
production of the relative documents in details as ruling by tribunal on Aug 6
/2014, in showing the approval of the government on each vouchers of task order(
all items of Al Farez sublet work ) submitted by KBR to the government for the
approval including items of claim invoices( Exhibit A , Exhibit B) .

• The Respondent blanked all the details of vouchers submitted to Al Farez  from
KBR000008      through     KBR    00000211    (    203    pages    blank
documents)(attached)  random document of KBR blanked voucher.

• In change order 14 the retention money for each invoice is 20% ( invoice 7 to
41) and KBR mentioned in their letter it is 10% and they are lying.

• KBR submitted to Al Farez as their deceiving tactic, the outline of the vouchers , procedures on how KBR submitted vouchers to the government rather than to give evidence and details of the vouchers submitted .

• The government affirmed paid all these invoices ( Exhibit A , Exhibit B) to KBR as stated in the government letter dated on Sep 28 / 2011 ( doc# 38)and they accept all Al Farez works items.

• KBR in their letter on Aug 22 2014 to Al Farez deny that the government paid for invoices of claim ( Exhibit A , Exhibit B ) and they are lying        ( doc#38)

• KBR also deny and lying in their letter, stating that KBR did not back charge from invoice # 3 the amount of the agreement in invoice 1 , 2 (attached Al Farez documents for invoice # 3) and they are lying too when they stated in their letter too that they paid to Al Farez a partial amount on invoice # 3 , the only invoices KBR paid a partial amount is in invoice number ( 1 , 2 ) for the material and equipment imported .

• KBR lying and deceiving the Tribunal when they deliberate to concealment of Al Farez bidding attached with the subcontracts agreement signed with KBR on 22 March / 2005.( doc 39 and doc 40) attached.

• There is no indication of fire suppression in the vouchers outline submitted showing approval of the government as KBR alleged in their counter claim.
That's prove and evidence that KBR are lying in their counter claim.

• KBR affirmed in their letter too, that they did not paid to Al Farez the invoice of agreement for the evaporative cooler , and that's another lying of KBR in VRT on May 2 / 2008, as well as all oher 31 items.

Based on forgoing items, and based upon KBR incredibility due to their all breaching actions and lying and deceiving the Tribunal and due to KBR blanked vouchers submitted, The Claimant request from Tribunal to recall all the vouchers in details paid to KBR by the government (DFAS) for the task order SJ00163       ( vehicle maintenance facility), and all Al Farez sublet works submitted by KBR to DCMA (the owner of the contract) for approval as a cost plus contract.

Referring to procedural #8 , the claimant need to know from tribunal , The final date for submitting the requested production of documents for this order?

Best Regard

Wameedh Al Azzawi   / Civil Eng
   GENERAL MANAGER
    Al FAREZ-WAMED CO
    888 WILLIAMS ST.
    TRACY / CA 95376 USA
      Cell :          001 5104370708          USA
      Cell :          00962 795358717         JORDAN
      Cell :          00964 7714277666        IRAQ

      E-mail : wamed@alfarez-wamed.com
      URL : www.alfarez-wamed.com

Appendix H


On Fri, Sep 5, 2014 at 9:21 AM, wamed jameel <wamed_jameel@yahoo.com> wrote:

Dear ,members of Tribunal

Once again, KBR did not comply with the Tribunal ruling on Aug/06/2014
nor  with Tribunal procedural on Aug/25/2014 . KBR letter submitted to tribunal
on Sept/04/2014 is full with lying and deceiving to Tribunal as they always use
that tactic with the government before (All  KBR VRT on May/02/2014).and in
Tribunal phase 1 .

KBR declined to comply to the production of the government invoices, which
confirm  KBR  stole the government money as well as  AL Farez invoices of claim
( Exhibit A , Exhibit B)  accepted and paid by the government to KBR      (
doc#38) stated :

*Since the work that was done by KBR (and its subcontractors, including your
company) was accepted by the contracting official, payments were made in
relation to each applicable contract therefore, KBR received payment for the
work which was deemed acceptable. It is now incumbent upon KBR to pay all
of its subcontractors.  KBRs failure to accomplish this task is not the
responsibility of this office to ensure happens.)*

Mr , Chairman . The main reason  KBR did not ,and will not reveal  the production
of government invoices ,as Al Farez stated to Tribunal before,  cause it will
uncover on all KBR breaching , stole , fraud and  deceiving the government .

Al Farez predicted ,that  KBR will not reveal  the production  of the government
invoices , and that's why AL Farez requested from the Tribunal before to recall it.

 KBR incredibility and lying clearly noticed in that matter ( blank all the
government invoices paid to KBR for AL Farez works . and in KBR allegation that
they do not possess the government ( DCMA)approval on each  invoice KBR
submitted to the government  ( they possess all Al Farez invoices , and they do not
possess the government approval of payments to KBR in millions)

KBR incredibility and lying clearly noticed also in the outline briefing of invoices submitted ,as KBR did not gave any indication or prove  to their counterclaim invoice( fire suppression ), and no indication or prove  of back charging invoice 1&2 in the government invoices ,which affirm a fraud)

Mr, Chairman , KBR used on lying since we start the subcontract on March /2005  and till now  , (runaround ,breaching ,deceiving  ,fraud , stole ,and stalling) . and Al Farez will submit with evidence all of these actions , some of them submitted to Tribunal ( KBR  VRT on May/02/2014 ) and the others after Al Farez get all the government invoices in details paid to KBR for Al Farez accepted work.

The production of the government invoices will prove , the lying and deceiving  actions by the Respondent (Mrs  Brenner) in her letter to Tribunal on Aug/09/2014 .

 The respondent did not gave any explanation for the reason of Back charging  ? Any agreement of the back charging ? Any change order refer to it? , any agreement for the partial amount paid by KBR to Al farez  for reaching                           ( 30%)milestone ( invoice #3)? as  alleged by KBR  before. KBR stated in invoice #3 details under description its payment for reaching 30% milestone? So which mile stone KBR was referred to? Is it the mile stone of change order 11? or a  partial payment as KBR alleged?  Did KBR submitted invoice # 3 to the government in reaching 30 % of Al Farez work for only $57,537 ?

 Wasn't that , A breaching by KBR in change order 11 for partial payment in invoice # 3 ? (11 month  of Al Farez working  since  March /2005 with 2 additional change orders  and reaching 30% of work  ,is it worth $ 57,537?  ( that's will not  cover a part  of the indirect  cost of Al Farez company  for 11 month ) .? how many millions KBR submitted as invoices to the  government for the approval of Al Farez 30% of accepted work.? As stated in task order 100 (SJ00163) for KBR voucher Num 20,21,25,35 the government paid to KBR more than 65 millions  ( KBR 000002 ) till the date 28/Feb/2006 ? Did the government subtract  invoice 1, 2 from KBR ? In which voucher or invoice ,the government subtract  invoice 1,2 from KBR  submitted vouchers ? if not, why KBR  back charge it from Al Farez ,as Mrs .Brenner  like to call the back charging in invoice #3 a subtract process .

Based on forgoing and on KBR incredibility , Al Farez request from Tribunal to :

1-    Recall all the invoices of VMF (SJ00163) approved and accepted by government DCMA contractor officer ( doc# 38) as KBR stated in their letter on Sep/04/2014 it is not under KBR possession.

2-    Recall all the invoices of VMF( SJ00163) paid by the government ( DFAS) to KBR in details , the amount of each invoice and the date .As KBR blank all the details of invoices paid by the government to KBR for Al Farez accepted works.

3-    Recall all the investigation done  by the  US army contracting command  in this matter in referring to doc# 38 and doc# 39,and In relative to  AL Farez reply letter in doc#39.


Best Regard

Wameedh Al Azzawi  / Civil Eng
   GENERAL MANAGER
   Al FAREZ-WAMED CO
   888 WILLIAMS ST.
   TRACY / CA 95376 USA
   Cell :          001 5104370708          USA
   Cell :          00962 795358717         JORDAN
   Cell :          00964 7714277666        IRAQ

   E-mail : wamed@alfarez-wamed.com
   URL : www.alfarez-wamed.com

From: DK Hodges <dkhodges@sdablaw.com>
To: "Markham Ball (markhamball@gmail.com)" <markhamball@gmail.com>; Tom Welby <twelby@wbgllp.com>; Robert Rubin <rrubin@mccarter.com>
Cc: "wamed_jameel@yahoo.com" <wamed_jameel@yahoo.com>;
"simotasat@adr.org" <simotasat@adr.org>; Peggy Brenner <pbrenner@sdablaw.com>;
Mark Font <mfont@sdablaw.com>; DK Hodges <dkhodges@sdablaw.com>

Appendix  H


On Fri, Sep 5, 2014 at 9:21 AM, wamed jameel <wamed_jameel@yahoo.com> wrote:


Dear ,members of Tribunal

Once again, KBR did not comply with the Tribunal ruling on Aug/06/2014
nor  with Tribunal procedural on Aug/25/2014 . KBR letter submitted to tribunal
on Sept/04/2014 is full with lying and deceiving to Tribunal as they always use
that tactic with the government before (All  KBR VRT on May/02/2014).and in
Tribunal phase 1 .

KBR declined to comply to the production of the government invoices, which
confirm  KBR  stole the government money as well as  AL Farez invoices of claim
( Exhibit A , Exhibit B)  accepted and paid by the government to KBR        (
doc#38) stated :

*Since the work that was done by KBR (and its subcontractors, including your
company) was accepted by the contracting official, payments were made in
relation to each applicable contract therefore, KBR received payment for the
work which was deemed acceptable.  It is now incumbent upon KBR to pay all
of its subcontractors.  KBRs failure to accomplish this task is not the
responsibility of this office to ensure happens.)*

Mr , Chairman . The main reason  KBR did not ,and will not reveal  the production
of government invoices ,as Al Farez stated to Tribunal before,  cause it will
uncover on all KBR breaching , stole , fraud and  deceiving the government .

Al Farez predicted ,that   KBR will not reveal  the production  of the government
invoices , and that's why AL Farez requested from the Tribunal before to recall it.

 KBR incredibility and lying clearly noticed in that matter ( blank all the
government invoices paid to KBR for AL Farez works . and in KBR allegation that
they do not possess the government ( DCMA)approval on each  invoice KBR
submitted to the government  ( they possess all Al Farez invoices , and they do not
possess the government approval of payments to KBR in millions)

KBR incredibility and lying clearly noticed also in the outline briefing of invoices submitted ,as KBR did not gave any indication or prove  to their counterclaim invoice( fire suppression ), and no indication or prove  of back charging invoice 1&2 in the government invoices ,which affirm a fraud)

Mr, Chairman , KBR used on lying since we start the subcontract on March /2005  and till now  , (runaround ,breaching ,deceiving  ,fraud , stole ,and stalling) . and Al Farez will submit with evidence all of these actions , some of them submitted to Tribunal ( KBR  VRT on May/02/2014 ) and the others after Al Farez get all the government invoices in details paid to KBR for Al Farez accepted work.

The production of the government invoices will prove , the lying and deceiving  actions by the Respondent (Mrs  Brenner) in her letter to Tribunal on Aug/09/2014 .

 The respondent did not gave any explanation for the reason of Back charging  ? Any agreement of the back charging ? Any change order refer to it? , any agreement for the partial amount paid by KBR to Al farez  for reaching                      ( 30%)milestone ( invoice #3)? as  alleged by KBR  before. KBR  stated in invoice #3 details under description its payment for reaching 30% milestone? So which mile stone KBR was referred to? Is it the mile stone of change order 11? or a  partial payment as KBR alleged?  Did KBR submitted invoice # 3 to the government in reaching 30 % of Al Farez work for only $57,537 ?

 Wasn't that , A breaching by KBR in change order 11 for partial payment in invoice # 3 ? (11 month  of Al Farez working  since  March /2005 with 2 additional change orders  and reaching 30% of work ,is it worth $ 57,537? ( that's will not  cover a part  of  the indirect  cost of Al Farez company  for 11 month ) .? how many millions KBR submitted as invoices to the  government for the approval of Al Farez 30% of accepted work.? As stated in task order 100 (SJ00163)  for KBR voucher Num 20,21,25,35 the government paid to KBR more than 65 millions  ( KBR 000002 ) till the date 28/Feb/2006 ? Did the government subtract  invoice 1, 2 from KBR ? In which voucher or invoice ,the government subtract  invoice 1,2 from KBR  submitted vouchers ? if not, why KBR  back charge it from Al Farez ,as Mrs .Brenner  like to call the back charging in invoice #3 a subtract process .

Based on forgoing and on KBR incredibility , Al Farez request from Tribunal to :

1-    Recall all the invoices of VMF (SJ00163) approved and accepted by government DCMA  contractor officer ( doc# 38) as KBR stated in their letter  on Sep/04/2014 it is not under KBR possession.

2-    Recall all the invoices of VMF( SJ00163) paid by the government ( DFAS) to KBR in details , the amount of each invoice and the date .As KBR blank all the details of invoices paid by the government to KBR for Al Farez accepted works.

3-    Recall all the investigation done  by the  US army contracting command  in this matter in referring to doc# 38 and doc# 39,and In relative to  AL Farez reply letter in doc#39.


Best Regard

Wameedh Al Azzawi   / Civil Eng
    GENERAL MANAGER
    Al FAREZ-WAMED CO
    888 WILLIAMS ST.
    TRACY / CA 95376 USA
    Cell :        001 5104370708        USA
    Cell :        00962 795358717        JORDAN
    Cell :        00964 7714277666        IRAQ

    E-mail : wamed@alfarez-wamed.com
    URL : www.alfarez-wamed.com


**From:** DK Hodges <dkhodges@sdablaw.com>
**To:** "Markham Ball (markhamball@gmail.com)" <markhamball@gmail.com>; Tom Welby <twelby@wbgllp.com>; Robert Rubin <rrubin@mccarter.com>
**Cc:** "wamed_jameel@yahoo.com" <wamed_jameel@yahoo.com>; "simotasat@adr.org" <simotasat@adr.org>; Peggy Brenner <pbrenner@sdablaw.com>; Mark Font <mfont@sdablaw.com>; DK Hodges <dkhodges@sdablaw.com>

# Appendix I

----- Forwarded Message -----
**From:** Markham Ball <markhamball@gmail.com>
**To:** wamed jameel <wamed_jameel@yahoo.com>; DK Hodges <dkhodges@sdablaw.com>; Peggy
Brenner <pbrenner@sdablaw.com>; Mark Font <mfont@sdablaw.com>
**Cc:** Tom Welby <twelby@wbgllp.com>; Robert Rubin <rrubin@mccarter.com>; "simotasat@adr.org"
<simotasat@adr.org>
**Sent:** Monday, September 8, 2014 11:40 AM
**Subject:** Re: Case Number: 50-20-1200-0698 Al Farez v. KBR

Dear counsel and parties:

The tribunal has reviewed Claimant's objections to KBR's responses to Claimant's First
Requests for Production, dated August 25, together with KBR's response thereto of September 4
and a further email from Claimant dated September 5.

Claimant's objections are overruled.  Any requests for further action by the tribunal that are
included in Claimant's filings are denied.

For the tribunal
Markham Ball, chair

(Appendix J)

## International Center for Dispute Resolution
### Case No. 50-110-T-00698 12

## AL FAREZ-WAMED CO.
Claimant

### VS.

## KELLOGG BROWN & ROOT SERVICES.
Respondent

### Claimant Response to procedural order no.11

April/28/2015

Dear / members of Tribunal

Pursuant to Tribunal procedural No. 11 , the Claimant clarify the following:

1. Al Farez Co .did a lot of successful turnkey project to the government as a subcontractor and as main contractor
The Claimant are in well known of the government requirement and always satisfy the government and all concerned party in the project ( attached) .
All of these items of claim are requested by the government and accepted by the government  and paid by the government to KBR .
All of these items of claims are also directed and approved by KBR engineer and under daily supervision by KBR construction and under KBR construction daily reports and discussed with KBR engineers and  QAQC and KBR procurement and construction on a conference

1

meeting weekly in which all  discuss the schedule and the activity of works.

2. The Claimant submit to Tribunal on April /15 , the items of claims with a strong evidence , and it was in the order which the Claimant wish to presented in the final hearing  and as the following ;

   a) The government ( owner)approve and accept all Al Farez works and paid to KBR for all Al Farez works.( attached)

   b) KBR decline the tribunal ruling for the product of Claimant requested documents & KBR forged documents submitted to tribunal.

   c)  All evidence  stated under  item 6 set forth of this letter.

   d) The government  response  to the Claimant request to release documents under FOIA.9( attached)

   e) Type of contract / terms of contract .

   f)  KBR breaching of agreement ( change order )and terms of contract.

   g) KBR / QAQC approval on each items of works / KBR QAQC punch list approval .

   h)  All the items of claims submitted to tribunal on April/15 and in order it submitted

2

3. The Claimant submitted the items of claims in order to Tribunal on April /15 , and with an exception to discuss item no. 33 ( delay invoices) in the end .

4. The Claimant not agree with the order stated in Respondent letter to the Tribunal on April /22 regarding the Claimant items of claims .as the Respondent intention and motion is to distract and make a confusion to the sequence and evidences which the claimant wish to prove it to the Tribunal

5. The Claimant not agree with any KBR suggestion for any representation of any KBR employment to discuss any matter not in relative to the Claimant items of claim and that include too any KBR witness non in relative to claim

6. KBR suggest a status conference to deal with government payment to KBR for all Al Farez claims , therefore the Claimant requests from the Respondent to release the following documents in relative to the Claimant items of claim , before the conference suggestion and as the following :

  • First, KBR should product the original copy of all Al Farez works approved by the government ( contractor officer ) and if they failed to product these document then it is a strong evidence that the government accept all Al Farez claims and paid it to KBR.

  • Second, KBR should product the vouchers for task order 100 showing the government payment to Al farez for all works as accepted by the government ( not a forged one whom KBR submitted to Tribunal ) and if KBR failed to product these documents then it's a strong evidence too that the government accept all Al Farez claim and paid it to KBR.

3

- Third , KBR should explain to the Tribunal and to the Claimant specifically on some items of claims ( item no  & 22 & 23 & 39 & 45 &  KBR back charge of invoice 3)and if KBR failed to shows these items on the government vouchers and on the contractor officer approval , then it's a strong evidence too that the government paid to KBR all these items and all other Al farez items of claims.

- Fourth , KBR should prove that US army contracting command /IG Mr.Smith correspondence is not correct  when Mr. Smith confirm on his letter dated on Sep/28/2011 ( attached)that the government accept all Al farez works and the government paid the money to KBR for all Al Farez works.

- Fifth, KBR should prove that the DoD/IG  letter dated on March 04/2015 is not correct , when the DoD /IG confirm that it was determined ( government ) had been accepted Al farez works ( page 2/3  under synopsis).

- Sixth  KBR should explain to the Claimant and to Tribunal why KBR blank off  all the details under labors & non labors attached with the vouchers submitted to Tribunal in the final hearings, as the DFAS submitted the documents of labors & non labors for task order 100 to the Claimant with all the details of payment ( attached) without any blank off of any payment details . KBR failing  to do so means that KBR forged the government payment submitted to Tribunal and the government paid for Al farez works.

- Seventh , KBR should explain to the Claimant and to Tribunal why Al Farez –Warned  not shown  under labors and non labors  on the DFAS Excell sheet  (BVN 0020 ,BVN0021 ,BVN25 ,BVN35 ,BVN41 BVN52) and as the following:

4

BVN 0020      DFAS stated this documents not exist in task
              Order 100 ( attached)

BVN0021       DFAS stated this documents not exist in task
              Order 100 ( attached)

BVN0035       DFAS stated there is no details for this documents
              This documents is blank ( attached)

BVN0041       There is no payment for Al Farez Wamed Co
              Shows in this documents as KBR contends( attached)

BVN0052       There is no payment for Al Farez Wamed Co
              Shows in this documents as KBR contends( attached)

If KBR fails to submit the evidence for any of that , then it is a
strong evidence that KBR forged the government documents and
the government paid Al Farez all items of claim

- Eighth, KBR should explain to Tribunal and to Claimant on the
  retention money 20% on change order 14 ,shows in KBR outline
  ( Claimant documents page 666)which suppose the government
  deducted from Al Farez .So why the government did not pay it back
  to Al Farez if the government accept all Al farez works as well as
  KBR approval on the punch list. If KBR fails to submit the evidence
  for any of that , then it is a strong evidence that KBR forged the
  government documents and the government paid Al Farez all items
  of claim

7. The Claimant have no objection on the Respondent counter claim in
   the way he wish to discuss it in the order submitted.
   KBR still have a time to recall the approval of the contractor officer

5

## The Claimant requests from Tribunal

1. KBR still have a time to recall the approval of the contractor officer
   On all government acceptance and approval of all Al Farez works
   as ruling by the Tribunal.
   KBR should prove to Tribunal that they are honest in their contends
   that the government paid only $ 946,095.42 to KBR ,as stated in
   KBR letter to tribunal , KBR should submit these evidence ( original
   copy ) to Tribunal within 20 days otherwise if KBR failed to submit
   these documents for any reason or for any justification ,then it is a
   strong evidence that the government paid KBR all items of claim,
   and the Tribunal should award the Claimant all his claim . The
   Tribunal should not tolerated KBR for any fraud committed towards
   the Claimant as all these items of works in the claim been paid by
   the government to KBR.

2. KBR should product the original copy of the government DFAS of
   all the details under labors and non-labors payment for all voucher
   submitted to Tribunal without any blank off of any details. It pertains
   all the documents from ( KBR –FH-000962 till KBR-FH-001166 ).

Sincerely submitted

6

Wameedh Al Azzawi   / Civil Eng
GENERAL MANAGER
Al FAREZ-WAMED CO
888 WILLIAMS ST.
TRACY / CA 95376 USA
Cell :    001 5104370708          USA

Cell      00962 795358717        JORDAN
Cell :    00964 7714277666       IRAQ

E-mail : wamed@alfarez-wamed.com
URL :  www.alfarez-wamed.com

# Exhibit S

Doc 38

------ Forwarded Message ------
**From:** "Smith, Mark CIV USA" <mark.smith16@us.army.mil>
**To:** wamed jameel <wamed_jameel@yahoo.com>
**Sent:** Wednesday, September 28, 2011 3:23 PM
**Subject:** File IG Complaint (UNCLASSIFIED)

Classification: UNCLASSIFIED
Caveats: NONE

Sir,

While I have reviewed your claims that KBR has stolen from the government
the only thing that I have been able to obtain in relation to your claim is
that your claim that KBR has not paid your company for the work in which you
have performed. I have reviewed the contracts that you provided to this
office which indicates that there is a contract in which you were to perform
in support of contracts that KBR had with the US Government however, there
is no wording to provide this office with evidence that the US Government
(Army) was to pay you directly and therefore we are not a named party in
your contract.

The contract that existed was between US Government (Army) and KBR to
provide the services as indicated in the specific Task/Delivery Orders.
Since the work that was done by KBR (and its subcontractors, including your
company) was accepted by the contracting official, payments were made in
relation to each applicable contract therefore, KBR received payment for the
work which was deemed acceptable. It is now incumbent upon KBR to pay all
of its subcontractors. KBRs failure to accomplish this task is not the
responsibility of this office to ensure happens.

I would again suggest that you consult with legal representation, Small
Business Association to see what other remedies might be available for you
to pursue.

V/R

Mark Smith
Detailed Inspector General
U.S. Army Contracting Command
Bldg 3334G Wells Road
Redstone Arsenal, AL 35898
Comm 256-955-8740
DSN 645-8740
Cell (703) 254-9802
FAX 256-955-8854 (DSN) 645-8854

F-011

# Exhibit T

----- Forwarded Message -----
**From:** warned jameel <warned_jameel@yahoo.com>
**To:** Markham Ball <markhamball@gmail.com>; Tom Welby <twelby@wbgllp.com>; Robert Rubin <rrubin@mccarter.com>
**Cc:** Peggy Brenner <pbrenner@sdablaw.com>; Mark Font <mfont@sdablaw.com>; "marc.folsom@kbr.com" <marc.folsom@kbr.com>; "davidnbrenner@yahoo.com" <davidnbrenner@yahoo.com>; Tom Simotas <simotasat@adr.org>; DK Hodges <dkhodges@sdablaw.com>
**Sent:** Wednesday, March 25, 2015 10:25 AM
**Subject:** Al-Farez Wamed Co. vs KBR (50 2012 000698)

Dear members of Tribunal

Attached the Claimant documents of KBR indications of submitting forged government documents to the the Tribunal and the government action for release of information FOIA  of these documents.

Best regard

Wameedh Al Azzawi / Civil Eng
GENERAL MANAGER
Al FAREZ-WAMED CO
888 WILLIAMS ST.
TRACY / CA 95376 USA

Cell :      001 5104370708 USA

Cell :      00962 795358717 JORDAN

Cell :      00964 7714277666 IRAQ

------ Forwarded Message ------
**From:** "Davis, Cedric D CIV DFAS ZC (US)" <cedric.d.davis.civ@mail.mil>
**To:** wamed jameel <wamed_jameel@yahoo.com>
**Sent:** Friday, March 13, 2015 7:26 AM
**Subject:** RE: Response to your FOIA Request (UNCLASSIFIED)

Mr. Wameedh Al Azzawi

I have confirmed with the office that provided me the documents that they forwarded all
that were available in the system and no other exist.  All of the labor & non labor details
that I received were were forwarded to you in my previous emails.  I have made
comments next to each of your statements.  As stated in my official reply you may
appeal this findings by following the instructions on the official response memo.

1- BVN0020  , The Excel sheet of Labors & non labors details. Answer:  There was no
excel sheet for BVN0020, the first sheet was BVN0025.

2- BVN0021  , The Excel sheet of labors & non labors details. Answer:  There was no
excel sheet for BVN0021, the first sheet was BVN0025

3- BVN0035    Does it means there is no Excel sheet of Labors & non labors details of
this invoice? who blank it? Answer:  Correct, there was no excel sheet for any labor &
non labors details for this invoice, only the PDF file.  Unknown why it was blank but that
is how it was in the system.

4- Will you please refer to the BVN numbers which my company is shown in any of
DFAS payments to KBR?  Answer:  KBR as the prime vendor determined which
companies show on the payment not DFAS.  DFAS only responsibility is to pay the
prime vendor who in turn pays the subcontractor.  If subcontractor name was on
payment line it was a decision made by KBR and not DFAS.

5- Will you please send me the Excel sheet of Labors and non-labors details showing
DFAS payment to Al Farez -  Answer:  Same answer as above, DFAS FOIA office
provided you all of the labor & non labor documents that were in the system.


Very Respectfully,

Cedric D. Davis
Government Information Specialist
Defense Finance & Accounting Service
Corporate Communications Office, Indianapolis
Comm:  317-212-8803 Telework: 317-460-7799
DSN:  699-4591
Fax:  317-212-8802
cedric.d.davis.civ@mail.mil

## International Center for Dispute Resolution
### Case No. 50-110-T-00698 12

## AL FAREZ-WAMED CO.
Claimant

### VS.

## KELLOGG BROWN & ROOT SERVICES.
Respondent

---

Evidence of KBR forged a government documents submitted to Tribunal on the final Hearing documents

---

Dear Members of Tribunal

The Tribunal ruling in their correspondence on Aug/06/2014 the following:

<u>Objection to request number 1.</u>  Respondent shall furnish all vouchers that it submitted for payment under subcontract 02H8-US-SJ00163 and that were paid by the Government, together with evidence of payments received on such vouchers.

<u>Objection to request number 2.</u>  Respondent shall furnish a copy of Claimant's invoice for "two evaporative coolers (swamp coolers)" referred to in an email from Tom Hudson dated May 1, 2008, together with documents showing Respondent's response to the invoice, including any documents indicating whole or partial payment of the invoice.

The Respondent submitted to the claimant on Aug/22/2014 ,the production of the government documents pertaining Tribunal order number 1 (forgoing) ,  And the Respondent submitted  on Nov/12/2014 to Tribunal , the documents of the final hearing including the government documents , page (666 through 725)

1

All these government documents submitted to Tribunal pertaining the Government DFAS payments to KBR as vouchers, being forged by KBR and as the following:

# **Indication of KBR forged government documents submitted to Tribunal in the final Hearings**

### 1. **KBR voucher # 20 (DFAS BVN0020)**

KBR submitted to Claimant , a government document ( DFAS voucher) page number 00007 ( attached) and KBR also submitted the same  document to Tribunal in the final hearing documents in page number 668 , in which KBR stated the amount of this voucher is $27,885,741.91 .

While the  DFAS documents , shows  there was no Excel sheet for labors & non labors sheet for this voucher , as forwarded by the DFAS correspondence to the Claimant dated on   (attached)

### 2. **KBR voucher # 21 (DFAS BVN0021)**

KBR submitted to Claimant , a government document ( DFAS voucher) page number 000039 ( attached) and KBR also submitted the same  document to Tribunal in the final hearing documents in page number 676 , in which KBR stated the amount of this voucher is  $16,209,001.72

While the  DFAS documents , shows  there was no Excel sheet for labors &
non labors sheet for this voucher , as forwarded by the DFAS correspondence
to the Claimant dated on   (attached)

### 3. KBR voucher # 35 (DFAS  BVN0025)

KBR  submitted to Claimant , a government document ( DFAS voucher) page
number 000094 ( attached) and KBR also submitted the same  document to
Tribunal in the final hearing documents in page number 689 , in which KBR
shows the amount of this voucher is $10,505,452.54
While the  DFAS documents , shows  there was no Excel sheet for labors &
non labors sheet for this voucher , as forwarded by the DFAS correspondence
to the Claimant dated on , The DFAS stated that this voucher is blank
(attached)

### 4. KBR voucher # 41 (DFAS  BVN0025)

KBR  submitted to Claimant , a government document ( DFAS voucher)
page number 000114 ( attached) and KBR also submitted the same
document to Tribunal in the final hearing documents in page number 696 , in
which KBR shows the amount of this voucher is $ 4,356,708.27
While the DFAS submitted the amount of this Voucher $ 7,955,427.27
(DFAS payment history attached)

### 5. KBR voucher # 43 (DFAS  BVN0025)

The Excel sheet released by DFAS did not shows Al Farez payment document

### 6. KBR voucher # 52 (DFAS  BVN0025)

3

The Excel sheet released by DFAS did not shows Al Farez payment  document

7. KBR stated on documents 000001 submitted  to the Claimant , and on page 666 to the Tribunal , under column ITF # 3, that the gross amount of this invoice is          $ 57,573.00 and that's amount is not identical with KBR stated under column text stated that this invoice for reaching 30% mile stone payment , as the real amount for reaching 30% should be  $ 306,854.28.

8. The Table on documents 000001 submitted to the Claimant , and on page 666 submitted to Tribunal did not show any return back  of invoice 3 ( paid by KBR to the Claimant ) to the government .

9. It was KBR responsibility to get back the retention money from the government , when the contract still valid ,and when the Claimant complete the contract with the acceptance and approval by the government on all items of work Al farez did to this contract . and now this contract is closed by the government  . so How KBR will get back that retention ?, its an evidence that all these items included in KBR vouchers # 52 are not corrected and forged by KBR.

10. There is no invoice payment shows in KBR table on page documents 000001 submitted the Claimant , and on page 666 submitted to Tribunal for any evaporative cooler( As KBR stated in earlier documents submitted to Tribunal that they paid Al Farez for the evaporative cooler) or HVAC ( duct work and HVAC units) , the only

4

invoice shown there under ITF#41 for the  installing duct work only with the amount of  $20,000.

11. There is no invoice payments shows in KBR table on page documents 000001 submitted to the Claimant , and on page 666 submitted to Tribunal for any Electrical works payments for this subcontract .

12. KBR blank off all the details of the labors& non labors submitted to Claimant for all vouchers ( 20 , 21,25,35,41,43,52) and contends that these are blank off because of government classified information , while the government DFAS release all of it under the government FOIA , and there is no exemption of any details of this information pertaining the details of Labors & non labors for any vouchers submitted by KBR. Therefore KBR is lie to tribunal.

## **The Government actions**

1. Referring to army and government regulation for FOIA , my inquiry was:

- All the government approval and acceptance  on each items of works for task order 100 of this subcontract, as confirmed by the government IG / Mr. Smith ( Doc# 38)

- All the details ( original copy) of labors and non-labors for all vouchers of task order 100 , where it shows payment by the government DFAS to Al Farez-Wamed .Co. As confirmed by Mrs .Mary Dewitt from DFAS in a calling conversation with the Claimant that the government paid all my invoices of claim to KBR.

5

And  these documents should be released within 20 days from receiving the letter of inquiry pertains release of information under FOIA

2. The Honorable Senator Dianna Feinstein forward my inquiry pertains release of this information under FOIA to the DFAS and to US army contracting command( attached)

3. The Claimant also forward the inquiry to the US army DOD /IG for FOIA ( attached) and no action till now.

4. The Claimant also forward the inquiry to the US Army contracting command/IG  Mr. Smith to release the information , and still did not take any action to release the information( attached)

5. The DFAS release partial of this documents of labors and non labors documents  as an Excel sheet ( not original copy) with no relative to Al Farez payments by the government , and the only vouchers shows my company payment is in voucher BVN 41, only one payment from 41 items of works in KBR table on page #666. which means that all other invoices  on page # 666 for the other amount under ITF ( 40 items of works )submitted to Tribunal are false and forged documents.( attached)

6. The DAIG , Legal records release office , Mr. Larry KirKland , in his correspondence below confirm to Claimant that the government will release  all my information requested in my inquiry to the government on a date March/27/2015

—— Forwarded Message ——
**From:** USARMY Pentagon HQDA OTIG Mailbox SAIG ZXL <usarmy.pentagon.hqda-otig.mbx.saig-zxl@mail.mil>
**To:** "wamed@alfarez-wamed.com" <wamed@alfarez-wamed.com>
**Sent:** Monday, January 26, 2015 7:41 AM
**Subject:** FOIA Acknowledgement 15-302 (UNCLASSIFIED)

Classification: UNCLASSIFIED
Caveats: NONE

Dear Mr. Azzawi:

   This is an interim response to your Freedom of Information Act (FOIA) request dated January 22, 2015, for a copy of Inspector General (IG) records.

   The Army IG Records Release Office receives a large volume of FOIA requests and cannot always respond to requests as quickly as we would like.  Accordingly, we make it our practice to respond to FOIA request in the order received.  The approximate date of completion on your request is 27 April 2015.  However the actual processing time will depend upon the number of prior requests, as well as the complexity and volume of documents to be reviewed for each request received before yours.

   If you have any questions, please feel free to contact this office at (703) 545-4589.  Should you call, be sure to provide the FOIA number 15-302 that we have assigned to your request.

R,

Larry B. Kirkland
DAIG, Legal / Records Release Office
ATTN: SAIG-ZXR, (Records Release)
1700 Army Pentagon, Room 1E132
Washington, DC 20310-1700
DSN: 865-4591
Fax: 703 545-4585

Office email: usarmy.pentagon.hqda-otig.mbx.saig-zxl@mail.mil

Office of the Inspector General Website: http://www.daig.pentagon.mil

## Conclusion of US army release of information action

1- The US Army / FOIA  did not comply with the rules and regulation of the government and they breach the government law ( attached)

7

2- Releasing these documents by the government not only an evidence which prove that the government paid to KBR all Al Farez accepted works ( doc# 38), but also its an evidence that KBR over invoices and defrauded the government and the Claimant.

That the reason why the Government did not release these documents and will not release it .


## Claimant request from the Tribunal

1- To apply all the jurisdiction given by the law , or any Federal law to release these documents from the government.

2- To apply all the jurisdiction given by the law , and by Fedral law to punish KBR for lie ( KBR contends that KBR paid the Claimant for evaporative cooler , and for invoice #3 paid by KBR to Al farez and they contends its 30% of works, and in KBR allegation of fire – suppression in their counter claim ,and in blank off all the details of the labors & non labors for all vouchers submitted to Tribunal and for cheating ( de attached Al Farz biding documents from the subcontract agreement) and for forged government documents ( all details of payment by DFAS to KBR except voucher 41)

3- Based on forgoing evidence , the Tribunal should award this case to the Claimant without any delay and the Respondent should pay all the fee of arbitration and the Respondent should be punished for their lying , cheating , and forgery.